**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PES HOLDINGS, LLC, *et al.*,[1] | ) | Case No. 19-11626 (LSS) |
| | ) | |
| *Debtors.* | ) | (Jointly Administered) |
| | ) | |
| PES HOLDINGS, LLC, NORTH YARD GP, LLC, NORTH YARD LOGISTICS, L.P., PES ADMINISTRATIVE SERVICES, LLC, PES ENERGY INC., PES INTERMEDIATE, LLC, PES ULTIMATE HOLDINGS, LLC, PHILADELPHIA ENERGY SOLUTIONS REFINING AND MARKETING LLC, | ) ) ) ) ) ) ) ) ) | |
| *Plaintiffs*, | ) | Adversary Proceeding |
| | ) | |
| v. | ) | Case No. 20-50454 (LSS) |
| | ) | |
| ALLIANZ GLOBAL RISKS US INSURANCE CO., AXA CORPORATE SOLUTIONS ASSURANCE, CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NO. 18NSR01797-01, CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NO. AJK148822G18, CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NO. EN100070-18, CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NO. (UMR) B1526ENNMG1800181, CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NO. (UMR) B1526ENNMG1800261, CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NO. (UMR) | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: PES Holdings, LLC (8157); North Yard GP, LLC (5458); North Yard Logistics, L.P. (5952); PES Administrative Services, LLC (3022); PES Energy Inc. (0661); PES Intermediate, LLC (0074); PES Ultimate Holdings, LLC (6061); and Philadelphia Energy Solutions Refining and Marketing LLC (9574) (collectively, the "**Debtors**"). The Debtors' service address is: 1735 Market Street, Philadelphia, Pennsylvania 19103.

B1526ENNMG1900279, CERTAIN )
UNDERWRITERS AT LLOYD'S, LONDON )
SUBSCRIBING TO POLICY NO. (UMR) )
B1526ENNMG1800280, CERTAIN )
UNDERWRITERS AT LLOYD'S, LONDON )
SUBSCRIBING TO POLICY NO. (UMR) )
B1526ENNMG1800281, CERTAIN )
UNDERWRITERS AT LLOYD'S, LONDON )
SUBSCRIBING TO POLICY NO. (UMR) )
B1526ENNMG1800282, CERTAIN )
UNDERWRITERS AT LLOYD'S, LONDON )
SUBSCRIBING TO POLICY NO. (UMR) )
B1526ENNMG1800283, CERTAIN )
UNDERWRITERS AT LLOYD'S, LONDON )
SUBSCRIBING TO POLICY NO. (UMR) )
B1526ENNMG1800285, GENERAL )
SECURITY INDEMNITY COMPANY OF )
ARIZONA, GREAT LAKES INSURANCE SE, )
HDI GLOBAL INSURANCE CO., HDI )
GLOBAL SPECIALTY SE, HELVETIA )
SWISS INSURANCE COMPANY IN )
LIECHTENSTEIN LTD., LANCASHIRE )
INSURANCE COMPANY (UK) LTD., )
LIBERTY MUTUAL INSURANCE CO., )
MAPFRE RE COMPAÑIA DE )
REASEGUROS, S.A., PARTNERRE )
IRELAND INSURANCE DAC, STARR )
TECHNICAL RISKS AGENCY, INC., )
WESTPORT INSURANCE CORP., XL )
INSURANCE AMERICA, INC., and ZURICH )
AMERICAN INSURANCE CO., )
)
                    *Defendants*. )
_____ )

## OPENING BRIEF OF ICBC STANDARD BANK PLC
## IN SUPPORT OF ITS MOTION TO INTERVENE

WEIL, GOTSHAL & MANGES LLP
David L. Yohai (*pro hac vice*)
John P. Mastando III (*pro hac vice*)
767 Fifth Avenue
New York, New York 10153
(212) 310-8000
David.yohai@weil.com
John.mastando@weil.com

QUINN EMANUEL URQUHART &
    SULLIVAN, LLP
Richard I. Werder, Jr. (*pro hac vice*)
Jane Byrne (*pro hac vice*)
Deborah Newman (*pro hac vice*)
Eric Kay (*pro hac vice*)
Zachary Russell (*pro hac vice*)
51 Madison Avenue, 22nd Floor
New York, NY 10010

