**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| _____ | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| PES HOLDINGS, LLC, *et al.*, | ) | Case No. 19-11626 (LSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| _____ | ) | |
| | ) | |
| PES HOLDINGS, LLC, NORTH YARD GP, | ) | |
| LLC, NORTH YARD LOGISTICS, L.P., PES | ) | |
| ADMINISTRATIVE SERVICES, LLC, PES | ) | |
| ENERGY INC., PES INTERMEDIATE, LLC, | ) | |
| PES ULTIMATE HOLDINGS, LLC, | ) | |
| PHILADELPHIA ENERGY SOLUTIONS | ) | |
| REFINING AND MARKETING LLC | ) | |
| | ) | |
| Plaintiffs, | ) | Adversary Proceeding |
| | ) | |
| v. | ) | Case No. 20-50454 (LSS) |
| | ) | |
| ALLIANZ GLOBAL RISKS US INSURANCE | ) | |
| CO., AXA CORPORATE SOLUTIONS | ) | |
| ASSURANCE, CERTAIN UNDERWRITERS | ) | |
| AT LLOYD'S, LONDON SUBSCRIBING TO | ) | |
| POLICY NO. 18NSRO1797-01, CERTAIN | ) | |
| UNDERWRITERS AT LLOYD'S LONDON | ) | |
| SUBSCRIBING TO POLICY NO. | ) | |
| AJK148822G18, CERTAIN UNDERWRITERS | ) | |
| AT LLOYD'S, LONDON SUBSCRIBING TO | ) | |
| POLICY NO. EN100070-18, CERTAIN | ) | |
| UNDERWRITERES AT LLOYD'S, LONDON | ) | |
| SUBSCRIBING TO POLICY NO. (UMR) | ) | |
| B1526ENNMG1800181, CERTAIN | ) | |
| UNDERWRITERS AT LLOYD'S LONDON | ) | |
| SUBSCRIBING TO POLICY NO. (UMR) | ) | |
| B1526ENNMG1800261, CERTAIN | ) | |
| UNDERWRITERS AT LLOYD'S LONDON | ) | |
| SUBSCRIBING TO POLICY NO. (UMR) | ) | |
| B1526ENNMG1900279, CERTAIN | ) | |
| UNDERWRITERS AT LLOYD'S, LONDON | ) | |
| SUBSCRIBING TO POLICY NO. (UMR) | ) | |
| B1526ENNMG1800280, CERTAIN | ) | |
| UNDERWRITERS AT LLOYD'S LONDON | ) | |

SUBSCRIBING TO POLICY NO. (UMR)          )
B1526ENNMG1800281, CERTAIN               )
UNDERWRITERS AT LLOYD'S, LONDON          )
SUBSCRIBING TO POLICY NO. (UMR)          )
B1526ENNMG1800282, CERTAIN               )
UNDERWRITERS AT LLOYD'S, LONDON          )
SUBSCRIBING TO POLICY NO. (UMR)          )
B1526ENNMG1800283, CERTAIN               )
UNDERWRITERS AT LLOYD'S, LONDON          )
SUBSCRIBING TO POLICY. NO. (UMR)         )
B1526ENNMG1800285, GENERAL               )
SECURITY INDEMNITY COMPANY OF            )
ARIZONA, GREAT LAKES INSURANCE SE,       )
HDI GLOBAL INSURANCE CO., HDI            )
GLOBAL SPECIALTY SE, HELVETIA            )
SWISS INSURANCE COMPANY IN               )
LIECHTENSTEIN LTD., LANCASHIRE           )
INSURANCE COMPANY (UK) LTD.,             )
LIBERTY MUTUAL INSURANCE CO.,            )
MAPFRE RE COMPANIA DE                    )
REASEGUROS, S.A., PARTNERRE              )
IRELAND INSURANCE DAC, STARR             )
TECHNICAL RISKS AGENCY, INC.,            )
WESTPORT INSURANCE CORP., XL             )
INSURANCE AMERICA, INC., and ZURICH      )
AMERICAN INSURANCE CO.                   )
                                         )
                         Defendants.     )
_____

## **ANSWER**

Defendants Allianz Global Risks US Insurance Company, XL Insurance Company SE improperly named as AXA Corporate Solutions Assurance, Certain Underwriters at Lloyd's, London subscribing to Policy No. 18NSRO1797-01, Certain Underwriters at Lloyd's, London subscribing to Policy No. AJK148822G18, Certain Underwriters at Lloyd's, London subscribing to Binder No. EN100070-18, Certain Underwriters at Lloyd's, London subscribing to Policy No. B1526ENNMG1800181, Certain Underwriters at Lloyd's, London subscribing to Policy No. B1526ENNMG1800261, Certain Underwriters at Lloyd's, London subscribing to Policy No.

B1526ENNMG1900279, Certain Underwriters at Lloyd's, London subscribing to Policy No. B1526ENNMG1800280, Certain Underwriters at Lloyd's, London subscribing to Policy No. B1526ENNMG1800281, Certain Underwriters at Lloyd's, London subscribing to Policy No. B1526ENNMG1800282, Certain Underwriters at Lloyd's, London subscribing to Policy No. B1526ENNMG1800283, Certain Underwriters at Lloyd's, London subscribing to Policy No. B1526ENNMG1800285, General Security Indemnity Company of Arizona, Great Lakes Insurance SE, HDI Global Insurance Company, HDI Global Specialty SE, Helvetia Swiss Insurance Company in Liechtenstein Ltd., Lancashire Insurance Company (UK) Limited, Liberty Mutual Insurance Company, Mapfre Group: Mapfre España, Compañia International De Seguros Y Reaseguros S.A. improperly named Mapfre Re Compania de Reaseguros, S.A., PartnerRe Ireland Insurance DAC, Ace American Insurance Company improperly named Starr Technical Risks Agency, Inc., Westport Insurance Corporation, XL Insurance America, Inc., and Zurich American Insurance Company (individually, each an "Insurer," and, collectively, the "Insurers"), by and through by and through their undersigned counsel, as and for their Answer to Plaintiff's Complaint allege, upon information and belief as follows:

## **NATURE OF THE ACTION**

1.      Paragraph 1 fails to comply with Fed. R. Civ. P. 10(b)'s fundamental pleading requirement that claims or defenses be stated in numbered paragraphs limited to a single set of circumstances. Insurers deny the allegations set forth in Paragraph 1, except aver that there was an explosion at the alkylation unit in the Girard Point refining facility on June 21, 2019, Plaintiffs filed a Chapter 11 case. Furthermore, Paragraph 1 references the terms of a written document, specifically insurance contracts, the contents of which speak for themselves and are the best evidence of their terms, and any allegations inconsistent therewith are denied.

