## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

———————————————————————

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PES HOLDINGS, LLC, *et al.*, | ) | Case No. 19-11626 (LSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

———————————————————————

| | | |
|---|---|---|
| PES HOLDINGS, LLC, NORTH YARD GP, LLC, NORTH YARD LOGISTICS, L.P., PES ADMINISTRATIVE SERVICES, LLC, PES ENERGY INC., PES INTERMEDIATE, LLC, PES ULTIMATE HOLDINGS, LLC, PHILADELPHIA ENERGY SOLUTIONS REFINING AND MARKETING LLC | ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) | Adversary Proceeding |
| | ) | |
| -and- | ) | Case No. 20-50454 (LSS) |
| | ) | |
| ICBC STANDARD BANK PLC, | ) | |
| | ) | |
| Intervenor-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ALLIANZ GLOBAL RISKS US INSURANCE CO., AXA CORPORATE SOLUTIONS ASSURANCE, CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NO. 18NSRO1797-01, CERTAIN UNDERWRITERS AT LLOYD'S LONDON SUBSCRIBING TO POLICY NO. AJK148822G18, CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NO. EN100070-18, CERTAIN UNDERWRITERES AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NO. (UMR) B1526ENNMG1800181, CERTAIN UNDERWRITERS AT LLOYD'S LONDON SUBSCRIBING TO POLICY NO. (UMR) B1526ENNMG1800261, CERTAIN UNDERWRITERS AT LLOYD'S LONDON | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |

SUBSCRIBING TO POLICY NO. (UMR)                )
B1526ENNMG1900279, CERTAIN                      )
UNDERWRITERS AT LLOYD'S, LONDON                 )
SUBSCRIBING TO POLICY NO. (UMR)                )
B1526ENNMG1800280, CERTAIN                      )
UNDERWRITERS AT LLOYD'S LONDON                  )
SUBSCRIBING TO POLICY NO. (UMR)                )
B1526ENNMG1800281, CERTAIN                      )
UNDERWRITERS AT LLOYD'S, LONDON                 )
SUBSCRIBING TO POLICY NO. (UMR)                )
B1526ENNMG1800282, CERTAIN                      )
UNDERWRITERS AT LLOYD'S, LONDON                 )
SUBSCRIBING TO POLICY NO. (UMR)                )
B1526ENNMG1800283, CERTAIN                      )
UNDERWRITERS AT LLOYD'S, LONDON                 )
SUBSCRIBING TO POLICY. NO. (UMR)               )
B1526ENNMG1800285, GENERAL                      )
SECURITY INDEMNITY COMPANY OF                   )
ARIZONA, GREAT LAKES INSURANCE SE,              )
HDI GLOBAL INSURANCE CO., HDI                   )
GLOBAL SPECIALTY SE, HELVETIA                   )
SWISS INSURANCE COMPANY IN                      )
LIECHTENSTEIN LTD., LANCASHIRE                  )
INSURANCE COMPANY (UK) LTD.,                    )
LIBERTY MUTUAL INSURANCE CO.,                   )
MAPFRE RE COMPANIA DE                           )
REASEGUROS, S.A., PARTNERRE                      )
IRELAND INSURANCE DAC, STARR                    )
TECHNICAL RISKS AGENCY, INC.,                   )
WESTPORT INSURANCE CORP., XL                    )
INSURANCE AMERICA, INC., and ZURICH             )
AMERICAN INSURANCE CO.                          )
                                                )
            Defendants.                         )

_____

## ANSWER TO ICBCS'S INTERVENOR COMPLAINT

Defendants Allianz Global Risks US Insurance Company, XL Insurance Company SE

improperly named as AXA Corporate Solutions Assurance, Certain Underwriters at Lloyd's,

London subscribing to Policy No. 18NSRO1797-01, Certain Underwriters at Lloyd's, London

subscribing to Policy No. AJK148822G18, Certain Underwriters at Lloyd's, London subscribing

to Binder No. EN100070-18, Certain Underwriters at Lloyd's, London subscribing to Policy No.

B1526ENNMG1800181, Certain Underwriters at Lloyd's, London subscribing to Policy No.

B1526ENNMG1800261, Certain Underwriters at Lloyd's, London subscribing to Policy No.

B1526ENNMG1900279, Certain Underwriters at Lloyd's, London subscribing to Policy No.

B1526ENNMG1800280, Certain Underwriters at Lloyd's, London subscribing to Policy No.

B1526ENNMG1800281, Certain Underwriters at Lloyd's, London subscribing to Policy No.

B1526ENNMG1800282, Certain Underwriters at Lloyd's, London subscribing to Policy No.

B1526ENNMG1800283, Certain Underwriters at Lloyd's, London subscribing to Policy No.

B1526ENNMG1800285, General Security Indemnity Company of Arizona, Great Lakes

Insurance SE, HDI Global Insurance Company, HDI Global Specialty SE, Helvetia Swiss

Insurance Company in Liechtenstein Ltd., Lancashire Insurance Company (UK) Limited, Liberty

Mutual Insurance Company, Mapfre España, Compañia International De Seguros Y Reaseguros

S.A. improperly named Mapfre Re Compania de Reaseguros, S.A., PartnerRe Ireland Insurance

DAC, Ace American Insurance Company improperly named Starr Technical Risks Agency, Inc.,

Westport Insurance Corporation, XL Insurance America, Inc., and Zurich American Insurance

Company (individually, each an "Insurer," and, collectively, the "Insurers"),  by and through their

undersigned counsel, as and for their Answer to Intervenor-Plaintiff ICBC Standard Bank Plc's

("ICBCS") Intervenor-Complaint, allege, upon information and belief as follows:

## NATURE OF THE ACTION

1.     Paragraph 1 fails to comply with Fed. R. Civ. P. 10(b)'s fundamental pleading

requirement that claims or defenses be stated in numbered paragraphs limited to a single set of

circumstances. Furthermore, Paragraph 1 calls for a legal conclusion as to which no response is

required. To the extent that a response is required, Insurers deny the allegations set forth in Paragraph 1.

2.     Insurers admit that the Debtors initiated an Adversary Proceeding and there was an explosion at the Girard Point refining facility on June 21, 2019. The remaining allegations of Paragraph 2 are conclusions of law to which no response is required. To the extent a response is required, Insurers deny the remaining allegations set forth in Paragraph 2.  To the extent the allegations of Paragraph 2 paraphrase and reference the terms of a written document, specifically insurance contracts, the contents of which speak for themselves and are the best evidence of their terms, and any allegations inconsistent therewith are denied.

