# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| PES HOLDINGS, LLC, *et al.*, | ) | |
| | ) | Case No. 19-11626 (LSS) |
| Debtors. | ) | |
| | ) | (Jointly Administered) |
| | ) | |
| | ) | |
| PES HOLDINGS, LLC, *et al.*, | ) | |
| | ) | Adversary Proceeding |
| Plaintiffs, | ) | |
| | ) | Case No. 20-50454 (MFW) |
| -and- | ) | |
| | ) | |
| ICBC STANDARD BANK PLC, | ) | |
| | ) | |
| Intervenor-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ALLIANZ GLOBAL RISKS US INSURANCE | ) | |
| CO., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE THE REPORT AND TESTIMONY OF JONATHON HELD

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................. 1

STATEMENT OF FACTS ...................................................................... 3

I.  THE PARTIES' DISPUTE OVER THE MEANING OF THE DEFINED TERM
    "ACTUAL CASH VALUE" ................................................................. 3

II. THE HELD REPORT ...................................................................... 4

    A.  Mr. Held's Purported Expert Opinions ......................................... 4

    B.  The Held Report Does Not Include Opinions about How to Appropriately
        Calculate Actual Cash Value under the Language of the PES Policy ............. 5

III. MR. HELD'S DEPOSITION TESTIMONY ................................................... 6

    A.  Mr. Held Testified about How to Interpret the Policy's Definition of Actual
        Cash Value ................................................................... 6

    B.  Mr. Held Testified about Legal Standards in New York and Case Law,
        Statutes, and Regulations in Various Jurisdictions ........................... 7

LEGAL STANDARDS ........................................................................ 8

ARGUMENT ............................................................................... 9

I.  THE OPINIONS EXPRESSED IN THE HELD REPORT WILL NOT ASSIST THE
    TRIER OF FACT WITH ANY MATERIAL ISSUES IN THIS CASE ......................... 10

II. MR. HELD PLANS TO OFFER INADMISSIBLE LEGAL OPINION TESTIMONY . 13

CONCLUSION ............................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

**Page(s)**

*Berckeley Inv. Group, Ltd. v. Colkitt*,
  455 F.3d 195 (3d Cir. 2006) ............................................................................9, 13

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993) ...........................................................................................8, 9

*Dickler v. CIGNA Property and Casualty Co.*,
  957 F.2d 1088 (3d Cir. 1992) ................................................................3, 7, 11, 12

*Gen. Elec. Co. v. Joiner*,
  522 U.S. 136 (1997) ................................................................................................8

*Knopick v. Downey*,
  2013 WL 1882983 (M.D. Pa. May 6, 2013) ...........................................................9

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999) ................................................................................................9

*Padillas v. Stork-Gamco, Inc.*,
  186 F.3d 412 (3d Cir. 1999) ...................................................................................9

*Schneider ex rel. Est. of Schneider v. Fried*,
  320 F.3d 396 (3d Cir. 2003) ...........................................................................8, 9, 13

*SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props., LLC*,
  445 F. Supp. 2d 320 (S.D.N.Y. 2006)

*Transportes Aereos Pegaso, S.A. de C.V. v. Bell Helicopter Textron, Inc.*,
  623 F. Supp. 2d 518 (D. Del. 2009) ..................................................................9, 13

*U.S. v. Duncan*,
  42 F.3d 97 (2d Cir. 1994) ......................................................................................13

*UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*,
  949 F.3d 825 (3d Cir. 2020) ...................................................................................9

**Rules**

Federal Rule of Evidence 702 .......................................................................... *passim*

Federal Rule of Bankruptcy Procedure 9017 .........................................................8

Plaintiffs PES Holdings, LLC, North Yard GP, LLC, North Yard Logistics, L.P., PES Administrative Services, LLC, PES Energy, Inc., PES Intermediate, LLC, PES Ultimate Holdings, LLC, and Philadelphia Energy Solutions Refining and Marketing LLC (collectively "PES") submit this brief in support of their Motion to Exclude the Report and Testimony of Jonathon Held.