RICHARDS, LAYTON & FINGER, P.A.
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Zachary I. Shapiro (No. 5103)
One Rodney Square
920 North King Street
Wilmington, DE 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701
collins@rlf.com
defranceschi@rlf.com
shapiro@rlf.com

*Counsel to ICBC Standard Bank Plc*

Dated: March 20, 2020

TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......................................................................................................... ii

INTRODUCTION ......................................................................................................................1

NATURE AND STAGE OF PROCEEDINGS ...........................................................................2

SUMMARY OF ARGUMENT ....................................................................................................3

STATEMENT OF FACTS ............................................................................................................4

       A.     ICBCS is an Additional Insured, Loss Payee, and Mortgagee under the
           Policies............................................................................................................4

       B.     ICBCS Noticed a Direct Claim under the Policies after Suffering
           Business Interruption Losses Due to the Explosion ................................................5

       C.     The Debtors' Actions Threaten to Hinder ICBCS's Rights under the
           Policies............................................................................................................6

ARGUMENT ...............................................................................................................................7

 I.     ICBCS MEETS THE STANDARD FOR INTERVENTION AS OF
       RIGHT UNDER BOTH FEDERAL RULE 24(A)(1) AND (A)(2) ............................7

       A.     ICBCS May Intervene as of Right Because the Disposition of this
           Adversary Proceeding May Impair or Impede ICBCS's Rights Under
           the Policies, Which are Not Adequately Represented .............................................8

       B.     ICBCS Also Has an Unconditional Right to Intervene under Section
           1109(b) of the Bankruptcy Code........................................................................11

 II.     ALTERNATIVELY, THIS COURT SHOULD PERMIT ICBCS TO
       INTERVENE AS A MATTER OF JUDICIAL DISCRETION ................................12

CONCLUSION...........................................................................................................................13

i

TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Bell Atlantic-Del., Inc. v. Global NAPS South, Inc.*,
    77 F. Supp. 2d 492 (D. Del. 1999)........................................................................12

*Brody By & Through Sugzdinis v. Spang*,
    957 F.2d 1108 (3d Cir. 1992)........................................................................10, 12

*In re Cmty. Bank of N. Va.*,
    418 F.3d 277 (3d Cir. 2005)...............................................................................8

*Dev. Fin. Corp. v. Alpha Hous. & Health Care, Inc.*,
    54 F.3d 156 (3d Cir. 1995)................................................................................8

*German v. Fed. Home Loan Mortgage Corp.*,
    896 F. Supp. 1385 (S.D.N.Y. 1995)...................................................................9

*Hoots v. Commonwealth of Pennsylvania*,
    672 F.2d 1133 (3d Cir. 1982).............................................................................11

*Kleissler v. U.S. Forest Serv.*,
    157 F.3d 964 (3d Cir. 1998)...............................................................................9

*Matter of Marin Motor Oil, Inc.*,
    689 F.2d 445 (3d Cir. 1982)...............................................................................11

*In re Money Ctr. of Am., Inc.*,
    544 B.R. 107 (Bankr. D. Del. 2016) ..........................................................8, 11, 12

*Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*,
    72 F.3d 361 (3d Cir. 1995)...........................................................3, 8, 10, 11

*Phar-Mor, Inc. v. Coopers & Lybrand*,
    22 F.3d 1228 (3d Cir. 1994)...............................................................................12

*In re SelectBuild Illinois, LLC*,
    2015 WL 3452542 (Bankr. D. Del. May 28, 2015)...............................................9

*In re SportStuff, Inc.*,
    430 B.R. 170 (B.A.P. 8th Cir. 2010)....................................................................9

*Trbovich v. United Mine Workers of America*,
    404 U.S. 528 (1972).......................................................................................10

*In re United Minerals & Grains Corp.*,
    76 B.R. 991 (Bankr. E.D. Pa. 1987) ...................................................................9

**STATUTES & RULES**

11 U.S.C. § 1109(b) ...................................................................................................1, 3, 8, 11

Fed. R. Bankr. P. 7024 .........................................................................................................1

Fed. R. Civ. P. 24 .................................................................................................................1

Fed. R. Civ. P. 24(a)(1) ........................................................................................3, 7, 8, 11, 12

Fed. R. Civ. P. 24(a)(2) ...........................................................................................3, 7, 8, 10

Fed. R. Civ. P. 24(b) ..............................................................................................................7

Fed. R. Civ. P. 24(b)(1) ..................................................................................................3, 12

RLF1 23082030v.4

ICBC Standard Bank Plc ("**ICBCS**") by and through its undersigned counsel, and pursuant to pursuant to section 1109(b) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 7024 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 24 of the Federal Rules of Civil Procedure (the "**Federal Rules**"), hereby submits this brief in support of its motion to intervene (the "**Motion**"), filed contemporaneously herewith.