2.      Insurers deny the allegations set forth in Paragraph 2.

3.      Insurers deny the allegations in Paragraph 3, except aver that Insurers are making additional payments for property damage and business interruption damages.

4.      Insurers deny the allegations set forth in Paragraph 4.

5.      Insurers deny the allegations set forth in Paragraph 5.

6.      Insurers deny the allegations set forth in Paragraph 6, except aver that Insurers are making payment for business interruption losses sustained by Plaintiffs.

7.      Insurers deny the allegations set forth in Paragraph 7.

8.      Insurers deny the allegations set forth in Paragraph 8.

## JURISDICTION AND VENUE

9.      Admitted.

10.      Paragraph 10 calls for a legal conclusion as to which no response is required, except for the last sentence of this paragraph. To the extent that a response is otherwise required, Insurers deny that 28 U.S.C. § 157 provides a basis for subject-matter jurisdiction, but admit that this case falls within the district court's "related-to" jurisdiction set forth in 28 U.S.C. § 1334(b) that has been referred to this Court pursuant 28 U.S.C. § 157(a), (c)(1), and the Amended Standing Order of Reference entered by the U.S. District Court for the District of Delaware, dated February 29, 2012.  Pursuant to Federal Rule of Bankruptcy Procedure 7012(b), Insurers admit that this is a non-core matter.

11.      Paragraph 11 calls for a legal conclusion as to which no response is required. To the extent that a response is required, Insurers deny the allegations set forth in Paragraph 11.

12.    Insurers deny the allegations set forth in Paragraph 12, except aver that Insurers issued the Policies, which are written documents, the contents of which speak for themselves and are the best evidence of their terms, and any allegations inconsistent therewith are denied.

13.    Paragraph 13 does not contain any factual allegation to which a response is required.  Pursuant to Federal Rule of Bankruptcy Procedure 7012(b), Insurers state that they do not consent to the entry of final orders or judgments by this Court, and expressly preserve their rights, provided in 28 U.S.C. § 157(1) and Article III of the Constitution, to de novo review, by the district court, of this Court's proposed findings and conclusions.

14.    Paragraph 14 calls for a legal conclusion as to which no response is required. To the extent that a response is required, Insurers admit that venue is proper in this Court.

15.    Paragraph 15 calls for a legal conclusion as to which no response is required. To the extent that a response is required, Insurers deny that the Complaint this action is one "to determine the validity, priority or extent of a lien" as provided in Federal Rule of Bankruptcy Procedure 7001(2), but admit that the complaint seeks a declaratory judgment.

## THE PARTIES

16.    Insurers deny knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 16.

17.    Insurers deny the allegations set forth in Paragraph 17, except aver that Allianz Global Risks US Insurance Company is an insurance company incorporated in Illinois.

18.    Insurers deny the allegations set forth in Paragraph 18, except aver that AXA Corporate Solutions Assurance merged into XL Insurance Company SE on December 31, 2019. XL Insurance Company SE assumed all assets and liabilities of AXA Corporate Solutions Assurance. XL Insurance Company SE is registered in the Republic of Ireland.

19.    Insurers deny the allegations set forth in Paragraph 19, except aver as follows:

a.    Navigators Syndicate at Lloyd's 1221 subscribes to Policy No. 18NSRO1797-01 and is organized under the laws of England and Wales.

b.    Lloyd's Syndicate TAL 1183 subscribes to Policy No. AJK148822G18 and is organized under the laws of England and Wales.

c.    Lloyd's Syndicate 1458 subscribes to Binder No. EN100070-18 and is organized under the laws of England and Wales.

d.    Lloyd's Syndicate 1884 subscribes to Binder No. EN100070-18 and is organized under the laws of England and Wales.

e.    Lloyd's Consortium 9094 (a/k/a Pioneer Natural Resources – Onshore – PNR 9094) subscribes to Policy No. B1526ENNMG1800181 and is organized under the laws of England and Wales.

f.    Lloyd's Consortium 9551 (ACT 17 9551) subscribes to Policy Nos. B15226ENMG1800261, B1526ENNMG1900279, B1526ENNMG1800280, and B1526ENNMG1800282 and is organized under the laws of England and Wales.

g.    Lloyd's Underwriter Syndicate No. 1084 CSL subscribes to Policy No. B1526ENNMG1900279 and is organized under the laws of England and Wales.

h.    Lloyd's Underwriter Syndicate 1200 AMA subscribes to Policy No. B1526ENNMG1900279 and is organized under the laws of England and Wales.

i.    Lloyd's Underwriter Syndicate 2003 XLC subscribes to Policy No. B1526ENNMG1800280 and is organized under the laws of England and Wales.

j.  Lloyd's Underwriter Syndicates 1955 BAR subscribes to Policy No. B1526ENNMG1800281 and is organized under the laws of England and Wales.

k.  Lloyd's Underwriter Syndicate No. 1036 COF subscribes to Policy No. B1526ENNMG1800283 and is organized under the laws of England and Wales.

l.  Lloyd's Underwriter Syndicate 3902 NOA subscribes to Policy No. B1526ENNMG1800285 and is organized under the laws of England and Wales.

20.    Insurers deny the allegations set forth in Paragraph 20, except aver that General Security Indemnity Company of Arizona is an insurance company incorporated in Arizona with its principal place of business in New York.

21.    Insurers deny the allegations set forth in Paragraph 21, except aver that Great Lakes Insurance SE is a member company of Munich RE and organized under the laws of the European Union.

22.    Insurers deny the allegations set forth in Paragraph 22, except aver that HDI Global Insurance Company is an insurance company incorporated in Illinois.

23.    Insurers deny the allegations set forth in Paragraph 23, except aver that HDI Global Specialty SE is organized under the laws of the European Union.

24.    Insurers deny the allegations set forth in Paragraph 24, except aver that Helvetia Swiss Insurance Company in Liechtenstein Ltd. is an insurance company organized under the laws of the Principality of Liechtenstein.

25.    Insurers deny the allegations set forth in Paragraph 25, except aver that Lancashire Insurance Company (UK) Limited is an insurance company organized under the laws of England and Wales.

26.     Insurers deny the allegations set forth in Paragraph 26, except aver that Liberty Mutual Insurance Company is an insurance company incorporated in Massachusetts.

27.     Insurers deny the allegations set forth in Paragraph 27 except aver that the correct name of the insurer is Mapfre Group: Mapfre España, Compañia International De Seguros Y Reaseguros S.A.

28.     Insurers deny the allegations set forth in Paragraph 28, except aver that PartnerRe Ireland Insurance DAC is an insurance company organized under the laws of Ireland.

29.     Insurers deny the allegations set forth in Paragraph 29. Starr Technical Risks Agency, Inc. is not an insurance company incorporated in New York. The Policy in question was issued by Ace American Insurance Company.