3.     Paragraph 3 fails to comply with Fed. R. Civ. P. 10(b)'s fundamental pleading requirement that claims or defenses be stated in numbered paragraphs limited to a single set of circumstances. Furthermore, Paragraph 3 calls for a legal conclusion as to which no response is required. To the extent that a response is required, Insurers deny the allegations set forth in Paragraph 3.

4.     Paragraph 4 fails to comply with Fed. R. Civ. P. 10(b)'s fundamental pleading requirement that claims or defenses be stated in numbered paragraphs limited to a single set of circumstances. Insurers deny the allegations set forth in Paragraph 4, except aver that Insurers have made advance payments for property damage and business interruption losses to the Debtors. By way of further answer, ICBCS has not provided sufficient supporting documentation that would allow Insurers to evaluate any of its claims for coverage.

## JURISDICTION AND VENUE

5.     Admit.

6.      Paragraph 6 calls for a legal conclusion as to which no response is required, except for the last sentence of this paragraph. To the extent that a response is otherwise required, Insurers deny that 28 U.S.C. § 157 provides a basis for subject-matter jurisdiction, but admit that this case falls within the district court's "related-to" jurisdiction set forth in 28 U.S.C. § 1334(b) that has been referred to this Court pursuant 28 U.S.C. § 157(a) and (c)(1), and the Amended Standing Order of Reference entered by the U.S. District Court for the District of Delaware, dated February 29, 2012. Pursuant to Federal Rule of Bankruptcy Procedure 7012(b), Insurers admit that this is a non-core matter.

7.      Paragraph 7 calls for a legal conclusion as to which no response is required. To the extent that a response is required, Insurers deny the allegations set forth in Paragraph 7.

8.      Insurers deny the allegations set forth in Paragraph 8, except aver that Insurers issued the Policies, which are written documents, the contents of which speak for themselves and are the best evidence of their terms, and any allegations inconsistent therewith are denied.

9.      Paragraph 9 does not contain any factual allegation to which a response is required. Pursuant to Federal Rule of Bankruptcy Procedure 7012(b), Insurers state that they do not consent to the entry of final orders or judgments by this Court, and expressly preserve their rights, provided in 28 U.S.C. § 157(1) and Article III of the Constitution, to de novo review, by the district court, of this Court's proposed findings and conclusions.

10.     Paragraph 10 calls for a legal conclusion as to which no response is required. To the extent that a response is required, Insurers admit that venue is proper in this Court.

## THE PARTIES

11.     Insurers deny knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 11.

12.     Insurers deny the allegations set forth in Paragraph 12, except aver that Allianz Global Risks US Insurance Company is an insurance company incorporated in Illinois.

13.     Insurers deny the allegations set forth in Paragraph 13, except aver that AXA Corporate Solutions Assurance merged into XL Insurance Company SE on December 31, 2019. XL Insurance Company SE assumed all assets and liabilities of AXA Corporate Solutions Assurance. XL Insurance Company SE is registered in the Republic of Ireland.

14.     Insurers deny the allegations set forth in Paragraph 14, except aver that Certain Underwriters at Lloyd's, London subscribe to Policy No. 18NSRO1797-01 and is organized under the laws of England and Wales.

15.     Insurers deny the allegations set forth in Paragraph 15, except aver that Certain Underwriters at Lloyd's, London subscribe to Policy No. AJK148822G18 and is organized under the laws of England and Wales.

16.     Insurers deny the allegations set forth in Paragraph 16, except aver that Certain Underwriters at Lloyd's, London subscribe to Binder No. EN100070-18 and is organized under the laws of England and Wales.

17.     Insurers deny the allegations set forth in Paragraph 17, except aver that Certain Underwriters at Lloyd's, London subscribe to Policy No. B1526ENNMG1800181 and are organized under the laws of England and Wales.

18.     Insurers deny the allegations set forth in Paragraph 18, except aver that Certain Underwriters at Lloyd's, London subscribe to Policy No. B1526ENMG1800261 and are organized under the laws of England and Wales.

19.     Insurers deny the allegations set forth in Paragraph 19, except aver that Certain Underwriters at Lloyd's, London subscribe to Policy No. B1526ENNMG1900279 and are organized under the laws of England and Wales.

20.     Insurers deny the allegations set forth in Paragraph 20, except aver that Certain Underwriters at Lloyd's, London subscribe to Policy No. B1526ENNMG1800280 and are organized under the laws of England and Wales.

21.     Insurers deny the allegations set forth in Paragraph 21, except aver that Certain Underwriters at Lloyd's, London subscribe to Policy No. B1526ENNMG1800281 and is organized under the laws of England and Wales.

22.     Insurers deny the allegations set forth in Paragraph 22, except aver that Certain Underwriters at Lloyd's, London subscribe to Policy No. B1526ENNMG1800282 and are organized under the laws of England and Wales.

23.     Insurers deny the allegations set forth in Paragraph 23, except aver that Certain Underwriters at Lloyd's, London subscribe to Policy No. B1526ENNMG1800283 and are organized under the laws of England and Wales.

24.     Insurers deny the allegations set forth in Paragraph 24, except aver that Certain Underwriters at Lloyd's, London subscribe to Policy No. B1526ENNMG1800285 and are organized under the laws of England and Wales.

25.     Insurers deny the allegations set forth in Paragraph 25, except aver that General Security Indemnity Company of Arizona is an insurance company incorporated in Arizona with its principal place of business in New York.

26.     Insurers deny the allegations set forth in Paragraph 26, except aver that Great Lakes Insurance SE is a member company of Munich RE and organized under the laws of the European Union.

27.     Insurers deny the allegations set forth in Paragraph 27, except aver that HDI Global Insurance Company is an insurance company incorporated in Illinois.

28.     Insurers deny the allegations set forth in Paragraph 28, except aver that HDI Global Specialty SE is organized under the laws of the European Union.

29.     Insurers deny the allegations set forth in Paragraph 29, except aver that Helvetia Swiss Insurance Company in Liechtenstein Ltd. is an insurance company organized under the laws of the Principality of Liechtenstein.

30.     Insurers deny the allegations set forth in Paragraph 30, except aver that Lancashire Insurance Company (UK) Limited is an insurance company organized under the laws of England and Wales.

31.     Insurers deny the allegations set forth in Paragraph 31, except aver that Liberty Mutual Insurance Company is an insurance company incorporated in Massachusetts.