## PRELIMINARY STATEMENT

In this adversary proceeding, the Court will be tasked with interpreting the relevant contractual language, finding all the necessary facts, and applying the facts to the contract to determine PES's ultimate insurance recovery.  One of the parties' key disputes concerns the proper interpretation of "Actual Cash Value," a term defined in the Policy[1] as "[t]he Replacement Cost less deduction for physical depreciation."   Both parties, by their counsel, will present legal argument on the meaning of that Policy definition.  Both parties will also present the Court with expert engineering opinions about the categories of cost that together comprise the baseline Replacement Cost from which Actual Cash Value is calculated.  Aided by that legal advocacy and technical expert testimony, the Court can interpret the Policy and apply it to the facts to determine the Actual Cash Value of the PES unit under this Policy.

Insurers, however, seek to confuse the issues and prejudice PES by advancing an additional so-called "expert in the determination of ACV," Jonathon Held.  Based on Mr. Held's July 8, 2021 report and October 4, 2021 deposition testimony, his opinions are either (1) unhelpful to the trier of fact and therefore inadmissible under Federal Rule of Evidence 702; or (2) legal in nature and therefore inadmissible as expert testimony because they usurp the Court's role.

Mr. Held, likely cognizant of the prohibition against experts providing legal opinion testimony, carefully limited his expert report to general loss valuation principles like "indemnity,"

---

[1] Unless otherwise noted, capitalized terms have the same definition provided in the Memorandum of Law in Support of PES's Motion for Partial Summary Judgment.  D.I. 215.

rather than interpreting PES's specific Policy language.  While this strategy might initially protect Mr. Held from being stricken for offering inadmissible legal opinion, it unwittingly rendered his opinions unhelpful to the Court on any material issue in this case.  The opinions in Mr. Held's report are irrelevant because New York law is crystal clear that this Court must interpret the Policy's Actual Cash Value definition as a matter of law and apply it as written, rather than rely on amorphous "principles" like the ones advanced in Mr. Held's report.  Indeed, multiple courts applying New York law (one of which precluded Mr. Held's testimony in circumstances very similar to these) have expressly disavowed principles like "indemnity" when an insurance policy defines Actual Cash Value.  By offering an opinion focused on general principles rather than Policy language, Mr. Held disregards the New York law that this Court must apply and as a result advances only opinions that are irrelevant to the Court's analysis.  Accordingly, the Held report should be stricken and Mr. Held should be precluded from testifying at trial.

But the story does not end with Mr. Held's report.  Several months after submitting it, Mr. Held sat for a deposition in which he did a 180 degree turn and repeatedly testified about his opinions on the legal definition of Actual Cash Value in the Policy, as well as his views on court decisions and legislation around the country that contradict his purported expert opinions.  Courts interpret insurance contracts like the PES Policy as a matter of law, and well-settled federal law, including in the Third Circuit, establishes that expert witnesses may not offer testimony on such matters of law.  Why Mr. Held so willingly admitted that he plans to offer inadmissible legal opinion testimony, especially when Insurers' counsel have already advanced legal arguments on the meaning of "physical depreciation" in summary judgment briefing, we do not know.  But regardless of Mr. Held's rationale, and even if the Court was interested in his testimony about the Policy or the law, it is *per se* inadmissible legal opinion testimony.  Allowing it would give Insurers

2

a second bite at the "physical depreciation" apple and punish PES for not advancing an analogous "expert" on purely legal issues. Accordingly, in addition to the irrelevance of the opinions in his Report, Mr. Held should independently be precluded because he clearly plans to offer inadmissible legal opinion testimony at trial.

## STATEMENT OF FACTS

### I.     THE PARTIES' DISPUTE OVER THE MEANING OF THE DEFINED TERM "ACTUAL CASH VALUE"

The parties' disagreement on how to interpret the Policy's definition of "Actual Cash Value" is central to this case. Actual Cash Value is defined as "[t]he Replacement Cost less deduction for physical depreciation." *See* Declaration of Nicholas R. Maxwell ("Maxwell Decl."), Ex. 1 (Policy Excerpts) at § I.6.a. The term "physical depreciation" is undefined. Replacement Cost, the defined term incorporated into Actual Cash Value, is defined in relevant part as:

> The amount it would take to repair or replace the damaged or destroyed property with materials of like kind and quality, without deduction for depreciation or obsolescence and including the Insured's overhead, and normal and customary profit should the Insured participate in the repair or replacement of damaged property …

*Id*. at § I.6.f.