## INTRODUCTION

ICBCS seeks to intervene as a plaintiff in the above-captioned adversary proceeding (the "**Adversary Proceeding**")[2] to protect its own independent rights and substantial financial interests in the pool of insurance proceeds available under the Policies (as defined below).  The Debtors initiated this Adversary Proceeding to compel payment by Insurers for the Debtors' property damage and business interruption losses stemming from the Explosion (as defined below) that caused crippling damage to the Debtors' Girard Point refining facility on June 21, 2019.  As an additional insured, loss payee, and mortgagee under the Policies, ICBCS has the right to receive payment under the same Policies for its own business interruption losses resulting from the exact same occurrence.

However, the Debtors seek only to adjudicate their own rights under the Policies.  Indeed, the Debtors allege their total losses alone will exceed the Policies' single aggregate policy limit.  *See* PES Complaint ¶¶ 2, 83–92, 108.  As such, there is a substantial risk that the Debtors, if allowed to forge forward alone, will materially inhibit, if not entirely foreclose ICBCS's ability to enforce its rights under the Policies to recover its own losses resulting from the Explosion.

---

[2] Attached hereto as Exhibit A is ICBCS's Proposed Intervenor-Complaint.  Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the complaint filed in the Adversary Proceeding (Feb. 12, 2020), D.I. 1 (the "**PES Complaint**").

Moreover, no party will adequately represent ICBCS's interests in this Adversary Proceeding. Because their alleged losses exceed the Policies' aggregate $1,250,000,000 limit, the Debtors are financially motivated to inhibit ICBCS's independent rights to the insurance proceeds at issue. The Insurers, too, have not paid anything to ICBCS, while at the same time making certain advance payments to the Debtors for losses arising from the same event that triggers ICBCS's rights under the Policies. *See* Ex. A ¶¶ 81–84.

Because this Adversary Proceeding threatens ICBCS' interests under the Policies, and because neither party can adequately represent those interests, ICBCS respectfully asks this Court to grant the Motion. The Debtors have been advised of ICBCS's Motion, and do not object.

## NATURE AND STAGE OF PROCEEDINGS

On the Petition Date, the Debtors commenced the above-captioned chapter 11 cases. On February 12, 2020, the Debtors initiated the Adversary Proceeding to compel payment by the above-captioned defendants (the "**Insurers**") under the Policies (as defined below) for property damage and business interruption losses incurred by the Debtors from the Explosion (as defined below). *See generally,* PES Complaint.

The PES Complaint seeks: (i) a declaration (a) that the Priority Dispute does not excuse Insurers' coverage obligations or justify delaying payment of the Debtors' property and business interruption losses under the Policies[3]; (b) that the Debtors' property damage losses as a result of the Explosion are covered under the Policies; (c) adjudging the rights and obligations of the parties under the Policies with respect to property damage losses, as such losses are described in

---

[3] On February 28, 2020, Judge Gross issued an opinion in which he held that "ICBCS has priority over the BI Policy." Opinion at 55, *PES Holdings, LLC, v. UCC (In re PES Holdings, LLC)*, Adv. Pro. No. 19-50282 (KG) (Feb. 28, 2020), D.I. No. 66.

2

Section I of the Policies, resulting from the Explosion; (d) that the Debtors' business interruption losses as a result of the Explosion are covered under the Policies; (e) adjudging the rights and obligations of the parties under the Policies with respect to business interruption losses, as such losses are described in Section II of the Policies, resulting from the Explosion; (ii) an award of money damages against Defendants in an amount to be determined at trial, plus any additional amounts that may become due and owing, together with prejudgment and post-judgment interest; (iii) an award of consequential money damages against Defendants in an amount to be determined at trial, plus any additional amounts that may become due and owing, together with prejudgment and post-judgment interest; and (iv) an award of costs of suit, counsel fees and other such and further relief as the Court may deem just and proper.