30.     Insurers deny the allegations set forth in Paragraph 30, except aver that Westport Insurance Corporation is a member company of Swiss RE and incorporated in Missouri.

31.     Insurers deny the allegations set forth in Paragraph 31, except aver that XL Insurance America, Inc. is an insurance company incorporated in Delaware.

32.     Insurers deny the allegations set forth in Paragraph 32, except aver that Zurich American Insurance Company is an insurance company incorporated in New York.

## FACTUAL BACKGROUND

33.     Insurers deny knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 33.

34.     Insurers deny knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 34.

35.     Insurers deny knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 35.

36.     Insurers deny knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 36.

37.     Insurers deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 37.

38.     Insurers deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 38.

39.     Insurers deny knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 39.

40.     Insurers deny knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 40, except aver that Plaintiffs filed a petition in this Court for relief under the Bankruptcy Code on January 21, 2018.

41.     Insurers deny knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 41.

42.     Insurers deny knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 42.

43.     Insurers deny knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 43, except avers that Plaintiff's Refining Complex suffered from an explosion on June 21, 2019.

44.     Insurers deny knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 44.

45.     Insurers deny knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 45.

46.     Insurers deny knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 46.

47.     Insurers deny knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 47.

48.     Insurers deny knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 48.

49.     Insurers deny knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 49.

50.     Insurers deny knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 50.

51.     Insurers deny knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 51.

52.     Insurers deny knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 52.

53.     Insurers deny knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 53.

54.     Insurers deny knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 54.

55.     Insurers deny knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 55.

56.     Insurers deny knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 56.

57.     Insurers deny knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 57, except Insurers deny that they have refused to recognize a covered business interruption loss has occurred.

58.     Insurers deny knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 58.

59.     Insurers deny the allegations set forth in Paragraph 59, except aver that Paragraph 59 references the terms of a written document, specifically insurance contracts, the contents of which speak for themselves and are the best evidence of their terms, and any allegations inconsistent therewith are denied.

60.     Insurers deny the allegations set forth in Paragraph 60, except aver that Paragraph 60 paraphrases and references the terms of a written document, specifically insurance contracts, the contents of which speak for themselves and are the best evidence of their terms, and any allegations inconsistent therewith are denied. It is further denied that Exhibits 2-28 are true and complete copies of the Policies issued by Insurers.

61.     Insurers deny the allegations set forth in Paragraph 61, except, aver that Paragraph 61 paraphrases and/or quotes from a written document, specifically insurance contracts, the contents of which speak for themselves and are the best evidence of their terms, and any allegations inconsistent therewith are denied.

62.     Insurers deny the allegations set forth in Paragraph 62, except aver that Paragraph 62 references the terms of a written document, specifically insurance contracts, the contents of which speak for themselves and are the best evidence of their terms, and any allegations inconsistent therewith are denied.

63.     Insurers deny the allegations set forth in Paragraph 63, except aver that Paragraph 63 references the terms of a written document, specifically insurance contracts, the contents of which speak for themselves and are the best evidence of their terms, and any allegations inconsistent therewith are denied.

64.     Insurers deny the allegations set forth in Paragraph 64, except aver that Paragraph 64 references the terms of a written document, specifically insurance contracts, the contents of which speak for themselves and are the best evidence of their terms, and any allegations inconsistent therewith are denied.

65.     Insurers deny the allegations set forth in Paragraph 65, except aver that Paragraph 65 references the terms of a written document, specifically insurance contracts, the contents of which speak for themselves and are the best evidence of their terms, and any allegations inconsistent therewith are denied.

66.     Insurers deny the allegations set forth in Paragraph 66, except aver that Paragraph 66 references the terms of a written document, specifically insurance contracts, the contents of which speak for themselves and are the best evidence of their terms, and any allegations inconsistent therewith are denied.

67.     Insurers deny the allegations set forth in Paragraph 67, except aver that Paragraph 67 references the terms of a written document, specifically insurance contracts, the contents of which speak for themselves and are the best evidence of their terms, and any allegations inconsistent therewith are denied. It is further denied that the Stipulated Loss Value Clause is applicable to Plaintiffs' loss as there is no contractual obligation on the part of Plaintiffs to insure specific property for a stipulated loss amount.

68.     Insurers deny the allegations set forth in Paragraph 68, except aver that Paragraph 68 references the terms of a written document, specifically insurance contracts, the contents of which speak for themselves and are the best evidence of their terms, and any allegations inconsistent therewith are denied.

69.     Insurers deny the allegations set forth in Paragraph 69, except aver that Paragraph 69 references the terms of a written document, specifically insurance contracts, the contents of which speak for themselves and are the best evidence of their terms, and any allegations inconsistent therewith are denied.

70.     Insurers deny the allegations set forth in Paragraph 70, except aver that Paragraph 70 references the terms of a written document, specifically insurance contracts, the contents of which speak for themselves and are the best evidence of their terms, and any allegations inconsistent therewith are denied.

71.     Insurers deny the allegations set forth in Paragraph 71, except aver that Paragraph 71 references the terms of a written document, specifically insurance contracts, the contents of which speak for themselves and are the best evidence of their terms, and any allegations inconsistent therewith are denied.

72.     Insurers deny the allegations set forth in Paragraph 72, except aver that Plaintiffs have submitted claims exceeding $20 million for costs and expenses under ancillary coverage extensions allegedly related to the June 21, 2019 explosion. It is specifically denied that Plaintiffs have provided sufficient support for the payment of these claimed expenses. Insurers have paid Plaintiffs for all costs and expenses that have been properly supported and are covered under the Policies.

73.     Insurers deny knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 73, except aver that there was an explosion in the alkylation unit in the Girard Point refining facility on June 21, 2019.

74.     Insurers deny knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 74.

75.     Insurers deny knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 75. It if further denied, that Plaintiff's have demonstrated property losses exceeding $350 million.

76.     Insurers deny knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 76.

77.     Insurers deny knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 77.

78.     Insurers deny knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 78.

79.     Insurers deny knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 79.

80.     Insurers deny knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 80.

81.     Insurers deny knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 80, except aver that Plaintiffs filed a petition in this Court for relief under the Bankruptcy Code on July 21, 2019.

82.     Insurers deny knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 82.

83.     Insurers deny knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 83.

84.     Insurers deny the allegations set forth in Paragraph 84, except aver that Plaintiffs retained Flour to assist them.