32.     Insurers deny the allegations set forth in Paragraph 32 except aver that the correct name of the insurer is MAPFRE ESPAÑA, Compañia International De Seguros Y Reaseguros S.A.

33.     Insurers deny the allegations set forth in Paragraph 33, except aver that PartnerRe Ireland Insurance DAC is an insurance company organized under the laws of Ireland.

34.     Insurers deny the allegations set forth in Paragraph 34. Starr Technical Risks Agency, Inc. is not an insurance company incorporated in New York. The Policy in question was issued by Ace American Insurance Company.

35.    Insurers deny the allegations set forth in Paragraph 35, except aver that Westport Insurance Corporation is a member company of Swiss RE and incorporated in Missouri.

36.    Insurers deny the allegations set forth in Paragraph 36, except aver that XL Insurance America, Inc. is an insurance company incorporated in Delaware.

37.    Insurers deny the allegations set forth in Paragraph 37, except aver that Zurich American Insurance Company is an insurance company incorporated in New York.

## FACTUAL BACKGROUND

38.    Insurers deny the allegations set forth in Paragraph 38, except aver that Insurers issued the Policies effective November 1, 2018 through November 1, 2019, which are written documents, the contents of which speak for themselves and are the best evidence of their terms, and any allegations inconsistent therewith are denied. It is further denied that Exhibits 2-28 attached to Plaintiff's Complaint are true and complete copies of the Polices issued by Insurers.

39.    Paragraph 39 references the terms of a written document, specifically insurance contracts, the contents of which speak for themselves and are the best evidence of their terms, and any allegations inconsistent therewith are denied. Insurers admit that the Policies are governed by and construed in accordance with the laws of the state of New York.

40.    Insurers deny the allegations set forth in Paragraph 40, except aver that Paragraph 40 paraphrases and references the terms of a written document, specifically insurance contracts, the contents of which speak for themselves and are the best evidence of their terms, and any allegations inconsistent therewith are denied.

41.    Insurers deny knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 41. To the extent the allegations of Paragraph 41 purport to

reference the terms of a written document, the contents of which speak for itself and is the best evidence of its terms, any allegations inconsistent therewith are denied.

42.     Insurers deny knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 42. To the extent the allegations of Paragraph 42 purport to paraphrase and reference the terms of a written document, the contents of which speak for itself and is the best evidence of its terms, any allegations inconsistent therewith are denied.

43.     Insurers deny the allegations set forth in Paragraph 43, except aver that Paragraph 43 references the terms of a written document, specifically insurance contracts, the contents of which speak for themselves and are the best evidence of their terms, and any allegations inconsistent therewith are denied.

44.     The allegations of Paragraph 44 are conclusions of law to which no response is required. To the extent a response is required, they are denied. To the extent Paragraph 44 references the terms of a written document, including insurance contracts, the contents of which speak for itself and is the best evidence of its terms, and any allegations inconsistent therewith are denied.

45.     Insurers deny the allegations set forth in Paragraph 45, except aver that Paragraph 45 references the terms of a written document, specifically insurance contracts, the contents of which speak for themselves and are the best evidence of their terms, and any allegations inconsistent therewith are denied.

46.     Insurers deny the allegations set forth in Paragraph 46, except aver that Paragraph 46 references the terms of a written document, specifically insurance contracts, the contents of which speak for themselves and are the best evidence of their terms, and any allegations inconsistent therewith are denied.

47.     Insurers deny the allegations set forth in Paragraph 47, except aver that Paragraph 47 references the terms of a written document, specifically insurance contracts, the contents of which speak for themselves and are the best evidence of their terms, and any allegations inconsistent therewith are denied.

48.     Insurers deny knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 48. To the extent the allegations of Paragraph 48 purport to paraphrase and reference the terms of a written document, the contents of which speak for itself and is the best evidence of its terms, any allegations inconsistent therewith are denied.

49.     Insurers deny knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 49. To the extent the allegations of Paragraph 49 purport to paraphrase and reference the terms of a written document, the contents of which speak for itself and is the best evidence of its terms, any allegations inconsistent therewith are denied.

50.     Insurers deny knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 50, except aver that the Refining Complex consisted of the Girard Point and Point Breeze refineries. To the extent the allegations of Paragraph 50 purport to reference the terms of a written document, the contents of which speak for itself and is the best evidence of its terms, any allegations inconsistent therewith are denied.

51.     Insurers deny knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 51. To the extent the allegations of Paragraph 51 purport to paraphrase and reference the terms of a written document, the contents of which speak for itself and is the best evidence of its terms, any allegations inconsistent therewith are denied.

52.     Insurers deny knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 52. To the extent the allegations of Paragraph 52 purport to

paraphrase and reference the terms of a written document, the contents of which speak for itself and is the best evidence of its terms, any allegations inconsistent therewith are denied.

53.     Insurers deny knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 53. To the extent the allegations of Paragraph 53 purport to paraphrase and reference the terms of a written document, the contents of which speak for itself and is the best evidence of its terms, any allegations inconsistent therewith are denied.

54.     Insurers deny knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 54. To the extent the allegations of Paragraph 54 purport to paraphrase and reference the terms of a written document, the contents of which speak for itself and is the best evidence of its terms, any allegations inconsistent therewith are denied.

55.     Paragraph 55 fails to comply with Fed. R. Civ. P. 10(b)'s fundamental pleading requirement that claims or defenses be stated in numbered paragraphs limited to a single set of circumstances. Insurers deny knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 55. To the extent the allegations of Paragraph 55 purport to paraphrase and reference the terms of a written document, the contents of which speak for itself and is the best evidence of its terms, any allegations inconsistent therewith are denied.

56.     Paragraph 56 fails to comply with Fed. R. Civ. P. 10(b)'s fundamental pleading requirement that claims or defenses be stated in numbered paragraphs limited to a single set of circumstances. Insurers deny knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 56. To the extent the allegations of Paragraph 56 purport to paraphrase and reference the terms of a written document, the contents of which speak for itself and is the best evidence of its terms, any allegations inconsistent therewith are denied.

57.     Insurers deny knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 57. To the extent the allegations of Paragraph 57 purport to paraphrase and reference the terms of a written document, the contents of which speak for itself and is the best evidence of its terms, any allegations inconsistent therewith are denied.

58.     Insurers deny knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 58. To the extent the allegations of Paragraph 58 purport to paraphrase and reference the terms of a written document, the contents of which speak for itself and is the best evidence of its terms, any allegations inconsistent therewith are denied.