In their summary judgment briefing, Insurers frame one of the parties' key disputes (whether "physical depreciation" contemplates depreciating intangible labor costs) around the principle of "indemnity" – the notion that every Actual Cash Value calculation must leave the policyholder in the same condition it was in prior to the loss. However, New York cases hold that if a policy defines Actual Cash Value, "indemnity" becomes irrelevant because the court must apply the policy language as written. *See SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props., LLC*, 445 F. Supp. 2d 320, 346–47 (S.D.N.Y. 2006); *Dickler v. CIGNA Property and Casualty Co.*, 957 F.2d 1088 (3d Cir. 1992) (applying New York law). Nonetheless, regardless of whether PES or

3

Insurers is correct on the "physical depreciation" Policy language dispute, it is a *legal* dispute for the Court and the Court alone to resolve.

## II.    THE HELD REPORT

On July 8, 2021, Insurers issued the "Expert Report of Jonathon C. Held" (the "Held Report" or the "Report") to PES.  *See* Maxwell Decl., Ex. 2.  Therein, Mr. Held stated that he is an "expert in the determination of ACV" and that Insurers retained him "to offer opinions in connection with the actual cash value (ACV) loss" suffered by PES.  *Id*. at 1.

### A.    Mr. Held's Purported Expert Opinions

The Held Report offers ten purported expert opinions.  Three opinions contradict the ACV calculation by Insurers' adjuster, Integra.  Report at 2 (Opinions 8-10).  One endorses the technical depreciation analysis by Insurers' engineering consultant, KBR, *id*. (Opinion 7), but the Report later contradicts other aspects of KBR's analysis.  *Id*. at 7.  The remaining six (Opinions 1-6) disagree with PES's ACV calculated by Brindley Engineering ("BE"), because BE did not use what Mr. Held considers an "appropriate method" of applying physical depreciation and because BE's analysis was based in part on instructions from counsel to use *Insurers'* depreciation percentage.  *Id*. at 1 (Opinions 3, 4).

At his October 4, 2021 deposition, Mr. Held testified about his belief "that with respect to the manner in which every one of the experts arrived at actual cash value, … there are technical problems with each one."  Maxwell Decl., Ex. 3 (Excerpts of Transcript of Remote Deposition of Jonathon Held) ("Held Tr.") at 135:14-19.  Given his disagreement with all of the parties' Actual Cash Value calculations, PES would have expected Mr. Held to offer a competing ACV using his own methodology.  However, he never does.  The BE analysis that the Held Report purports to rebut, by contrast, identifies PES's numerical Actual Cash Value calculation and the methodology

4

upon which it is based.  Maxwell Decl., Ex. 4 (Excerpts of June 7, 2021 Unit 433 Estimate Analysis by Brindley Engineering) at 133-35.

    **B.**    **The Held Report Does Not Include Opinions about How to Appropriately Calculate Actual Cash Value under the Language of the PES Policy**

At deposition, Mr. Held acknowledged that this Court will be tasked with determining the ACV according to the Actual Cash Value definition in the Policy.  Held Tr. at 28:23-30:17. However, beyond citing the Policy's ACV definition in passing, the Held Report does not offer an opinion on how the Court should calculate ACV *under the Policy* (or what the correct ACV would be).  Instead, the sources of Mr. Held's opinions are several high-level concepts that Mr. Held believes are relevant to the measurement of property insurance losses, most notably the "valuation principle" known as "indemnity."  Report at 3.  "Indemnity," however, does not appear in the definition of Actual Cash Value or anywhere else in the Policy.  Tellingly, while the Held Report alleges that BE did not apply the "appropriate method" to calculate depreciation, Report at 1, Mr. Held never opines that the "appropriate method" is the same as the method that the Policy requires this Court to use.