Pursuant to a stipulation between the Debtors and the Insurers, filed on March 4, 2020, the Insurers' deadline to respond to the PES Complaint was extended to March 27, 2020.  D.I. 6.

## SUMMARY OF ARGUMENT

1.  ICBCS seeks to intervene as a plaintiff in the Adversary Proceeding to protect its rights and financial interests in the proceeds available under the Policies (as defined below).

2.  ICBCS may intervene as a matter of right because it holds an interest in property that is the subject of the adversary proceeding and no existing party to the adversary proceeding can adequately represent that interest.  Fed. R. Civ. P. 24(a)(2); *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 365–66 (3d Cir. 1995).

3.  Alternatively, section 1109(b) of the Bankruptcy Code gives ICBCS "an unconditional right to intervene."  See Fed. R. Civ. P. 24(a)(1).

4.  Alternatively, ICBCS respectfully asks this Court to grant permissive intervention under Federal Rule 24(b)(1), because there are common issues of law and fact between the Debtors' claims in the Adversary Proceeding and those to be raised by ICBCS.

3

## STATEMENT OF FACTS

A.     <u>ICBCS is an Additional Insured, Loss Payee, and Mortgagee under the Policies</u>

In 2018, Insurers issued various insurance policies, effective November 1, 2018 through November 1, 2019, that provide broad coverage for property damage and/or business interruption losses, all of which are subject to certain common terms and conditions (collectively, the "**Policies**").[4] Ex. A ¶ 38. Specifically, the Policies cover "Real and Personal Property of the Insured," including the Debtors' refining complex located near Philadelphia, PA (the "**Refining Complex**"), against "all risks of direct physical loss or damage," except as otherwise excluded. *See* Policies §§ I.1–I.4. The Policies also provide "Time Element" coverage, which insures against "actual loss sustained by the Insured resulting from the necessary interruption of business caused by direct physical loss or damage, by a peril insured against, to property insured herein," including: loss of gross earnings, less certain deductions; extra expense; and expenses to reduce loss. *See id.* §§ II.1, II.2, II.5, II.8. The Policies also contain certain "Coverage Extensions" that "are part of the overall Policy limit." *See id.* § III.

Under the Policies, ICBCS is an additional insured, loss payee, and mortgagee. Specifically, ICBCS is an "Additional Insured" under the Policies because Philadelphia Energy Solutions Refining and Marketing LLC ("**PESRM**"), PES Holdings, LLC, North Yard GP, LLC, North Yard Logistics, L.P., and PES Administrative Services, LLC (collectively, the "**Transaction Parties**") are "obligated by virtue of a written contract," here, the Sixth Amended and Restated Supply and Offtake Agreement (the "**SOA**"),[5] to name ICBCS as an additional

---

[4] The Policies at issue are attached to the PES Complaint as exhibits 1 through 28. *See* Complaint (Feb. 12, 2020), ECF Nos. 1-1, 1-2, 1-3, 1-4, 1-5, 1-6 & 1-7.

[5] Under the SOA, the Transactions Parties were required to maintain business interruption insurance naming ICBCS as an additional insured, loss payee, and mortgagee. Ex. A ¶¶ 41–42. The parties' operations and obligations are set forth in the Proposed Intervenor-Complaint. *See id.* ¶¶ 49–59.

insured "with respect to operations performed by or obligations required of" the Transaction Parties to or for ICBCS under the terms and conditions of the SOA.  *See* Policies, General Conditions § 5.  The Policies expressly "respond primary to and without contribution from any valid and collective insurance of such Additional Insured."  *Id.*  ICBCS is also named a "Loss Payee / Mortgagee" under the Policies, as evidenced by both an endorsement to the Policies and a Certificate of Evidence of Property Insurance issued to ICBCS in connection with the Policies. Ex. A ¶¶ 45, 47–48.

Accordingly, ICBCS has equal right as the named Insureds to recover under the Policies for its own covered losses.  All coverage under the Policies is, however, subject to an aggregate limit of $1,250,000,000, in excess of any applicable insured retentions.  *See* Policies, Declarations § 5.  Thus, to the extent that the Debtors' claim and ICBCS's claims together exceed the Policies' aggregate limit, the Policies cannot fully compensate both claims.