85.     Insurers deny the allegations set forth in Paragraph 85, except aver that Plaintiffs provided copies of reports prepared by Flour on September 20, 2019 and February 5, 2020. It is specifically denied that the Flour estimates represent the total replacement cost associated with the fire damage. It is denied that the Flour reports accurately represented the cost to repair or replace the property damaged in the June 21, 2019 incident.

86.     Insurers deny knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 86.

87.     Insurers deny knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 87.

88.     Insurers deny the allegations set forth in Paragraph 88, except aver that Flour offered the opinion that the rebuilding period would exceed 24 months.

89.     Insurers deny the allegations set forth in Paragraph 89. It is specifically denied that Plaintiffs are using the same LP Model that was historically used at the facility. It is admitted that Plaintiffs claimed to have used the historical LP model, but unbeknownst to Insurers, Plaintiffs made material modifications to the LP model it used to support its business interruption claim. Plaintiffs knowingly withheld this information from Insurers.

90.     Insurers deny the allegations set forth in Paragraph 90.

91.     Insurers deny the allegations set forth in Paragraph 91. The Risk Review is a document in writing prepared by AON that speaks for itself and any attempt to characterize said

writing is hereby denied. By way of further answer, pre-loss projections of potential business interruption losses are not necessarily indicative of the actual loss sustained by an insured after a loss has occurred.

92.     Insurers deny the allegations set forth in Paragraph 92. The Risk Review is a document in writing prepared by AON that speaks for itself and any attempt to characterize said writing is hereby denied. By way of further answer, pre-loss projections of potential business interruption losses are not necessarily indicative of the actual loss sustained by an insured after a loss has occurred. It is specifically denied that the limits or premiums associated with the Policies have any bearing on the actual loss sustained by Plaintiffs from the June 21, 2019 explosion.

93.     Insurers deny the allegations set forth in Paragraph 93.

94.     Insurers deny the allegations set forth in Paragraph 94, except aver that notice was provided on June 21, 2019. Insurers further aver that they retained Integra as their claims adjuster.

95.     Insurers deny the allegations set forth in Paragraph 95, except aver that Plaintiffs have made their employees available at times. It is denied that the employees and consultants were continuously available to the Insurers in the months following the explosion.

96.     Insurers deny the allegations set forth in Paragraph 96, except aver that Insurers and their representatives met with Plaintiffs on or around August 13, 2019.

97.     Insurers deny the allegations set forth in Paragraph 97, except aver that PES asked for an advanced payment at a meeting with Insurers on August 13, 2019.

98.     Insurers deny the allegations set forth in Paragraph 98.

99.     Insurers deny the allegations set forth in Paragraph 99, except aver that Insurers' consultants met with PES and BDO on August 29, 2019 and September 13, 2019, and one of Insurers' consultants witnessed metallurgical testing on the pipe from September 10 to 12, 2019.

100.    Insurers deny the allegations set forth in Paragraph 100, except aver that PES set up a data room and Insurers' consultants met with PES on September 25, September 30, October 1, October 2, October 3, November 20, December 3, December 4, and December 13, 2019.

101.    Insurers deny the allegations set forth in Paragraph 101, except aver that Insurers' consultants visited the site on January 9, 2020.

102.    Insurers deny the allegations set forth in Paragraph 102.

103.    Insurers deny the allegations set forth in Paragraph 103. To the extent the allegations of Paragraph 103 purport to paraphrase and reference the terms of a written document, the contents of which speak for itself and is the best evidence of its terms, any allegations inconsistent therewith are denied. All remaining allegations are denied.

104.    Insurers deny the allegations set forth in Paragraph 104. To the contrary, Insurers have paid Plaintiffs for those amounts that have been properly supported and verified.

105.    Insurers deny the allegations set forth in Paragraph 105.

106.    Insurers deny the allegations set forth in Paragraph 106. To the extent the allegations of Paragraph 106 purport to paraphrase and reference the terms of a written document, the contents of which speak for itself and is the best evidence of its terms, any allegations inconsistent therewith are denied. All remaining allegations are denied.

107.    Insurers deny the allegations set forth in Paragraph 107.

108.    Insurers deny the allegations set forth in Paragraph 108. To the extent the allegations of Paragraph 108 purport to paraphrase and reference the terms of a written document, the contents of which speak for itself and is the best evidence of its terms, any allegations inconsistent therewith are denied. All remaining allegations are denied.

109.     Insurers deny the allegations set forth in Paragraph 109, except aver that Plaintiffs requested an advance payment at the October 3, 2019 meeting. Insurers also aver that they agreed to make an additional payment of $15 million for property damage that had been verified. Insurers further aver that Insurers and Plaintiffs together agreed to a stipulation that protected both parties' interests as it related to the payment given the competing claims to the insurance proceeds being made in the bankruptcy matter. All remaining allegations are denied.

110.     Insurers deny the allegations set forth in Paragraph 110.

## COUNT I – DECLARATORY JUDGMENT

(Pertaining To The Pending Priority Dispute)

111.     Insurers repeat, reiterate, and reallege each and every response made in response to Paragraphs 1 through 110 with the same force and effect.

112.     The allegations of Paragraph 112 are conclusions of law to which no response is required. To the extent a response is required, they are denied. To the extent the allegations of paragraph 112 purport to paraphrase and reference the terms of a written document, the contents of which speak for itself and is the best evidence of its terms, any allegations inconsistent therewith are denied.

113.     Admitted.

114.     The allegations of Paragraph 114 are conclusions of law to which no response is required. To the extent a response is required, they are denied. To the extent the allegations of Paragraph 114 purport to paraphrase and reference the terms of a written document, the contents of which speak for itself and is the best evidence of its terms, any allegations inconsistent therewith are denied.

115.    The allegations of Paragraph 115 are conclusions of law to which no response is required. To the extent a response is required, they are denied.

116.    The allegations of Paragraph 116 are conclusions of law to which no response is required. To the extent a response is required, they are denied.

117.    The allegations of Paragraph 117 are conclusions of law to which no response is required. To the extent a response is required, they are denied.

118.    The allegations of Paragraph 118 are conclusions of law to which no response is required. To the extent a response is required, they are denied.

119.    The allegations of Paragraph 119 are conclusions of law to which no response is required. To the extent a response is required, they are denied.

## <u>COUNT II – DELCARATORY JUDGMENT</u>

(Incurred And Expected Property Damage And Ancillary Expense Losses)

120.    Insurers repeat, reiterate, and reallege each and every response made in response to Paragraphs 1 through 119 with the same force and effect.

121.    The allegations of Paragraph 121 are conclusions of law to which no response is required. To the extent a response is required, they are denied. To the extent the allegations of paragraph 121 purport to paraphrase and reference the terms of a written document, the contents of which speak for itself and is the best evidence of its terms, any allegations inconsistent therewith are denied.