59.     Insurers deny the allegations set forth in Paragraph 59. To the extent the allegations refer to pleadings and orders in the Debtors bankruptcy action, those documents are in writing, the contents of which speak for themselves and are the best evidence of their terms, any allegations inconsistent therewith are denied.

60.     Insurers deny the allegations set forth in Paragraph 60, except aver that Paragraph 60 references the terms of a written document, specifically insurance contracts, the contents of which speak for themselves and are the best evidence of their terms, and any allegations inconsistent therewith are denied.

61.     Insurers deny the allegations set forth in Paragraph 61, except aver that Paragraph 61 references the terms of a written document, specifically insurance contracts, the contents of which speak for themselves and are the best evidence of their terms, and any allegations inconsistent therewith are denied.

62.     Insurers deny the allegations set forth in Paragraph 62, except aver that Paragraph 62 references the terms of a written document, specifically insurance contracts, the contents of

which speak for themselves and are the best evidence of their terms, and any allegations inconsistent therewith are denied.

63.    Insurers deny the allegations set forth in Paragraph 63, except aver that Paragraph 63 references the terms of a written document, specifically insurance contracts, the contents of which speak for themselves and are the best evidence of their terms, and any allegations inconsistent therewith are denied.

64.    Insurers deny the allegations set forth in Paragraph 64, except aver that Paragraph 64 references the terms of a written document, specifically insurance contracts, the contents of which speak for themselves and are the best evidence of their terms, and any allegations inconsistent therewith are denied.

65.    Insurers deny the allegations set forth in Paragraph 65, except aver that Paragraph 65 references the terms of a written document, specifically insurance contracts, the contents of which speak for themselves and are the best evidence of their terms, and any allegations inconsistent therewith are denied.

66.    Insurers deny the allegations set forth in Paragraph 66, except aver that Paragraph 66 references the terms of a written document, specifically insurance contracts, the contents of which speak for themselves and are the best evidence of their terms, and any allegations inconsistent therewith are denied.

67.    Insurers deny the allegations set forth in Paragraph 67, except aver that Paragraph 67 references the terms of a written document, specifically insurance contracts, the contents of which speak for themselves and are the best evidence of their terms, and any allegations inconsistent therewith are denied.

68.     Insurers deny the allegations set forth in Paragraph 68, except aver that Paragraph 68 references the terms of a written document, specifically insurance contracts, the contents of which speak for themselves and are the best evidence of their terms, and any allegations inconsistent therewith are denied.

69.     Insurers deny the allegations set forth in Paragraph 69, except aver that Paragraph 69 references the terms of a written document, specifically insurance contracts, the contents of which speak for themselves and are the best evidence of their terms, and any allegations inconsistent therewith are denied.

70.     Insurers deny the allegations set forth in Paragraph 70, except aver that Paragraph 70 references the terms of a written document, specifically insurance contracts, the contents of which speak for themselves and are the best evidence of their terms, and any allegations inconsistent therewith are denied.

71.     Insurers deny the allegations set forth in Paragraph 71.

72.     Insurers deny the allegations set forth in Paragraph 72, except aver that Paragraph 72 references the terms of a written document, specifically insurance contracts, the contents of which speak for themselves and are the best evidence of their terms, and any allegations inconsistent therewith are denied. By way of further answer, Insurers admit that the total of all claims under the Policies, including claims by loss payees, mortgagees, and additional insureds cannot exceed the limit of $1,250,000,000.

73.     Insurers deny the allegations set forth in Paragraph 73, except aver that there was an explosion at the Girard Point Refinery on June 21, 2019.

74.     Insurers deny knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 74.

75.     Insurers deny knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 75.

76.     Insurers deny knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 76.

77.     Insurers deny knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 77. To the extent the allegations of Paragraph 77 purport to paraphrase and reference the terms of a written document, the contents of which speak for itself and is the best evidence of its terms, any allegations inconsistent therewith are denied.

78.     Insurers deny knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 78. To the extent the allegations of Paragraph 78 purport to paraphrase and reference the terms of a written document, the contents of which speak for itself and is the best evidence of its terms, any allegations inconsistent therewith are denied.

79.     Insurers deny the allegations set forth in Paragraph 79, except aver that notice was provided on June 21, 2019.

80.     Insurers deny the allegations set forth in Paragraph 80, except aver that Plaintiffs met with Insurers and their representatives on or about August 13, 2019.

81.     Insurers deny the allegations set forth in Paragraph 81.

82.     Insurers deny the allegations set forth in Paragraph 82, except aver that Insurers have made advance payments for property damage to the refinery.

83.     Insurers deny the allegations set forth in Paragraph 83, except aver that Insurers retained Integra Technical Services ("Integra") as their claims adjuster. To the extent the allegations of Paragraph 83 purport to paraphrase and reference the terms of a written document,

the contents of which speak for itself and is the best evidence of its terms, any allegations inconsistent therewith are denied.

84.    Insurers deny the allegations set forth in Paragraph 84. To the contrary, Insurers have paid Plaintiffs for those amounts that have been properly supported and verified.

85.    Insurers deny the allegations set forth in Paragraph 85, except aver that Plaintiffs initiated an Adversary Proceeding on February 12, 2020.

86.    Insurers deny knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 86.

87.    Insurers deny the allegations set forth in Paragraph 87, except aver that Plaintiffs provided a claim submission to Integra on or about February 21, 2020. To the extent the allegations of Paragraph 87 purport to paraphrase and reference the terms of a written document, the contents of which speak for itself and is the best evidence of its terms, any allegations inconsistent therewith are denied.

88.    Insurers deny the allegations set forth in Paragraph 88, except aver that ICBCS sent notice of claim to Aon on July 12, 2019.

89.    Insurers deny the allegations set forth in Paragraph 89, except aver that Paragraph 89 references the terms of a written document, the contents of which speak for itself and are the best evidence of its terms, and any allegations inconsistent therewith are denied.

90.    Insurers deny the allegations set forth in Paragraph 90, except aver that Integra provided a Reservation of Rights letter to ICBCS on September 20, 2019. To the extent the allegations of Paragraph 90 purport to references the terms of a written document, the contents of which speak for itself and is the best evidence of its terms, any allegations inconsistent therewith are denied.

91.     Insurers deny the allegations set forth in Paragraph 91, except aver that Paragraph 91 references the terms of a written document, the contents of which speak for itself and are the best evidence of its terms, and any allegations inconsistent therewith are denied.