Mr. Held later opines that KBR used the "appropriate method," but again his opinion, like KBR's, does not rely on or even reference the Policy.  Report at 6.  He then contends that the contingency allowance included in Actual Cash Value by *both* parties "should not be included" in any ACV calculation.  Report at 8.  The source of Mr. Held's contention:  "[his] opinion."  *Id.*

As to the parties' key dispute on labor cost depreciation, Mr. Held opines that "[a]ny study of depreciation which attempts to determine a value to indemnify a policyholder for a loss must include depreciation of labor," and that BE's exclusion of labor depreciation "was inappropriate." Report at 8, 9.  This is a key example of the disconnect between the Held Report, the Policy, and the law applicable to this case.  Despite stating in his Report that the analysis under this Policy

5

"must" depreciate labor, he acknowledged at deposition that: (1) states across the country explicitly bar insurers from applying depreciation to labor costs when calculating Actual Cash Value; and (2) although New York's highest court has not addressed the issue, numerous New York courts have stated that "indemnity," the guiding principle behind Mr. Held's entire report, does not apply to insurance policies that define Actual Cash Value. Held Tr. at 112:16-113:1; 270:6-271:11.

## III.   MR. HELD'S DEPOSITION TESTIMONY

At his October 4, 2021 deposition, Mr. Held did an about-face from the Report (which mentioned the Policy only in passing) and repeatedly tied his opinions to the language of the Policy, New York case law on interpreting Actual Cash Value definitions in insurance policies, and statutes and case law from throughout the country regarding the depreciation of labor.

### A.   Mr. Held Testified about How to Interpret the Policy's Definition of Actual Cash Value

While Mr. Held quoted the Policy definition of Actual Cash Value only in passing in the Held Report, Mr. Held repeatedly testified at deposition about how to interpret the key phrase from the ACV definition, "physical depreciation." For example:

Q: What I am trying to get at is the use of the phrase 'physical depreciation' in this insurance policy, rather than just those words in the abstract. And I'm trying to understand whether or not your expert opinion in this case would include an interpretation of that phrase as it is used in the insurance policy. …

A: … yes, I believe I have the ability and the expertise to be able to do that. And if asked, I certainly would offer my opinion.

Q: So *if asked by the Court to hear your interpretation of what physical depreciation means in this insurance policy*, you feel qualified to give an expert opinion on that?

A: *Absolutely*.

6

Held Tr. at 26:17-27:15 (emphases added); *see also id.* at 24:24-25:2 ("[T]o the extent that the policy talks about physical depreciation, yes, I understand what physical depreciation is"); 187:5-10 ("I'm providing testimony as an expert on actual cash value, and *I believe I understand what the actual cash value clauses of the policies mean.*") (emphasis added)).

### B.    Mr. Held Testified about Legal Standards in New York and Case Law, Statutes, and Regulations in Various Jurisdictions

In addition to interpreting the words in the Policy, Mr. Held testified about New York case law on ACV valuation in New York.  Beyond just identifying the key cases (including *Dickler*, *supra*, in which the court struck Mr. Held's own testimony for not abiding by the policy's ACV definition), Mr. Held offered affirmative interpretations of the cases.  Held Tr. at 105:4-16 ("As somebody who understands indemnity and actual cash value, I believe [*Dickler*] is wrong."); 129:15-21 ("I can tell you it's pretty clear to me that what [the judge in *SR International*, *supra*] is saying here …").  Moreover, Mr. Held boldly testified under oath that he can intuit what a judicial opinion *really* means, even when the actual text reads otherwise.  For example, he testified that despite the plain text of the *SR International* decision undercutting his opinion in this case about indemnity, the judge actually meant something different.  *Id.* at 285:9-16 (explaining "what was in the judge's mind when he wrote that opinion"); 286:9-10 ("[I]t was very clear what Judge Mukasey has been thinking.").  He even went so far as to support his position by explaining that he personally knows the judges in the case.  *Id.* at 286:9-14 ("I have had a lot of opportunity to talk to [the *SR Int'l* judges] and present with them since 9/11.  So, yeah, I mean, it's very clear.").

Specifically with respect to labor depreciation, Mr. Held testified about the meaning of a California statute, multiple state Supreme Court decisions, and the merit of state insurance regulations.  *See*, *e.g.*, Held Tr. at 338:14-19 ("There's no question that what [the California legislature] did was throw the principle of indemnity out the window."); 334:9-335:9 ("I don't

7

agree with [the Illinois Supreme Court on depreciation of labor] …); 318:15-21 ("Q:  Is the Vermont Department of Financial Regulation Division of Insurance wrong? … A:  Very much wrong.").