**B.**     **ICBCS Noticed a Direct Claim under the Policies after Suffering Business Interruption Losses Due to the Explosion**

On June 21, 2019, a catastrophic explosion (the "**Explosion**") caused significant physical damage to the Debtors' Girard Point refinery.  Ex. A ¶ 73.  As a result of the Explosion, the Debtors ceased all operations at the Refining Complex, causing ICBCS to suffer massive disruption to its business operations and also incur additional charges, costs, and extra expenses that ICBCS would not ordinarily have incurred.  *See* Ex. A ¶¶ 74–78.

ICBCS promptly notified Insurers that it would "be making a claim under the Polic[ies] for its losses as an Additional Insured."  Ex. A ¶¶ 88–89.[6]  On February 12, 2020, ICBCS

---

[6] The automatic stay triggered by the Debtors' bankruptcy filing prohibited ICBCS from further pursing its claim against Insurers until November 14, 2019, when the Court modified the automatic stay to permit ICBCS to communicate and attend meetings with Insurers' representatives to pursue its claim.  *See Final Order (I) Authorizing Debtors to (A) Obtain Post-Petition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 363(b), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and (B) Utilize Cash Collateral Pursuant to 11 U.S.C. § 363 and (II) Granting*

submitted its proof of loss seeking $231,578,842 in business interruption losses, and noted that additional expenses and costs were continuing to accrue.[7] Ex. A ¶ 96. In its claim, ICBCS seeks (i) $104,448,488 for Lost Profits; (ii) $80,265,654 for outstanding invoiced expenses, (iii) $46,364,700 for HEEP Extraction Costs, and (iv) $500,000 for Claim Preparation Expenses. Ex. A ¶¶ 96–99.

Despite ICBCS's efforts, Insurers have not paid ICBCS, and continue to adjust the claim. Ex. A ¶ 100. On February 21, 2020, a representative from Integra Technical Services ("**Integra**") sent ICBCS a letter to "update [Insurers'] existing reservation of rights . . . given the potential sale of the Girard point [refinery]." Ex. A ¶ 101. In the letter, Integra contended, *inter alia*, that "Insurers never intended to cover ICBCS's Business Interruption losses as PES never reported BI values for ICBCS . . . ." Ex. A ¶ 101. And, while ICBCS met with Insurers' representatives on February 26, 2020, to present its claim in detail, Insurers have not yet acknowledged their contractual obligations to ICBCS, let alone remitted any payment on behalf of ICBCS's business interruption losses. Ex. A ¶¶ 102–103.

### C.    The Debtors' Actions Threaten to Hinder ICBCS's Rights under the Policies

At the same time, the Debtors have been pursuing their own claim under the Policies for both property damage and business interruption losses. *See* Ex. A ¶¶ 79–87. Two months after the Explosion, Insurers agreed to advance funds on account of the Debtors' claim for property damage to the Refining Complex. Ex. A ¶¶ 80–81. By October 24, 2019, Insurers had advanced

---

*Adequate Protection to Prepetition Secured Parties Pursuant to 11 U.S.C. §§ 361, 362, 363, 364 and 507(b)*, Ex. C (Nov. 14, 2019), D.I. 580 (the "**Final DIP Order**").

[7] ICBCS also "expressly reserve[d] all of its rights to amend, modify, supplement, add to or otherwise revise the claim at any time and in any respect, including, without limitation, as necessary or appropriate to amend, quantify, or correct amounts, to reclassify or recategorize certain incurred expenses, to provide additional detail regarding the Claim set forth herein, or to reflect or account for any and all additional expenses of whatever kind or nature that ICBCS incurs that may be included in ICBCS's Claim, including additional Non-Business as Usual Expenses." Ex. A ¶ 95.

a total of approximately $65 million to the Debtors' claim for losses due to physical damage to the Refining Complex.  Ex. A ¶ 82.  On February 3, Integra emailed two of the Debtors' principals and expressed a willingness to provide a partial payment for the Debtors' business interruption losses.  Ex. A ¶ 83.