122.    The allegations of Paragraph 122 are conclusions of law to which no response is required. To the extent a response is required, they are denied. To the extent the allegations of paragraph 122 purport to paraphrase and reference the terms of a written document, the

contents of which speak for itself and is the best evidence of its terms, any allegations inconsistent therewith are denied.

123.    The allegations of Paragraph 123 are conclusions of law to which no response is required. To the extent a response is required, they are denied. To the extent the allegations of paragraph 123 purport to paraphrase and reference the terms of a written document, the contents of which speak for itself and is the best evidence of its terms, any allegations inconsistent therewith are denied.

124.    Admitted.

125.    The allegations of Paragraph 125 are conclusions of law to which no response is required. To the extent a response is required, they are denied. To the extent the allegations of paragraph 125 purport to paraphrase and reference the terms of a written document, the contents of which speak for itself and is the best evidence of its terms, any allegations inconsistent therewith are denied.

126.    Insurers deny the allegations set forth in Paragraph 126.

127.    The allegations of Paragraph 127 are conclusions of law to which no response is required. To the extent a response is required, they are denied.

128.    The allegations of Paragraph 128 are conclusions of law to which no response is required. To the extent a response is required, they are denied.

129.    The allegations of Paragraph 129 are conclusions of law to which no response is required. To the extent a response is required, they are denied.

## COUNT III – BREACH OF CONTRACT

(Incurred Property Damage and Ancillary Expense Losses)

130.    Insurers repeat, reiterate, and reallege each and every response made in response to Paragraphs 1 through 129 with the same force and effect.

131.    The allegations of Paragraph 131 are conclusions of law to which no response is required. To the extent a response is required, they are denied. To the extent the allegations of paragraph 131 purport to paraphrase and reference the terms of a written document, the contents of which speak for itself and is the best evidence of its terms, any allegations inconsistent therewith are denied.

132.    Admitted.

133.    The allegations of Paragraph 133 are conclusions of law to which no response is required. To the extent a response is required, they are denied. To the extent the allegations of paragraph 133 purport to paraphrase and reference the terms of a written document, the contents of which speak for itself and is the best evidence of its terms, any allegations inconsistent therewith are denied.

134.    The allegations of Paragraph 134 are conclusions of law to which no response is required. To the extent a response is required, they are denied.

135.    The allegations of Paragraph 135 are conclusions of law to which no response is required. To the extent a response is required, they are denied.

136.    The allegations of Paragraph 136 are conclusions of law to which no response is required. To the extent a response is required, they are denied.

137.    The allegations of Paragraph 137 are conclusions of law to which no response is required. To the extent a response is required, they are denied.

## COUNT IV – DECLARATORY JUDGMENT

(Incurred And Expected Business Interruption Losses)

138.    Insurers repeat, reiterate, and reallege each and every response made in response to Paragraphs 1 through 137 with the same force and effect.

139.    The allegations of Paragraph 139 are conclusions of law to which no response is required. To the extent a response is required, they are denied. To the extent the allegations of paragraph 139 purport to paraphrase and reference the terms of a written document, the contents of which speak for itself and is the best evidence of its terms, any allegations inconsistent therewith are denied.

140.    The allegations of Paragraph 140 are conclusions of law to which no response is required. To the extent a response is required, they are denied. To the extent the allegations of paragraph 140 purport to paraphrase and reference the terms of a written document, the contents of which speak for itself and is the best evidence of its terms, any allegations inconsistent therewith are denied.

141.    Admitted.

142.    The allegations of Paragraph 142 are conclusions of law to which no response is required. To the extent a response is required, they are denied. To the extent the allegations of paragraph 142 purport to paraphrase and reference the terms of a written document, the contents of which speak for itself and is the best evidence of its terms, any allegations inconsistent therewith are denied.

143.    Insurers deny the allegations set forth in Paragraph 143.

144.    The allegations of Paragraph 144 are conclusions of law to which no response is required. To the extent a response is required, they are denied.

145.    The allegations of Paragraph 145 are conclusions of law to which no response is required. To the extent a response is required, they are denied.

146.    The allegations of Paragraph 146 are conclusions of law to which no response is required. To the extent a response is required, they are denied.

## COUNT V – BREACH OF CONTRACT

(Incurred Business Interruption Losses)

147.    Insurers repeat, reiterate, and reallege each and every response made in response to Paragraphs 1 through 147 with the same force and effect.

148.    The allegations of Paragraph 148 are conclusions of law to which no response is required. To the extent a response is required, they are denied. To the extent the allegations of paragraph 148 purport to paraphrase and reference the terms of a written document, the contents of which speak for itself and is the best evidence of its terms, any allegations inconsistent therewith are denied.

149.    Admitted.

150.    The allegations of Paragraph 150 are conclusions of law to which no response is required. To the extent a response is required, they are denied. To the extent the allegations of paragraph 150 purport to paraphrase and reference the terms of a written document, the contents of which speak for itself and is the best evidence of its terms, any allegations inconsistent therewith are denied.

151.    The allegations of Paragraph 151 are conclusions of law to which no response is required. To the extent a response is required, they are denied.

152.    The allegations of Paragraph 152 are conclusions of law to which no response is required. To the extent a response is required, they are denied.

153.    The allegations of Paragraph 153 are conclusions of law to which no response is required. To the extent a response is required, they are denied.

154.    The allegations of Paragraph 154 are conclusions of law to which no response is required. To the extent a response is required, they are denied.

## COUNT VI – BREACH OF THE IMPLIED COVENANT
## OF GOOD FAITH AND FAIR DEALING

(Property Damage Coverage)

155.    Insurers repeat, reiterate, and reallege each and every response made in response to Paragraphs 1 through 154 with the same force and effect.

156.    The allegations of Paragraph 156 are conclusions of law to which no response is required. To the extent a response is required, they are denied. To the extent the allegations of paragraph 156 purport to paraphrase and reference the terms of a written document, the contents of which speak for itself and is the best evidence of its terms, any allegations inconsistent therewith are denied.

157.    Admitted.

158.    The allegations of Paragraph 158 are conclusions of law to which no response is required. To the extent a response is required, they are denied. To the extent the allegations of paragraph 158 purport to paraphrase and reference the terms of a written document, the contents of which speak for itself and is the best evidence of its terms, any allegations inconsistent therewith are denied.

159.    The allegations of Paragraph 159 are conclusions of law to which no response is required. To the extent a response is required, they are denied.

160.    The allegations of Paragraph 160 are conclusions of law to which no response is required. To the extent a response is required, they are denied.

161.    The allegations of Paragraph 161 are conclusions of law to which no response is required. To the extent a response is required, they are denied.

162.    The allegations of Paragraph 162 are conclusions of law to which no response is required. Furthermore, such allegations are speculative and conjectural. To the extent a response is required, they are denied.