92.     Admit.

93.     Insurers deny the allegations set forth in Paragraph 93, except aver that Paragraph 93 references the terms of a written document, the contents of which speak for themselves and are the best evidence of their terms, and any allegations inconsistent therewith are denied.

94.     Insurers deny knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 94.

95.     Insurers deny the allegations set forth in Paragraph 95, except aver that ICBCS submitted an initial claim to Integra on January 15, 2020. To the extent the allegations of Paragraph 95 purport to paraphrase and reference the terms of a written document, the contents of which speak for itself and is the best evidence of its terms, any allegations inconsistent therewith are denied.

96.     Insurers deny the allegations set forth in Paragraph 96, except aver that ICBCS submitted a refined claim on February 12, 2020. To the extent the allegations of Paragraph 96 purport to paraphrase and reference the terms of a written document, the contents of which speak for itself and is the best evidence of its terms, any allegations inconsistent therewith are denied.

97.     Insurers deny knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 97.

98.     Insurers deny knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 98.

99.     Insurers deny knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 99.

100.     Insurers deny the allegations set forth in Paragraph 100. By way of further answer, ICBCS has not provided sufficient supporting documentation that would allow Insurers to evaluate any of its claims for coverage.

101.     Insurers deny the allegations set forth in Paragraph 101, except aver that Integra provided an updated Reservation of Rights letter to ICBCS on February 21, 2020. To the extent the allegations of Paragraph 101 purport to paraphrase and reference the terms of a written document, the contents of which speak for itself and is the best evidence of its terms, any allegations inconsistent therewith are denied.

102.     Insurers deny the allegations set forth in Paragraph 102, except aver that Insurers' consultants met with ICBCS, FTI, and Plaintiffs' representatives on February 26, 2020.

103.     Admit Insurers have not issued any payments directly to ICBCS.

104.     Paragraph 104 calls for a legal conclusion as to which no response is required. To the extent that a response is required, Insurers deny the allegations set forth in Paragraph 104.

## COUNT I – DECLARATORY JUDGMENT

105.     Insurers repeat, reiterate, and reallege each and every response made in response to Paragraphs 1 through 104 with the same force and effect.

106.     The allegations of Paragraph 106 are conclusions of law to which no response is required. To the extent a response is required, they are denied. To the extent the allegations of Paragraph 106 paraphrase or reference the terms of a written document, specifically insurance contracts, the contents of which speak for themselves and are the best evidence of their terms, and any allegations inconsistent therewith are denied.

107.    The allegations of Paragraph 107 are conclusions of law to which no response is required. To the extent a response is required, they are denied. To the extent the allegations of Paragraph 107 paraphrase or reference the terms of a written document, specifically insurance contracts, the contents of which speak for themselves and are the best evidence of their terms, and any allegations inconsistent therewith are denied.

108.    Insurers deny knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 108.

109.    The allegations of Paragraph 109 are conclusions of law to which no response is required. To the extent a response is required, they are denied.

110.    The allegations of Paragraph 110 are conclusions of law to which no response is required. To the extent a response is required, they are denied.

111.    The allegations of Paragraph 111 are conclusions of law to which no response is required. To the extent a response is required, they are denied.

112.    Insurers deny the allegations set forth in Paragraph 112.

113.    Insurers deny the allegations set forth in Paragraph 113, except aver that Insurers have not made any payments directly to ICBCS.

114.    The allegations of Paragraph 114 are conclusions of law to which no response is required. To the extent a response is required, they are denied.

## COUNT II – DELCARATORY JUDGMENT

115.    Insurers repeat, reiterate, and reallege each and every response made in response to Paragraphs 1 through 114 with the same force and effect.

116.    The allegations of Paragraph 116 are conclusions of law to which no response is required. To the extent a response is required, they are denied. To the extent the allegations of

Paragraph 116 paraphrase or reference the terms of a written document, specifically insurance contracts, the contents of which speak for themselves and are the best evidence of their terms, and any allegations inconsistent therewith are denied.

117.    The allegations of Paragraph 117 are conclusions of law to which no response is required. To the extent a response is required, they are denied. To the extent the allegations of Paragraph 117 paraphrase and reference the terms of a written document, specifically insurance contracts, the contents of which speak for themselves and are the best evidence of their terms, and any allegations inconsistent therewith are denied.

118.    Insurers deny knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 118.

119.    The allegations of Paragraph 119 are conclusions of law to which no response is required. To the extent a response is required, they are denied.

120.    The allegations of Paragraph 120 are conclusions of law to which no response is required. To the extent a response is required, they are denied.

121.    The allegations of Paragraph 121 are conclusions of law to which no response is required. To the extent a response is required, they are denied.

122.    Insurers deny the allegations set forth in Paragraph 122.

123.    Insurers deny the allegations set forth in Paragraph 123, except aver that Insurers have not made any payments directly to ICBCS.

124.    The allegations of Paragraph 124 are conclusions of law to which no response is required. To the extent a response is required, they are denied.

## COUNT III – BREACH OF CONTRACT

125.    Insurers repeat, reiterate, and reallege each and every response made in response to Paragraphs 1 through 124 with the same force and effect.

126.    The allegations of Paragraph 126 are conclusions of law to which no response is required. To the extent a response is required, they are denied. To the extent the allegations of Paragraph 126 paraphrase or reference the terms of a written document, specifically insurance contracts, the contents of which speak for themselves and are the best evidence of their terms, and any allegations inconsistent therewith are denied.

127.    The allegations of Paragraph 127 are conclusions of law to which no response is required. To the extent a response is required, they are denied. To the extent the allegations of Paragraph 127 paraphrase or reference the terms of a written document, specifically insurance contracts, the contents of which speak for themselves and are the best evidence of their terms, and any allegations inconsistent therewith are denied.

128.    The allegations of Paragraph 128 are conclusions of law to which no response is required. To the extent a response is required, they are denied.

129.    The allegations of Paragraph 129 are conclusions of law to which no response is required. To the extent a response is required, they are denied. To the extent Paragraph 129 references the terms of a written document, specifically insurance contracts, the contents of which speak for itself and are the best evidence of its terms, and any allegations inconsistent therewith are denied. By way of further answer, Insurers aver that the total of all claims under the Policies, including claims by loss payees, mortgagees, and additional insureds cannot exceed the limit of $1,250,000,000.