On October 29, 2021, Insurers designated Mr. Held as a witness to be called at trial. Maxwell Decl., Ex. 5 (Insurers' Oct. 29, 2021 Live Witness Designations).

## **LEGAL STANDARDS**

A witness seeking to offer expert testimony in federal court must meet the standards of Federal Rule of Evidence 702, applied to this case by Federal Rule of Bankruptcy Procedure 9017:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a)    the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)    the testimony is based on sufficient facts or data;
>
> (c)    the testimony is the product of reliable principles and methods; and
>
> (d)    the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Expert testimony is admissible under Rule 702 only if it "rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). The Third Circuit, construing *Daubert*, has explained "that Rule 702 embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit." *Schneider ex rel. Est. of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003).  To meet the "qualification" requirement, the proposed expert must "possess specialized expertise." *Id*.  To meet the "reliability" requirement, the testimony cannot be based on "subjective belief or unsupported speculation." *Id*. "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec.*

8

*Co. v. Joiner*, 522 U.S. 136, 146 (1997).  Finally, to meet the "fit" requirement, the testimony "must be relevant for the purposes of the case and must assist the trier of fact." *Schneider*, 320 F.3d at 404.  "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591 (internal quotation omitted).  The proponent of the expert testimony has the burden of establishing, by a preponderance of the evidence, that the admissibility requirements are satisfied. *Padillas v. Stork-Gamco, Inc.*, 186 F.3d 412, 417–18 (3d Cir. 1999) (citing *Daubert*, 509 U.S. at 592 n.10).  Importantly, Rule 702 and the *Daubert* gatekeeping rule apply to a federal trial court even if the trier of fact is the court itself.  *UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 832 (3d Cir. 2020).

*Daubert*'s requirements apply "not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).  It is well-settled under Rule 702 that "an expert witness is prohibited from rendering a legal opinion." *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006); *Transportes Aereos Pegaso, S.A. de C.V. v. Bell Helicopter Textron, Inc.*, 623 F. Supp. 2d 518, 533 (D. Del. 2009).  While experts may offer otherwise admissible testimony relating to an ultimate issue in the case, they "may not … state legal conclusions drawn by applying the law to the facts." *Transportes Aereos Pegaso*, 623 F. Supp. 2d at 533.  Indeed, "[b]ecause the [trier of fact] does not decide questions of law, legally conclusive statements are not helpful to the [trier of fact], and thus, inadmissible at trial or at summary judgment." *Knopick v. Downey*, 2013 WL 1882983, at *14 (M.D. Pa. May 6, 2013).

## ARGUMENT

Prior to Mr. Held's deposition, his opinions appeared carefully calculated to avoid any argument that he is offering inadmissible legal opinion testimony.  Indeed, beyond quoting the Policy's definition of Actual Cash Value, the Report consists entirely of Mr. Held's own *ipse dixit*

9

opinions and has no nexus with the parties' dispute over the meaning of the Policy.[2]  At deposition, however, Mr. Held radically changed course, repeatedly confirming that he plans to testify at trial about his interpretation of the Policy.  He also did not hesitate to offer interpretations of relevant statutes, regulations, and case law from New York and across the country.

This strategy has left Insurers between a rock and a hard place.  Mr. Held's opinions are either unrelated to the Policy (as the Held Report suggests), in which case they are irrelevant to any issue of fact in this case, or they constitute legal opinions on the interpretation of the Policy and case law (as his deposition testimony suggests), in which case they impermissibly usurp the Court's role and prejudice PES.  Insurers should have submitted their proposed Actual Cash Value figure and left the supporting legal arguments to counsel, like PES did.  Allowing Insurers to offer Mr. Held's testimony would give Insurers a second bite at the apple on the meaning of Actual Cash Value, enable them to make legal arguments under the guise of "expert" testimony, and unfairly punish PES for its appropriate decision to not attempt to offer an analogous "expert" on this key question of law.