On February 12, 2020, the Debtors initiated this Adversary Proceeding to recover the balance of the insurance proceeds available under the Policies.  *See* PES Complaint.  Indeed, the Debtors allege that their total claim will exceed the Policies' aggregate $1,250,000,000 limit. PES Complaint ¶¶ 2, 83–92, 108.  If ICBCS is not permitted to intervene, the Debtors may proceed to drain, if not fully exhaust, the Policies' limit.[8]

## ARGUMENT

Intervention may be sought as a matter of right under Federal Rule 24(a) or by permission of the Court under Federal Rule 24(b).  Here, ICBCS satisfies the requirements of both Federal Rules, and therefore moves to intervene as a matter of right or, in the alternative, by permission of this Court.

I.    ICBCS MEETS THE STANDARD FOR INTERVENTION AS OF RIGHT UNDER BOTH FEDERAL RULE 24(A)(1) AND (A)(2)

A court "must permit" intervention where the intervenor "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest,

---

[8] ICBCS has a secured claim against the Transaction Parties, who are liable for certain of ICBCS's losses and expenses pursuant to the SOA.  *See* Final DIP Order, at 9, Ex. C.  Further, Judge Gross recently held that ICBCS has a first priority lien with respect to any business interruption proceeds recovered by the Debtors.  Opinion, *supra* note 3, at 49–51.  Thus, any business interruption proceeds recovered by the Debtors may be used to satisfy at least part of ICBCS's secured SOA claim.  While this does not affect ICBCS's independent right to recover under the Policies, ICBCS is not seeking a double recovery here.  The Debtors are already in this litigation with Insurers, and the outcome is in dispute.  Moreover, Judge Gross's decision in the Priority Dispute is not yet final, and the Debtors and the Term Loan Lenders have indicated their intent to file an appeal.  Accordingly, ICBCS is pursuing its direct claim in order to protect its interest.

7

unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2).  As explained below, ICBCS has an interest in the Policies that are the subject of this Adversary Proceeding, the disposition of this action may impair or impede ICBCS's ability to protect its interest, and none of the existing parties would adequately represent ICBCS's interest.  Separately, section 1109(b) of the Bankruptcy Code gives ICBCS "an unconditional right to intervene."  *See* Fed. R. Civ. P. 24(a)(1).  Under either rule, this Court "must permit" ICBCS to intervene.

> **A.      ICBCS May Intervene as of Right Because the Disposition of this Adversary Proceeding May Impair or Impede ICBCS's Rights Under the Policies, Which are Not Adequately Represented**

Federal Rule 24(a)(2) authorizes intervention as a matter of right when the following four requirements are met: (1) a timely application for leave to intervene; (2) a sufficient interest in the underlying litigation; (3) a threat that the interest will be impaired or affected by the disposition of the underlying action; and (4) that interest is not adequately represented by the existing parties to the action.  Fed. R. Civ. P. 24(a)(2); *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc*., 72 F.3d 361, 365–66 (3d Cir. 1995); *Dev. Fin. Corp. v. Alpha Hous. & Health Care, Inc*., 54 F.3d 156, 161–62 (3d Cir. 1995) (citations and quotations omitted); *In re Money Ctr. of Am., Inc.*, 544 B.R. 107, 116-117 (Bankr. D. Del. 2016) (granting intervention in adversary proceeding under Fed. R. Civ. P. 24(a)(2)).  All four requirements are satisfied here.

*First*, ICBCS's motion is timely.  Timeliness is assessed in light of the totality of the circumstances, including: "(1) the stage of the proceedings; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay."  *In re Cmty. Bank of N. Va*., 418 F.3d 277, 314 (3d Cir. 2005).  "The mere passage of time . . . does not render an application untimely"; rather, "the critical inquiry is: what proceedings of substance on the merits have occurred?" *Mountain Top Condo. Ass'n*, 72 F.3d at 369.  Here, the PES Complaint was filed on February 12,

8

2020. As such, the proceedings are at an early stage. Under the circumstances, intervention will not cause any delay in the proceedings or prejudice any party, and ICBCS's motion is, therefore, timely. *See German v. Fed. Home Loan Mortgage Corp.*, 896 F. Supp. 1385, 1392 (S.D.N.Y. 1995) ("This litigation is still in its early stages, so that the Intervenors' motion is timely.").