163.    The allegations of Paragraph 163 are conclusions of law to which no response is required. To the extent a response is required, they are denied.

164.    The allegations of Paragraph 164 are conclusions of law to which no response is required. To the extent a response is required, they are denied.

165.    The allegations of Paragraph 165 are conclusions of law to which no response is required. To the extent a response is required, they are denied.

166.    The allegations of Paragraph 166 are conclusions of law to which no response is required. To the extent a response is required, they are denied.

167.    The allegations of Paragraph 167 are conclusions of law to which no response is required. To the extent a response is required, they are denied.

### COUNT VII – BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

(Business Interruption Coverage)

168.    Insurers repeat, reiterate, and reallege each and every response made in response to Paragraphs 1 through 167 with the same force and effect.

169.    The allegations of Paragraph 169 are conclusions of law to which no response is required. To the extent a response is required, they are denied. To the extent the allegations of paragraph 169 purport to paraphrase and reference the terms of a written document, the contents of which speak for itself and is the best evidence of its terms, any allegations inconsistent therewith are denied.

170.    Admitted.

171.    The allegations of Paragraph 171 are conclusions of law to which no response is required. To the extent a response is required, they are denied. To the extent the allegations of paragraph 171 purport to paraphrase and reference the terms of a written document, the contents of which speak for itself and is the best evidence of its terms, any allegations inconsistent therewith are denied.

172.    The allegations of Paragraph 172 are conclusions of law to which no response is required. To the extent a response is required, they are denied.

173.    The allegations of Paragraph 173 are conclusions of law to which no response is required. To the extent a response is required, they are denied.

174.    The allegations of Paragraph 174 are conclusions of law to which no response is required. To the extent a response is required, they are denied.

175.    The allegations of Paragraph 175 are conclusions of law to which no response is required. Furthermore, such allegations are speculative and conjectural. To the extent a response is required, they are denied.

176.    The allegations of Paragraph 176 are conclusions of law to which no response is required. To the extent a response is required, they are denied.

177.    The allegations of Paragraph 177 are conclusions of law to which no response is required. To the extent a response is required, they are denied.

178.    The allegations of Paragraph 178 are conclusions of law to which no response is required. To the extent a response is required, they are denied.

179.    The allegations of Paragraph 179 are conclusions of law to which no response is required. To the extent a response is required, they are denied.

180.    The allegations of Paragraph 180 are conclusions of law to which no response is required. To the extent a response is required, they are denied.

WHEREFORE, Defendant Insurers respectfully requests that the Court (1) dismiss this action with prejudice; (2) enter judgment in Insurers' favor; (3) award Insurers the costs of defending this action, including its attorney's fees and expenses; and (4) grant Insurers such other and further relief as the Court may deem just and proper.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails, in whole or in part, to state a claim against Insurers upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

All claims against Insurers are subject to the terms, conditions, exclusions, limitations, deductibles, limits and sub-limits of liability contained in the Policies.

### THIRD AFFIRMATIVE DEFENSE

All claims against Insurers are barred, in whole or in part, by the equitable doctrines of laches, estoppel, waiver, and/or unclean hands.

### FOURTH AFFIRMATIVE DEFENSE

All claims against Insurers are barred, in whole or in part, by Plaintiffs' failure to meet all Policy conditions precedent to the recovery they seek under the Policies.

### FIFTH AFFIRMATIVE DEFENSE

Insurers deny that coverage exists under the Policies for all or any portion of the claim, but to the extent any coverage exists, such coverage is subject to the Policies' terms, conditions,

limitations, and exclusions of the Policies at issue herein and/or by public policy and/or by express

provision of law, including, but not limited to, the following:

4.    **PERILS EXCLUDED**

This Section of the Policy does not insure against:

d)    gradual deterioration, depletion, rust or gradual corrosion; ordinary wear and tear; inherent vice or latent defect;

The exclusions of faulty or defective workmanship, material, construction or design and inherent vice or latent defect, shall not apply to the mechanical or electrical breakdown of an Object; however, Insurers shall not be liable for the costs of rectifying or making good such faulty or defective workmanship, material, construction or design.

\*\*\*

With respect to d) through g) above, it is understood and agreed that if physical damage not excluded by this Policy results, then only that resulting loss or damage is insured.

## SIXTH AFFIRMATIVE DEFENSE

Insurers deny that coverage exists under the Policies for all or any portion of the claim, but

to the extent any coverage exists, recovery is limited by all applicable deductibles, limits, and sub-

limits.

## SEVENTH AFFIRMATIVE DEFENSE

Insurers deny that coverage exists under the Policies for all or any portion of the claim, but

to the extent any coverage exists, priority of payment is limited by the following "Named Insured,"

"Additional Insureds" and "Lender Loss Payable" provisions:

1.    **NAMED INSURED AND ADDRESS**

**PES Energy Inc.; PES Ultimate Holdings, LLC** and any subsidiary, affiliated, associated, or allied company, corporation, firm, organization, and the Insured's interest in partnerships and/or joint ventures, and/or any owned (wholly or partially) or controlled company(ies) where the Insured maintains an interest as now or

hereafter constituted or acquired; and any other party or interest that the Insured is required by contract or agreement to insure; including but not limited to the following :

North Yard Financing, LLC
North Yard GP, LLC
North Yard Logistics, L.P.
PES Administrative Services, LLC
PES Holdings, LLC
PES Intermediate, LLC
PES Inventory Company, LLC
PES Logistics GP, LLC
PES Logistics Partners, L.P.
PESRM Holdings, LLC
Philadelphia Energy Solutions Inc.
Philadelphia Energy Solutions LLC
Philadelphia Energy Solutions Refining and Marketing LLC

all hereafter referred to as the "Insured."

| | |
|---|---|
| Address: | 3144 West Passyunk Avenue Philadelphia, PA 19145 |
| Additional lnsured(s): | As designated by the Named Insured or as endorsed hereon. |

***

## GENERAL CONDITIONS

**5.    ADDITIONAL INSURED(S)**

It is agreed that the unqualified word "Insured" wherever used includes any person or organization to whom or to which the Insured is obligated by virtue of a written contract to name such person or organization as an Additional Insured, but only with respect to operations performed by or obligations required of the Insured to or for the Additional Insured under the terms and conditions of said contract.

The limits and/or coverage available to the Additional Insured shall be those agreed to by virtue of a written contract between the Insured and such Additional Insured but in no event to exceed the limits in aggregate and coverages provided by this Policy. Furthermore, but only to the extent required by contract, this Policy will respond primary to and without

contribution from any valid and collective insurance of such Additional Insured.