130.    Insurers deny the allegations set forth in Paragraph 130, except aver that Paragraph 130 references the terms of a written document, the contents of which speak for itself and are the best evidence of its terms, and any allegations inconsistent therewith are denied.

131.    The allegations of Paragraph 131 are conclusions of law to which no response is required. To the extent a response is required, they are denied.

132.    The allegations of Paragraph 132 are conclusions of law to which no response is required. To the extent a response is required, they are denied.

WHEREFORE, Defendant Insurers respectfully requests that the Court (1) dismiss this action with prejudice; (2) enter judgment in Insurers' favor; (3) award Insurers the costs of defending this action, including its attorney's fees and expenses; and (4) grant Insurers such other and further relief as the Court may deem just and proper.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The Intervenor Complaint fails, in whole or in part, to state a claim against Insurers upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

All claims against Insurers are subject to the terms, conditions, exclusions, limitations, deductibles, limits and sub-limits of liability contained in the Policies.

### THIRD AFFIRMATIVE DEFENSE

All claims against Insurers are barred, in whole or in part, by the equitable doctrines of laches, estoppel, waiver, and/or unclean hands.

### FOURTH AFFIRMATIVE DEFENSE

ICBCS's claims against Insurers are barred, in whole or in part, by ICBCS's failure to meet all Policy conditions precedent to the recovery they seek under the Policies.

## FIFTH AFFIRMATIVE DEFENSE

Insurers deny that coverage exists under the Policies for all or any portion of ICBCS's claim, but to the extent any coverage exists, such coverage is subject to the terms, conditions, limitations, and exclusions of the Policies at issue herein and/or by public policy and/or by express provision of law, including, but not limited to, the following:

### 4.    PERILS EXCLUDED

This Section of the Policy does not insure against:

d)    gradual deterioration, depletion, rust or gradual corrosion; ordinary wear and tear; inherent vice or latent defect;

The exclusions of faulty or defective workmanship, material, construction or design and inherent vice or latent defect, shall not apply to the mechanical or electrical breakdown of an Object; however, Insurers shall not be liable for the costs of rectifying or making good such faulty or defective workmanship, material, construction or design.

***

With respect to d) through g) above, it is understood and agreed that if physical damage not excluded by this Policy results, then only that resulting loss or damage is insured.

## SIXTH AFFIRMATIVE DEFENSE

Insurers deny that coverage exists under the Policies for all or any portion of ICBCS's claim, but to the extent any coverage exists, recovery is limited by all applicable deductibles, limits, and sub-limits.

## SEVENTH AFFIRMATIVE DEFENSE

Insurers deny that coverage exists under the Policies for all or any portion of ICBCS's claim, but to the extent any coverage exists, priority of payment is limited by the following "Named Insured," "Additional Insureds" and "Lender Loss Payable" provisions:

1.    **NAMED INSURED AND ADDRESS**

**PES Energy Inc.; PES Ultimate Holdings, LLC** and any subsidiary, affiliated, associated, or allied company, corporation, firm, organization, and the Insured's interest in partnerships and/or joint ventures, and/or any owned (wholly or partially) or controlled company(ies) where the Insured maintains an interest as now or hereafter constituted or acquired; and any other party or interest that the Insured is required by contract or agreement to insure; including but not limited to the following:

North Yard Financing, LLC
North Yard GP, LLC
North Yard Logistics, L.P.
PES Administrative Services, LLC
PES Holdings, LLC
PES Intermediate, LLC
PES Inventory Company, LLC
PES Logistics GP, LLC
PES Logistics Partners, L.P.
PESRM Holdings, LLC
Philadelphia Energy Solutions Inc.
Philadelphia Energy Solutions LLC
Philadelphia Energy Solutions Refining and Marketing LLC

all hereafter referred to as the "Insured."

| | |
|---|---|
| Address: | 3144 West Passyunk Avenue<br>Philadelphia, PA 19145 |
| Additional lnsured(s): | As designated by the Named Insured<br>or as endorsed hereon. |

***

**GENERAL CONDITIONS**

5.    **ADDITIONAL INSURED(S)**

It is agreed that the unqualified word "Insured" wherever used includes any person or organization to whom or to which the Insured is obligated by virtue of a written contract to name such person or organization as an Additional Insured, but only with respect to operations performed by or obligations required of the Insured to or for the Additional Insured under the terms and conditions of said contract.

The limits and/or coverage available to the Additional Insured shall be those agreed to by virtue of a written contract between the Insured and such Additional Insured but in no event to exceed the limits in aggregate and coverages provided by this Policy. Furthermore, but only to the extent required by contract, this Policy will respond primary to and without contribution from any valid and collective insurance of such Additional Insured.

***

## 33.   LENDERS LOSS PAYABLE CLAUSE

a) Loss or damage, if any, under this Policy, shall be paid to any lender designated by the Insured and in possession of a written contract, hereinafter referred to as "the Lender", *as their interests may appear*, its successors and assigns in whatever form or capacity its interests may appear and whether said interest be vested in said Lender in its individual or in its disclosed or undisclosed fiduciary or representative capacity, or otherwise, or vested in a nominee or trustee of said Lender.

b) *The insurance under this Policy,* or any rider or endorsement attached thereto, *as to the interest only of the Lender*, its successors and assigns, *shall not be invalidated nor suspended*: (a) by any error, omission, or chance respecting the ownership, description, possession, or location of the subject of the insurance or the interest therein, or the title thereto; (b) by the commencement of foreclosure proceedings or the giving of notice of sale of any of the property covered by this Policy by virtue of any mortgage or trust deed; (c) *by any breach of warranty, act, omission, neglect or non-compliance with any of the provisions of this Policy*, including any and all riders now or hereafter attached thereto, *by the Named Insured, the borrower, mortgagor,* trustor, vendee, owner, tenant, warehouseman, custodian, occupant, or by the agents of either or any of them or by the happening of any event permitted by them or either of them, or their agents, or which they failed to prevent, whether occurring before or after the attachment of this clause, or whether before or after a loss, which under the provisions of this

> Policy of insurance or of any rider or endorsement attached thereto would invalidate or suspend the insurance as to the Named Insured, excluding herefrom, however, any acts or omissions of the Lender while exercising active control and management of the property.

Furthermore, as an Additional Insured, coverage for ICBCS's claims is only with respect to operations performed by or obligations required of the Insured to or for the Additional Insured under the terms and conditions of said contract.