## I.  THE OPINIONS EXPRESSED IN THE HELD REPORT WILL NOT ASSIST THE TRIER OF FACT WITH ANY MATERIAL ISSUES IN THIS CASE

The Court should strike the Held Report and preclude Mr. Held from testifying at trial because the opinions in the Report will not aid the Court in evaluating the parties' competing positions on the meaning of "physical depreciation" in the Policy's Actual Cash Value definition.  Mr. Held's opinions revolve around the "valuation principle" known as "indemnity," Report at 3, 7, 8, 9, but at least two courts interpreting New York law have held that the principle is irrelevant

---

[2] *See* Report at 2-3.  The only substantive Policy discussion concerns a moot issue, namely whether the Policy permits an obsolescence deduction.  *See* D.I. 222 at 27 (Insurers acknowledging in summary judgment briefing that ACV calculation cannot deduct for obsolescence based on Policy definition).

to ACV calculations under a policy that defines Actual Cash Value.  In the first, *Dickler*, the Third

Circuit explained that the policy's definition of Actual Cash Value overrides the concept of fair

market value or any other extra-contractual principles used to calculate ACV.  Mr. Held is well

aware of *Dickler*, as his loss valuation on behalf of the insurer in that case was stricken because it

disregarded the policy and instead relied on the same type of extra-contractual principles he urges

the Court to adopt here.   Held Tr. at 97:6-14; *Dickler*, 957 F.2d at 1100 ("Held's ultimate

depreciation figure was clearly irrelevant because Held … considered factors other than [the policy

definition]").   Put simply, Mr. Held already tried to do *exactly* what he is trying to do in his Report:

convince a court interpreting an insurance policy under New York law to shelve the plain language

of the policy and focus on amorphous external principles.   PES submits that this Court should

reach the same decision that the Third Circuit (applying New York law) reached in *Dickler*.[3]

SR *International*, a case in which Mr. Held was an appraiser appointed by the insurers, is

even clearer.   There, a New York court, interpreting an insurance policy that defined Actual Cash

Value, expressly rejected the insurers' attempt to interpret ACV by reference to the same principle

of "indemnity" underpinning all of the opinions in the Held Report in this case:

> The broadly phrased theoretical principles of property insurance law *do not require*
> *that all insurance contracts be read to provide complete indemnity, assuming such*
> *a goal is attainable*; nor do they override contractual language that foregoes the
> unbounded fact-finding of the broad evidence rule in favor of a more predictable
> method of determining ACV.  When the Insurers focus on broad principles and not
> on the actual words at hand, these broad principles become the grin on the Cheshire
> cat: When the Insurers are all done, the cat—the text of the Travelers policy—
> disappears, and all that is left is the grin.

---

[3] Indeed, Mr. Held expressly admitted that under New York law, the broad evidence rule (the
rule that allows insurers to consider fair market value and other factors relevant to "indemnity")
*cannot* be used where the policy defines ACV.  Held Tr. 109:1-8; 110:18-23 (the policy definition
in *Dickler* "limited what [the insurer] could do [when calculating ACV] in a broad evidence state
like New York").

DOCS_DE:236971.1 70753/001

445 F. Supp. 2d at 346 (emphasis added).  Accordingly, the insurers' effort to broaden the ACV analysis beyond the plain language of the policies was rejected.  *Id*. at 355.

Given his personal involvement in *Dickler* and *SR International* (including having his opinion stricken in *Dickler*), Mr. Held well knows that if a policy is governed by New York law and defines Actual Cash Value, like PES's Policy does, the concept of "indemnity" is irrelevant. He acknowledged under oath that there are circumstances under New York law in which the correct ACV calculation "do[es] not get you to indemnity" and testified that the PES claim "may be one of those cases."  Held Tr. at 112:16-113:1.  Mr. Held even admitted that if Insurers had tasked him with calculating ACV under the PES Policy (which for unknown reasons they did not), he would not have considered fair market value or other economic indicators because "complete indemnity is not the goal."  *Id*. at 133:5-19, 134:12-20.