*Second*, ICBCS has a more than "sufficient interest" in the outcome of this proceeding. *See Kleissler v. U.S. Forest Serv*., 157 F.3d 964, 969 (3d Cir. 1998) (noting that the intervenor "must have an interest relating to the property or transaction which is the subject of the action that is significantly protectable") (citation and quotations omitted). "The Supreme Court has stated that the applicant's 'interest' in the litigation need not be an outright ownership interest in the disputed property nor even a primary role in the disputed transaction, so long as the outcome will significantly affect the claimant's interests." *In re United Minerals & Grains Corp.*, 76 B.R. 991, 999 (Bankr. E.D. Pa. 1987) (citing *Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*, 386 U.S. 129 (1969)). The Third Circuit defines "sufficient interest" pragmatically, asking whether "the proposed intervenor's interest is direct or remote." *Kleissler*, 157 F.3d at 972.

As stated above, this Adversary Proceeding concerns the disposition of a limited pool of insurance proceeds available under the Policies. As an Additional Insured, ICBCS has "independent contractual rights" under the Policies, including a direct right to business interruption coverage for losses ICBCS suffered as a result of the Explosion. *See In re SelectBuild Illinois, LLC*, 2015 WL 3452542, at *9 (Bankr. D. Del. May 28, 2015) (contractor's "status as an additional insured" created "independent contractual rights" between contractor and insurer); *see also In re SportStuff, Inc.*, 430 B.R. 170 (B.A.P. 8th Cir. 2010) (additional insureds had independent right to be indemnified and defended by the insurers). Here, the Debtors are pursuing a claim under the Policies that may exhaust the Policies' limit, potentially leaving

9

nothing for ICBCS to recover for its own losses.  Accordingly, ICBCS has a clear stake—let alone a "sufficient interest"—in the outcome of the Adversary Proceeding.

*Third*, ICBCS faces a substantial threat that its interests will be impaired or affected by the disposition of this Adversary Proceeding.  To satisfy this third requirement of Federal Rule 24(a)(2), a proposed intervenor must demonstrate that its "interest *might* become affected or impaired, as a practical matter, by the disposition of the action."  *See Mountain Top Condo. Ass'n*, 72 F.3d at 368 (emphasis in original).  In fact, it is settled law that the mere possibility that such interests could, as a practical matter, be impaired is sufficient for Rule 24(a)(2).  *Id.* "An applicant need not . . . prove that he or she would be barred from bringing a later action or that intervention constitutes the only possible avenue of relief."  *Brody By & Through Sugzdinis v. Spang*, 957 F.2d 1108, 1123 (3d Cir. 1992) (explaining "judicial economy . . . favors intervention over subsequent collateral attacks"); *see also State Street Bank and Trust Co*, 2002 WL 417013, at *2 (finding intervenor had interest in opposing contentions by creditors seeking to undermine intervenor's priority position).

As detailed above and in the Proposed Intervenor-Complaint, the disposition of the Adversary Proceeding without ICBCS's involvement will undoubtedly impair or impede ICBCS's ability to protect its interests under the Policies.  Specifically, through the Adversary Proceeding, the Debtors seek to have this Court declare that they are entitled to all of the proceeds under the Policies up to the coverage limit.  Yet, ICBCS, as an Additional Insured, also has claims to the very same insurance proceeds.  And, should this Court reach a decision as to the amount of the Debtors' recovery under the Policies, such a ruling will impact the proceeds that would remain available to ICBCS.  The threat to these interests warrants intervention.

10

*Finally*, no existing party adequately represents ICBCS's interests. *See Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n.10 (1972) ("The requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal."). To show inadequacy of representation, the intervenor may demonstrate, among other things, that its interests are sufficiently different so that the representative cannot give those interests proper attention. *Hoots v. Commonwealth of Pennsylvania*, 672 F.2d 1133, 1135 (3d Cir. 1982) (citing to *Olden v. Hagerstown Cash Register, Inc*., 619 F.2d 271 (3d Cir. 1980) (per curiam)). Overcoming this "minimal" burden requires showing only that representation "may be" inadequate. *Mountain Top Condo.*, 72 F.3d at 368-69 (quoting *United Mine Workers*, 404 U.S. at 538). Here, the Debtors have no interest in protecting ICBCS's rights under the Policies. Quite the opposite, they are seeking the full amount of coverage on their claim, and have filed an appeal challenging the Bankruptcy Court's ruling that ICBCS has a priority interest in any insurance proceeds paid on the Debtors' insurance claim.