***

33.    **LENDERS LOSS PAYABLE CLAUSE**

a) Loss or damage, if any, under this Policy, shall be paid to any lender designated by the Insured and in possession of a written contract, hereinafter referred to as "the Lender", *as their interests may appear*, its successors and assigns in whatever form or capacity its interests may appear and whether said interest be vested in said Lender in its individual or in its disclosed or undisclosed fiduciary or representative capacity, or otherwise, or vested in a nominee or trustee of said Lender.

b) *The insurance under this Policy,* or any rider or endorsement attached thereto, *as to the interest only of the Lender*, its successors and assigns, *shall not be invalidated nor suspended*: (a) by any error, omission, or chance respecting the ownership, description, possession, or location of the subject of the insurance or the interest therein, or the title thereto; (b) by the commencement of foreclosure proceedings or the giving of notice of sale of any of the property covered by this Policy by virtue of any mortgage or trust deed; (c) *by any breach of warranty, act, omission, neglect or non-compliance with any of the provisions of this Policy*, including any and all riders now or hereafter attached thereto, *by the Named Insured, the borrower, mortgagor,* trustor, vendee, owner, tenant, warehouseman, custodian, occupant, or by the agents of either or any of them or by the happening of any event permitted by them or either of them, or their agents, or which they failed to prevent, whether occurring before or after the attachment of this clause, or whether before or after a loss, which under the provisions of this Policy of insurance or of any rider or endorsement attached thereto would invalidate or suspend the insurance as to the Named Insured, excluding herefrom, however, any acts or omissions of the Lender while exercising active control and management of the property.

**EIGHTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims against Insurers are barred, in whole or in part, to the extent that Plaintiffs sold the insured Property and thus, cannot assign its claims pursuant to the following provisions:

## GENERAL CONDITIONS

The following conditions apply to all sections of the Policy, except where noted. The terms and conditions of the various sections and/or sub-sections of this Policy shall supersede those set forth in these general conditions wherever the same may conflict.

\*\*\*

**38.    ASSIGNMENT**

Assignment of interest under this Policy shall not bind the Insurers without their specific prior agreement.

### NINTH AFFIRMATIVE DEFENSE

Plaintiffs have not sought permission to assign any interest under the Policies and therefore any losses under the Policies may not be assigned.

### TENTH AFFIRMATIVE DEFENSE

Plaintiffs cannot assign any losses that had not accrued at the time the insured Property was sold.

### ELEVENTH AFFIRMATIVE DEFENSE

Insurers deny coverage exists under the Policies for all or any portion of the claim for property damage, but to the extent coverage exists, recovery is limited by the following provisions:

**5.    VALUATION**

At the time of loss, the basis of valuation will be as stated below or herein.

a)    (1)    <u>Real and Personal Property</u>:  The Replacement Cost, except Actual Cash Value if not repaired or replaced,

(2)    <u>Catalysts</u>:  Actual Cash Value taking into account the remining use of life.

\*\*\*

e) Stipulated Loss Value: where the Insured is contractually obligated to insure specific property for a stipulated loss amount, then in the event of a loss, this Policy will provide for the stipulated

loss value regardless of whether such property is replaced. However, in no event shall this amount exceed the Replacement Cost Value of such property (plus in addition the covered cleanup costs). In the event of a loss up to USD 250,000,000, regardless whether the affected property is replaced, the loss settlement will be on replacement cost basis. In the event of a loss in excess of USD 250,000,000 and the insured does not replace the affected property, the loss settlement will be on the basis of Actual Cash Value with a minimum of USD 250,000,000.

***

6.    **DEFINITIONS**

Whenever the following words are used in this Policy, the following definitions will apply:

a)    <u>**Actual Cash Value**</u>

The Replacement Cost less deduction for physical depreciation.

***

f)    <u>**Replacement Cost**</u>

The amount it would take to repair or replace the damaged or destroyed property with materials of like kind and quality, without deduction for depreciation or obsolescence and including the Insured's overhead, and normal and customary profit should the Insured participate in the repair or replacement of damaged property, all determined at the time and place of loss, it being understood that subject to the Insurers' limit of liability not exceeding the Replacement Cost:

(1)    the Insured shall have the option to rebuild or replace the insured property by a construction or type superior to or more extensive than its condition when new;

(2)    the Insured shall have the option of replacement with electrical and mechanical equipment having technological advantages and/or representing an improvement in function and/or forming part of a program or system enhancement. The Insurers shall be allowed to dispose of, as salvage, any non-

32

proprietary property deemed unusable by the Insured;

(3)    the Insured may elect to replace the Real Property lost, damaged, or destroyed at an alternative site;

provided that the above provisions shall not serve to increase the liability of the Insurers for loss hereunder.

## TWELFTH AFFIRMATIVE DEFENSE

If Plaintiffs do not rebuild or replace the property damaged from the June 21, 2019 explosion, they are only entitled to the Actual Cash Value of the property at the time of the loss.

## THIRTEENTH AFFIRMATIVE DEFENSE

The Stipulated Loss Value Clause is not applicable to Plaintiffs' loss as Plaintiffs were not contractually obligated to insure specific property for a stipulated loss amount.

## FOURTEENTH AFFIRMATIVE DEFENSE

Insurers deny that coverage exists under the Policies for all or any portion of the claim for time element, but to the extent any coverage exists, recovery is limited by the following provisions:

### SECTION II - TIME ELEMENT COVERAGE

1.    **BUSINESS INTERRUPTION**

This Section of the Policy covers actual loss sustained by the Insured resulting from the necessary interruption of business caused by direct physical loss or damage, by a peril insured against, to property insured herein, occurring during the Term of Insurance.

\*\*\*

8.    **BASIS OF RECOVERY**

a)    Recovery in the event of loss hereunder shall be the actual loss sustained by the Insured directly resulting from such interruption of business, but not exceeding the reduction in gross earnings less charges and expenses which do not necessarily continue during the interruption of business, not exceeding the Period of Indemnity as defined herein. Due consideration shall be given to:

    (1)    the continuation of normal charges and expenses, including payroll expense, to the extent necessary to resume operations of the Insured with the same quality of service which existed immediately preceding the loss; and

    (2)    as respects property insured hereunder while in the course of construction, erection, installation or assembly, the available experience of the business after completion of the construction, erection, installation or assembly.

b)    It is a condition of the insurance under this Section II that if the Insured could reduce the loss resulting from the interruption of business by:

    (1)    complete or partial resumption of operation of the property herein described, whether damaged or not, or

    (2)    making use of Raw Stock, Stock in Progress or Finished Stock at the locations described herein or elsewhere, or

    (3)    making use of Merchandise at the locations described herein or elsewhere, or

    (4)    making use of other property at the locations described herein or elsewhere,

Such reduction shall be taken into account in arriving at the amount of loss hereunder.