## EIGHTH AFFIRMATIVE DEFENSE

ICBCS's claims against Insurers are barred, in whole or in part, to the extent that PES sold the insured Property and thus, cannot assign its claims pursuant to the following provisions:

## GENERAL CONDITIONS

> The following conditions apply to all sections of the Policy, except where noted. The terms and conditions of the various sections and/or sub-sections of this Policy shall supersede those set forth in these general conditions wherever the same may conflict.

> \*\*\*

> 38.    **ASSIGNMENT**

> Assignment of interest under this Policy shall not bind the Insurers without their specific prior agreement.

## NINTH AFFIRMATIVE DEFENSE

PES did not seek permission to assign any interest under the Policies and therefore any losses under the Policies may not be assigned.

## TENTH AFFIRMATIVE DEFENSE

ICBCS cannot recover for losses that had not accrued at the time the insured Property was sold.

## ELEVENTH AFFIRMATIVE DEFENSE

Insurers deny that coverage exists under the Policies for all or any portion of ICBCS's claim, but to the extent any coverage exists, coverage for Expense to Reduce Loss is limited by the following language:

**SECTION II - TIME ELEMENT COVERAGE**

5. **Expenses to Reduce Loss**

This Section of the Policy also covers such expenses as are necessarily incurred for the purpose of reducing loss under this Policy and such expenses, in excess of Normal, as would necessarily be incurred in replacing any finished stock used by the Insured to reduce loss under this Policy; but in no event shall the aggregate of such expenses exceed the amount by which the loss under this Policy is thereby reduced.

**TWELFTH AFFIRMATIVE DEFENSE**

Insurers deny that coverage exists under the Policies for all or any portion of ICBCS's claim, but to the extent any coverage exists, coverage for Demurrage costs is limited by the following language:

**SECTION III – COVERAGE EXTENSIONS**

8. **DEMURRAGE**

This Policy covers demurrage charges incurred by the Insured as a result of a delay in loading or unloading of vessels, containers, rail cars or other transportation or storage mediums due to physical loss as insured by this Policy, subject to the sublimit stated in the Declarations. The term "demurrage" is defined as the additional cost of expense incurred by the Insured or the Insured's loss of dispatch credit.

**THIRTEENTH AFFIRMATIVE DEFENSE**

Insurers deny that coverage exists under the Policies for all or any portion of ICBCS's claim, but to the extent any coverage exists, coverage for Port Blockage Expenses is limited by the following language:

**SECTION III – COVERAGE EXTENSIONS**

19. **PORT BLOCKAGE**

This policy is extended to include, subject to the sublimit stated in the Declarations, loss resulting from:

a)    vessels or conveyances being denied access to or egress from a Facility of the Insured or a third party due to or arising out of physical loss of or physical damage to any property, including, but not limited to, the sinking or abandonment of any vessel, conveyance or other property which blocks access to or renders non-operation a Facility.

\*\*\*

**FOURTEENTH AFFIRMATIVE DEFENSE**

Insurers deny that coverage exists under the Policies for all or any portion of ICBCS's claim, but to the extent any coverage exists, coverage for Transit Expenses is limited by the following language:

**SECTION III – COVERAGE EXTENSIONS**

22. **TRANSIT**

This Policy insures physical loss or damage up to the sublimit stated in the Declarations to Property Insured while in transit by an insured peril (including general average and salvage charges) within the Territorial Limits as defined herein. In addition, the loss resulting from the necessary interruption of business and/or Extra Expense resulting from physical loss or damage to property in transit is covered.

Transit means all shipments within and between the territory of this Policy, including intercoastal and inland waterways, but not ocean marine transit, by any means of conveyance, from the time the property is moved for purpose of loading and continuously thereafter while awaiting and during loading and unloading and in temporary storage, including temporary storage on any conveyance, including during deviation, delay and consignment until safely delivered into place of final destination.

\*\*\*

**FIFTEENTH AFFIRMATIVE DEFENSE**

Insurers deny that coverage exists under the Policies for all or any portion of the claim for time element, but to the extent any coverage exists, recovery for Tine Element losses is limited by the following provisions:

## SECTION II - TIME ELEMENT COVERAGE

### 1. BUSINESS INTERRUPTION

This Section of the Policy covers actual loss sustained by the Insured resulting from the necessary interruption of business caused by direct physical loss or damage, by a peril insured against, to property insured herein, occurring during the Term of Insurance.

\*\*\*

### 8. BASIS OF RECOVERY

a)  Recovery in the event of loss hereunder shall be the actual loss sustained by the Insured directly resulting from such interruption of business, but not exceeding the reduction in gross earnings less charges and expenses which do not necessarily continue during the interruption of business, not exceeding the Period of Indemnity as defined herein. Due consideration shall be given to:

(1)  the continuation of normal charges and expenses, including payroll expense, to the extent necessary to resume operations of the Insured with the same quality of service which existed immediately preceding the loss; and

(2)  as respects property insured hereunder while in the course of construction, erection, installation or assembly, the available experience of the business after completion of the construction, erection, installation or assembly.

b)  It is a condition of the insurance under this Section II that if the Insured could reduce the loss resulting from the interruption of business by:

30

(1)     complete or partial resumption of operation of the property herein described, whether damaged or not, or

(2)     making use of Raw Stock, Stock in Progress or Finished Stock at the locations described herein or elsewhere, or

(3)     making use of Merchandise at the locations described herein or elsewhere, or

(4)     making use of other property at the locations described herein or elsewhere,

Such reduction shall be taken into account in arriving at the amount of loss hereunder.

Notwithstanding any provisions to the contrary,

(1)     gross earnings coverage based upon loss of production at the impacted refinery shall be valued with the prevailing daily market pricing during the interruption of the business.

(2)     if as a result of the loss, other refineries increase production and realize incremental earnings during the Period of Indemnity, such incremental earnings shall be credited against the Bl claim value at the impacted refinery.

(3)     additional revenue generated by non-impacted facilities (other than the amount specified in item 2 above) resulting from increased commodity market pricing during the Period of Indemnity shall not be used to offset the value of the claim.

c)      <u>Extra Expense</u>

Extra Expense means the total cost of conducting the Insured's business during the period of restoration which exceeds the cost of conducting such business that would have been incurred had no loss occurred, but excluding

(1) any direct or indirect expense for physical property unless incurred to reduce Extra Expense loss, and then not to exceed the amount by which such loss is reduced with due consideration for the salvage value of such property, and

(2) any loss of Gross Earnings

\*\*\*

## 9.    RESUMPTION OF OPERATIONS

It is a condition of this insurance that if the Insured could reduce the loss resulting from the interruption of business,

a)    by complete or partial resumption of operation of the property herein described, whether damaged or not, or

b)    by making use of other property at the location of the loss or damage or elsewhere, or

c)    by making use of Stock (Raw, In Process or Finished) at the location of the loss or damage or elsewhere,

then such reduction shall be taken into account in arriving at the amount of loss hereunder.