Despite all of those admissions, Mr. Held still unabashedly submitted a report full of opinions that all revolve around the concept of "indemnity" and the technical, non-Policy-based depreciation analyses performed by Insurers' consultants.  The discussion of labor depreciation is a perfect example.  Mr. Held opined that "[a]ny *study* of depreciation which attempts to determine a value to indemnify a policyholder for a loss *must* include depreciation of labor."  Report at 8 (emphases added).  Even if that were correct (which it is not), there is a fundamental difference between a "study of depreciation" and a calculation of Actual Cash Value under the PES Policy governed by New York law.  Mr. Held readily admitted that despite his opinion of what a "study of depreciation … must include," it is actually unlawful to depreciate labor in various jurisdictions. Held Tr. at 270:6-271:11 (discussing Report at 8).  So the actual question facing this Court is not whether a depreciation "study" must depreciate labor, but rather whether New York law permits

12

the Court to read the phrase "physical depreciation" in this Policy as encompassing intangible labor costs. On that key question, the Held Report provides no guidance.

Based on this fundamental dissonance between the unsupported opinions in the Held Report and the New York law analysis that the Court must perform to interpret Actual Cash Value under the Policy and apply it to the facts, the Held Report does not "help the trier of fact … determine a fact in issue." Fed. R. Evid. 702. Accordingly, the Court should strike the Report and preclude Mr. Held from testifying at trial.

## II.    MR. HELD PLANS TO OFFER INADMISSIBLE LEGAL OPINION TESTIMONY

As explained above, Mr. Held's testimony about technical depreciation "studies" and general principles like "indemnity" is inadmissible because it does not meet Rule 702's relevance requirement. *Schneider ex rel. Est. of Schneider*, 320 F.3d at 404. However, Mr. Held should also be precluded from testifying at trial for the independent reason that he plans to offer legal opinion testimony. At deposition, Mr. Held unexpectedly changed course and started grounding his opinions in the language of PES's Policy. Regardless of whether these opinions assist the Court (and they do not), they are *per se* inadmissible because Mr. Held's testimony will include legal opinions that usurp this Court's role. *See Berckeley Inv. Group, Ltd.*, 455 F.3d at 217; *Transportes Aereos Pegaso*, 623 F. Supp. 2d at 533; *see also U.S. v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994) ("When an expert undertakes to tell the [trier of fact] what result to reach, this does not aid the [trier of fact] in making a decision, but rather attempts to substitute the expert's judgment for the [trier of fact's].").

Mr. Held's deposition testimony shows that he is perfectly willing to offer up legal interpretations of a contract. Mr. Held can trot out canned testimony that he is not a lawyer and only judges can insurance interpret policies, Held Tr. at 89:11-12, but the substance of his

13

deposition testimony plainly includes legal interpretations of the PES Policy.  Mr. Held could have

at least argued that he was testifying about "physical depreciation" as the words are used in the

insurance industry, not as they appear in this insurance contract.  But to his credit, Mr. Held was

transparent about the true objective behind his purported "expert" opinions:

> Q:  What I am trying to get at is the use of the phrase 'physical depreciation' in this insurance policy, rather than just those words in the abstract.  And I'm trying to understand whether or not your expert opinion in this case would include an interpretation of that phrase *as it is used in the insurance policy*. …
>
> A:  … yes, I believe I have the ability and the expertise to be able to do that.  And if asked, I certainly would offer my opinion.

*Id*. at 26:17-27:8 (emphasis added).  Mr. Held repeatedly reaffirmed this purported expertise with

the Policy:  "I'm providing testimony as an expert on actual cash value, and *I believe I understand*

*what the actual cash value clauses of the policies mean*."  *Id*. at 187:5-10 (emphasis added).

It is hard to imagine more clear admissions from a non-lawyer that his proposed testimony

concerns matters of law and contract construction not suited for expert testimony.  Mr. Held's

extended testimony opining on judicial decisions across the country reiterates that Mr. Held

believes he is an expert on the law and plans to offer trial testimony in that capacity.  *See* Held Tr.

319:6-10 (a state regulation prohibiting labor depreciation is "absurd, and makes no sense");

139:13-15 ("Q:  Do you agree what that statement by the judge?  A:  No, I don't…."); 359:22-23

("I cannot understand the decisions that have [ruled against labor depreciation].").