### B.   ICBCS Also Has an Unconditional Right to Intervene under Section 1109(b) of the Bankruptcy Code

The Federal Rules provide that a court "*must permit* anyone to intervene" who is "given an unconditional right to intervene by a federal statute." Fed. R. Civ. P. 24(a)(1). "Section 1109(b) of the Code grants creditors and parties in interest the ability to raise, appear, and be heard *on any issue* in a Chapter 11 case." *Money Ctr.*, 544 B.R. at 112 (citing 11 U.S.C. § 1109(b)) (emphasis added). The Third Circuit has held that this statute provides an unconditional statutory right to intervene in an adversary proceeding. *See Matter of Marin Motor Oil, Inc*., 689 F.2d 445, 450-57 (3d Cir. 1982); *see also Money Ctr.*, 544 B.R. at 112 (casino operator's status as a creditor under section 1109(b) warranted mandatory intervention in

adversary proceeding); *Phar-Mor, Inc. v. Coopers & Lybrand*, 22 F.3d 1228, 1232 (3d Cir. 1994) ("[In *Marin*], we … stat[ed] that § 1109(b) gave parties in interest an 'unqualified' right to be heard, and, therefore, the term 'case' in § 1109 includes any adversary proceeding instituted by a trustee under Chapter 11").  As a creditor and a party in interest in these Chapter 11 Cases,[9] ICBCS "must be allowed to intervene under Rule 24(a)(1)."  *See Money Ctr.*, 544 B.R. at 112.[10]

## II.   ALTERNATIVELY, THIS COURT SHOULD PERMIT ICBCS TO INTERVENE AS A MATTER OF JUDICIAL DISCRETION

The requirements for permissive intervention are similar to—albeit more relaxed than— the requirements for intervention as of right.  Under Federal Rule 24(b)(1), "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact."  Whether to grant permissive intervention "is within the discretion of the district court."  *Brody ex rel. Sugzdinis*, 957 F.2d at 1124.  "The central consideration for the exercise of discretion [in allowing permissive intervention] is whether allowing intervention will cause delay or prejudice."  *Bell Atlantic-Del., Inc. v. Global NAPS South, Inc*., 77 F. Supp. 2d 492, 502 (D. Del. 1999).

Here, there are clearly common issues of law and fact between the Debtors' claims in the Adversary Proceeding and those to be raised by ICBCS, as set forth in the Proposed Intervenor-Complaint.  Both ICBCS and the Debtors are seeking to recover under the same Policies for losses resulting from the same occurrence.  *Compare* PES Complaint, *with* Ex. A. Further, since the Adversary Proceeding is in its early stages, there will be no delay or prejudice caused by

---

[9] The Debtors have acknowledged that ICBCS is a creditor of the Debtors under the SOA, and that ICBCS holds allowed claims against the Debtors. *See* Final DIP Order, at 9, Ex. C.

[10] Further, the Debtors have been advised of ICBCS's motion to intervene, and do not object.

ICBCS's intervention in the case.  Accordingly, ICBCS should be permitted to intervene for these reasons as well.

## CONCLUSION

For the reasons set forth above, ICBCS respectfully requests that this Court enter an order (1) granting its Motion to Intervene in this Adversary Proceeding and (2) authorizing ICBCS to file a complaint substantially in the form of the Proposed Intervenor-Complaint.

Dated:  March 20, 2020
Wilmington, Delaware

By:  */s/ Zachary I. Shapiro*

WEIL, GOTSHAL & MANGES LLP
David L. Yohai (*pro hac vice*)
John P. Mastando III (*pro hac vice*)
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

-and-

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Richard I. Werder, Jr. (*pro hac vice*)
Jane Byrne (*pro hac vice*)
Deborah Newman (*pro hac vice*)
Eric Kay (*pro hac vice*)
Zachary Russell (*pro hac vice*)
51 Madison Avenue, 22nd Floor
New York, NY 10010

-and-

RICHARDS, LAYTON & FINGER, P.A.
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Zachary I. Shapiro (No. 5103)
One Rodney Square
920 North King Street
Wilmington, DE 19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701

*Counsel to ICBC Standard Bank Plc*

13