Notwithstanding any provisions to the contrary,

(1)    gross earnings coverage based upon loss of production at the impacted refinery shall be valued with the prevailing daily market pricing during the interruption of the business.

(2)    if as a result of the loss, other refineries increase production and realize incremental earnings during the Period of Indemnity, such incremental earnings shall be credited against the Bl claim value at the impacted refinery.

(3)    additional revenue generated by non-impacted facilities (other than the amount specified in item 2 above) resulting from increased commodity market pricing during the Period of Indemnity shall not be used to offset the value of the claim.

*** 

## 9.    RESUMPTION OF OPERATIONS

It is a condition of this insurance that if the Insured could reduce the loss resulting from the interruption of business,

a)    by complete or partial resumption of operation of the property herein described, whether damaged or not, or

b)    by making use of other property at the location of the loss or damage or elsewhere, or

c)    by making use of Stock (Raw, In Process or Finished) at the location of the loss or damage or elsewhere,

then such reduction shall be taken into account in arriving at the amount of loss hereunder.

***

## 10.    DEFINITIONS

### a)    <u>Gross Earnings</u>

For the purpose of this insurance, "Gross Earnings" are defined as the sum of:

(1)    The total net sales value of production

(2)    Total net sales of merchandise, and

(3)    Other earnings derived from operations of the business;

less the cost of:

(1)    raw stock from which such production is derived,

(2)      supplies consisting of materials consumed directly in the conversion of such raw stock, or in supplying the services sold by the Insured, but limited to the cost of materials consumed that do not continue under contract.

(3)      Merchandise sold, including packaging materials therefore, and

(4)      Service(s) purchased from outsiders (not employees of the Insured) for resale which do not continue under contract.

No other costs shall be deducted in determining gross earnings.

**b)**     <u>**Normal**</u>

The condition that would have existed had no loss occurred.

**c)**     <u>**Period of Indemnity**</u>

The period of time commencing with the date of the direct physical loss or damage but not exceeding the length of time as would be required, with the exercise of due diligence and dispatch, to rebuild, repair or replace the lost, destroyed or damaged property and not limited by the expiration of this Policy. However, Insurers' liability for loss shall not exceed a period of indemnity of twenty-four (24) months after application of the Retentions.

*\*\*\**

**11.**    **EXCLUSIONS**

*\*\*\**

g)      Any loss during any period in which goods would not have been produced or operations or services would not have been maintained, for any loss or reason other than direct physical loss or damage resulting from covered causes of loss.

## FIFTEENTH AFFIRMATIVE DEFENSE

Under the Policies' Time Element Coverage, the Plaintiffs are only entitled to their actual loss sustained resulting directly from the interruption of business.

## SIXTEENTH AFFIRMATIVE DEFENSE

The Policies exclude from the calculation of actual loss sustained, those charges and costs that do not continue during the period of interruption.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' time element losses did not accrue at the time of the incident, but accrue each day that the interruption of business occurs.

## EIGHTEENTH AFFIRMATIVE DEFENSE

The Policies values the lost production of the refinery by using the prevailing daily market pricing during the interruption of the business.

## NINETEENTH AFFIRMATIVE DEFENSE

The Time Element coverage under the Policies does not cover any loss during any period in which the Plaintiffs' facility would not have been in operation or services would not have been maintained, for any loss or reason other than direct physical loss or damage resulting from a covered cause of loss.

## TWENTIETH AFFIRMATIVE DEFENSE

Plaintiffs have failed to fully document, support or otherwise prove all of their claimed damages.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by its failure to mitigate damages.

### TWENTY-SECOND AFFIRMATIVE DEFENSE

Plaintiffs' claims against Insurers are barred, in whole or in part, to the extent that there is other insurance or contracts of indemnity applicable to the underlying matters, claims, or losses.

### TWENTY-THIRD AFFIRMATIVE DEFENSE

Plaintiffs' claims against Insurers are barred, in whole or in part, to the extent that Plaintiffs failed to cooperate with Insurers in performing all acts and conditions as required by the Policies.

### TWENTY-FOURTH AFFIRMATIVE DEFENSE

Plaintiffs are not entitled to recover from Insurers its costs, expenses, legal and/or attorney's fees.

### TWENTY-FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims against Insurers are barred or vitiated, in whole or in part, to the extent Plaintiffs have made any material misrepresentations as part of the application for the Policies or in submission of the claim.

### TWENTY-SIXTH AFFIRMATIVE DEFENSE

Plaintiffs' claims against Insurers are barred, in whole or in part, because a bona fide dispute concerning the amount of coverage available under the Policies existed between the parties and, therefore, Insurers had a reasonable basis to investigate Plaintiffs' claims.

### TWENTY-SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims against Insurers are barred, in whole or in part, because a bona fide dispute concerning the amount of coverage available under the Policies existed between the parties and, therefore, Insurers had a reasonable basis to deny payment of certain costs claimed by Plaintiffs.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs' claims against Insurers are barred, in whole or in part, to the extent Plaintiffs'

request for damages is speculative and conjectural.

## TWENTY-NINTH AFFIRMATIVE DEFENSE

Insurers reserve the right to assert any and all additional affirmative defenses as may be

revealed by further discovery and/or investigation.

## THIRTIETH AFFIRMATIVE DEFENSE

The liability of an insurer under the Policies is several and not joint with other insurers.

An insurer is liable only for the proportion of liability it has underwritten.

## THIRTY-FIRST AFFIRMATIVE DEFENSE

Any paragraph or allegation set forth in the Complaint not expressly admitted by Insurers,

and for which no other response is set forth herein, is expressly denied.


Dated: March 27, 2020          **HOGAN MCDANIEL**

*/s/ Garvan F. McDaniel*
Garvan F. McDaniel (#4167)
1311 Delaware Avenue
Wilmington, Delaware  19806
Telephone 302-656-7540
gmcdaniel@dkhogan.com

-and-

**WILMER CUTLER PICKERING HALE AND DORR LLP**

Craig Goldblatt [Del. Bar. No. 6665]
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Telephone: 202-663-6000
Craig.Goldblatt@wilmerhale.com

Benjamin W. Loveland
60 State Street
Boston, MA 02109
Telephone: 617-526-6000
Benjamin.Loveland@wilmerhale.com

*Co-Counsel  for Defendant Insurers*
-and-

**ZELLE LLP**

Jonathan R. MacBride
1635 Market Street, Suite 1600
Philadelphia, PA  19103
Telephone: 484-532-5330
jmacbride@zelle.com

Mathew Gonzalez
45 Broadway, Suite 920
New York, NY  10006
Telephone 646-876-4410
mgonzalez@zelle.com

*Co-Counsel for Defendant Insurers*