\*\*\*

## 10.    DEFINITIONS

### a)    <u>Gross Earnings</u>

For the purpose of this insurance, "Gross Earnings" are defined as the sum of:

(1)    The total net sales value of production

(2)    Total net sales of merchandise, and

(3)    Other earnings derived from operations of the business;

less the cost of:

(1)    raw stock from which such production is derived,

(2)    supplies consisting of materials consumed directly in the conversion of such raw stock, or in supplying the services sold by the Insured, but limited to the cost

of materials consumed that do not continue under contract.

(3)    Merchandise sold, including packaging materials therefore, and

(4)    Service(s) purchased from outsiders (not employees of the Insured) for resale which do not continue under contract.

No other costs shall be deducted in determining gross earnings.

**b)**    **Normal**

The condition that would have existed had no loss occurred.

**c)**    **Period of Indemnity**

The period of time commencing with the date of the direct physical loss or damage but not exceeding the length of time as would be required, with the exercise of due diligence and dispatch, to rebuild, repair or replace the lost, destroyed or damaged property and not limited by the expiration of this Policy. However, Insurers' liability for loss shall not exceed a period of indemnity of twenty-four (24) months after application of the Retentions.

\*\*\*

**11.    EXCLUSIONS**

\*\*\*

g)    Any loss during any period in which goods would not have been produced or operations or services would not have been maintained, for any loss or reason other than direct physical loss or damage resulting from covered causes of loss.

**SIXTEENTH AFFIRMATIVE DEFENSE**

Under the Policies' Time Element Coverage, ICBCS is only entitled to its actual loss sustained resulting directly from the interruption of business.

**SEVENTEENTH AFFIRMATIVE DEFENSE**

The Policies exclude from the calculation of actual loss sustained, those charges and costs that do not continue during the period of interruption.

### EIGHTEENTH AFFIRMATIVE DEFENSE

ICBCS's time element losses did not accrue at the time of the incident, but accrue each day that the interruption of business occurs.

### NINETEENTH AFFIRMATIVE DEFENSE

The Policies value the lost production of the refinery by using the prevailing daily market pricing during the interruption of the business.

### TWENTIETH AFFIRMATIVE DEFENSE

The Time Element coverage under the Policies does not cover any loss during any period in which the facility would not have been in operation or services would not have been maintained, for any loss or reason other than direct physical loss or damage resulting from a covered cause of loss.

### TWENTY-FIRST AFFIRMATIVE DEFENSE

ICBCS has failed to fully document, support or otherwise prove all of its claimed damages.

### TWENTY-SECOND AFFIRMATIVE DEFENSE

ICBCS's claims are barred by its failure to mitigate damages.

### TWENTY-THIRD AFFIRMATIVE DEFENSE

ICBCS's claims against Insurers are barred, in whole or in part, to the extent that there are other insurance or contracts of indemnity applicable to the underlying matters, claims, or losses.

### TWENTY-FOURTH AFFIRMATIVE DEFENSE

ICBCS's claims against Insurers are barred, in whole or in part, to the extent that ICBCS failed to cooperate with Insurers in performing all acts and conditions as required by the Policies.

**TWENTY-FIFTH AFFIRMATIVE DEFENSE**

ICBCS is not entitled to recover from Insurers its costs, expenses, legal and/or attorney's fees.

**TWENTY-SIXTH AFFIRMATIVE DEFENSE**

ICBCS's claims against Insurers are barred or vitiated, in whole or in part, to the extent there have been any material misrepresentations in the submission of the claim.

**TWENTY-SEVENTH AFFIRMATIVE DEFENSE**

ICBCS's claims against Insurers are barred, in whole or in part, because a bona fide dispute concerning the amount of coverage available under the Policies existed between the parties and, therefore, Insurers had a reasonable basis to investigate ICBCS's claims.

**TWENTY-EIGHTH AFFIRMATIVE DEFENSE**

ICBCS's claims against Insurers are barred, in whole or in part, because a bona fide dispute concerning the amount of coverage available under the Policies existed between the parties and, therefore, Insurers had a reasonable basis to deny payment of certain costs claimed by ICBCS.

**TWENTY-NINTH AFFIRMATIVE DEFENSE**

ICBCS's claims against Insurers are barred, in whole or in part, to the extent ICBCS's request for damages is speculative and conjectural.

**THIRTIETH AFFIRMATIVE DEFENSE**

Insurers reserve the right to assert any and all additional affirmative defenses as may be revealed by further discovery and/or investigation.

**THIRTY-FIRST AFFIRMATIVE DEFENSE**

The liability of an insurer under the Policies is several and not joint with other insurers. An insurer is liable only for the proportion of liability it has underwritten.

## THIRTY-SECOND AFFIRMATIVE DEFENSE

Any paragraph or allegation set forth in the Complaint not expressly admitted by Insurers, and for which no other response is set forth herein, is expressly denied.

Dated: May 6, 2020

**HOGAN MCDANIEL**

*/s/ Garvan F. McDaniel*

Garvan F. McDaniel (#4167)
1311 Delaware Avenue
Wilmington, Delaware 19806
Telephone 302-656-7540
gmcdaniel@dkhogan.com

*Co-Counsel for Defendant Insurers*

-and-

**WILMER CUTLER PICKERING HALE
AND DORR LLP**

Craig Goldblatt [Del. Bar. No. 6665]
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Telephone: 202-663-6000
Craig.Goldblatt@wilmerhale.com

Benjamin W. Loveland
60 State Street
Boston, MA 02109
Telephone: 617-526-6000
Benjamin.Loveland@wilmerhale.com

*Co-Counsel for Defendant Insurers*

-and-

**ZELLE LLP**

Jonathan R. MacBride
1635 Market Street, Suite 1600
Philadelphia, PA 19103
Telephone: 484-532-5330
jmacbride@zelle.com

Mathew Gonzalez
45 Broadway, Suite 920
New York, NY  10006
Telephone 646-876-4410
mgonzalez@zelle.com

*Co-Counsel for Defendant Insurers*