Mr. Held must not be permitted to offer such inappropriate, prejudicial testimony at trial.

It is the role of Insurers' counsel, not an expert on general principles of loss valuation, to advocate

to this Court that the phrase "physical depreciation" permits them to heavily depreciate tens of

millions of dollars of labor costs that PES would have incurred if it rebuilt the damaged property.

14

And Insurers apparently recognize that, as reflected by the fact that they have already made exactly those legal arguments in their summary judgment briefing.[4]

PES and Insurers have experts to advise this Court about the costs to be included in Replacement Cost and competent counsel to advance legal arguments about how Replacement Cost is reduced to reach ACV under the Policy's Actual Cash Value definition.  There is neither the need for additional expert testimony on the meaning of the Policy nor a basis in Rule 702 for such testimony.  Accordingly, this Court should preclude Mr. Held's testimony.[5]

## CONCLUSION

For the reasons set forth herein, PES respectfully requests that this Court grants its Motion, strike the Expert Report of Jonathon C. Held, and preclude Mr. Held from testifying at trial.

Dated:  November 12, 2021

*/s/ Peter J. Keane*
Laura Davis Jones (DE Bar No. 2436)
James E. O'Neill (DE Bar No. 4042)
Peter J. Keane (DE Bar No. 5503)
**PACHULSKI STANG ZIEHL & JONES LLP**
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone:    (302) 652-4100
Facsimile:    (302) 652-4400
Email:    ljones@pszjlaw.com
joneill@pszjlaw.com
pkeane@pszjlaw.com

---

[4] Insurers have not cited Mr. Held to support their legal interpretation of "physical depreciation," indicating that Insurers already know his legal opinion testimony is inadmissible.

[5] Mr. Held criticizes PES's engineering expert, BE, for taking guidance from counsel on certain aspects of its ACV calculation. Report at 1 (Opinions 3-4). This criticism completely misses the point – the meaning of Actual Cash Value is a legal issue properly argued by counsel, so PES did not offer a separate "expert" on it because the testimony would have been inadmissible for the same reason Mr. Held's testimony is. While BE (and Insurers) appropriately used *engineering* expertise to segregate materials and labor costs within its Replacement Cost estimate, BE explicitly clarified that its report "takes no position on the appropriate depreciation factors to apply … when calculating ACV …." Maxwell Decl., Ex. 4 (Excerpts of BE Analysis) at 135.

15

- and -

Edward O. Sassower, P.C.
Steven N. Serajeddini (admitted *pro hac vice*)
Matthew C. Fagen (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:         edward.sassower@kirkland.com
               steven.serajeddini@kirkland.com
               matthew.fagen@kirkland.com


Andrew A. Kassof, P.C. (admitted *pro hac vice*)
Nader R. Boulos, P.C. (admitted *pro hac vice*)
Michael B. Slade (admitted *pro hac vice*)
William T. Pruitt (admitted *pro hac vice*)
Whitney L. Becker (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 N. LaSalle
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:         andrew.kassof@kirkland.com
               nader.boulos@kirkland.com
               michael.slade@kirkland.com
               william.pruitt@kirkland.com
               whitney.becker@kirkland.com


Kenneth H. Frenchman (admitted *pro hac vice*)
Robin L. Cohen (admitted *pro hac vice*)
Marc T. Ladd (admitted *pro hac vice*)
Alexander M. Sugzda (admitted *pro hac vice*)
Nicholas R. Maxwell (admitted *pro hac vice*)
Chelsea L. Ireland (admitted *pro hac vice*)
**COHEN ZIFFER FRENCHMAN & MCKENNA LLP**
1350 Avenue of the Americas, 25th Floor
New York, New York 10019
Phone: (212) 584-1890
Email: kfrenchman@cohenziffer.com
       rcohen@cohenziffer.com
       mladd@cohenziffer.com
       asugzda@cohenziffer.com
       nmaxwell@cohenziffer.com

16

cireland@cohenziffer.com

*Counsel for Plaintiffs PES Energy, Inc., PES Holdings LLC, PES Administrative Services, LLC, PES Intermediate, LLC, PES Ultimate Holdings, LLC, and Philadelphia Energy Solutions Refining and Marketing LLC*

17