**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| PES HOLDINGS, LLC, *et al.*, | Case No. 19-11626 (LSS) |
| Debtors. | (Jointly Administered) |
| PES HOLDINGS, LLC, *et al.*, | |
| Plaintiffs, | |
| -and- | Adversary Proceeding |
| ICBC STANDARD BANK PLC, | |
| Intervenor-Plaintiff | |
| v. | Case No. 20-50454 (MFW) |
| ALLIANZ GLOBAL RISKS US INSURANCE CO., *et al.,* | |
| Defendants. | |

## DEFENDANT INSURERS' OMNIBUS NON-EXPERT MOTIONS IN LIMINE

Defendants submit this memorandum in support of their Omnibus Non-Expert Motions in Limine and respectfully show the Court as follows:

- To preclude reference to or evidence of Reinsurance communications at trial;

- To preclude reference to or evidence of Reserves at trial; and

- To preclude references to or evidence solely relating to PES's Time Element claim and/or adjustment.

1

## I.    STANDARD

Under Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…"[1] While that rule is to be "liberally construed," *Sec. Inv. Prot. Corp. v. Bernard L. Madoff* Inv. Sec. LLC, 2019 WL 1055958, at *5 (Bankr. S.D.N.Y. Mar. 5, 2019), it does not mean that the information sought will be admissible at trial, *Barrett v. City of New York*, 237 F.R.D. 39, 40 (E.D.N.Y. 2006). "A motion in limine is a tool by which to challenge the admissibility of evidence prior to trial based on the ground that its admission at trial, or any reference to the material in the presence of the jury, would be overly prejudicial." *Douglas v. Smith*, 2008 WL 2626654, at *1 (N.D.N.Y. July 1, 2008); *see also Pavone v. Puglisi*, 2013 WL 245745, at *1 (S.D.N.Y. Jan. 23, 2013) ("The purpose of a motion in limine is to facilitate an efficient trial by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence … without lengthy argument at, or interruption of, the trial.") (internal citation and quotations omitted); *State v. Metz*, 241 A.D.2d 192, 198, 671 N.Y.S.2d 79, 83 (1998) (explaining that "the function of a motion *in limine* is to permit a party to obtain a preliminary order before or during *trial* excluding the introduction of anticipated inadmissible, immaterial, or prejudicial evidence or limiting its use" and "to prevent the introduction of such evidence to the trier of fact, in most instances a jury").

Federal Rule of Evidence 402 provides that "[r]elevant evidence is admissible," but "[i]rrelevant evidence is not admissible."[2] However, relevant evidence may still be excluded "if its probative value is substantially outweighed by a danger of … unfair prejudice, confusing the

---

[1] Fed. R. Civ. P. 26(b)(1) applies in adversary proceedings via Fed. R. Bankr. P. 7026.
[2] The Federal Rules of Evidence apply in bankruptcy courts. Fed. R. Bankr. P. 9017.

issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Under Fed. R. Evid. 104 and Fed. R. Civ. P. 16, the court may enter an order in limine prohibiting counsel from presenting evidence on matters it deems to be properly excluded.

## II.    MOTION IN LIMINE NO. 1: TO EXCLUDE DOCUMENTS PERTAINING TO REINSURANCE

Insurers seek to exclude at trial the reinsurance information produced in discovery. The information PES seeks to admit is not relevant to the issues in this case and is prejudicial to Insurers' case.

Reinsurance is a contractual agreement between an insurer and a reinsurer. *Unigard Sec. Ins. Co. v. N. River Ins. Co.*, 4 F.3d 1049, 1054 (2d Cir. 1993). The reinsurer is not a party to the underlying insurance contract between the reinsured/insurer and the insured. *Id.* Reinsurers do not examine risks, receive notice of loss from the original insured, or investigate claims. *Id.* ("In practice, the reinsurer has no contact with the insured."). The purpose of reinsurance is to diversify the risk of loss, *Delta Holdings v. National Distillers*, 945 F.2d 1226, 1229 (2d Cir. 1991), and to reduce required capital reserves. *See Colonial Am. Life Ins. Co. v. Comm'r*, 491 U.S. 244, 246 (1989). As explained by one court:

> Reinsurance is purchased by insurance companies to insure their liability under policies written to their insurers. Typically, an insurer who has provided coverage against a large loss will cede all or part of that risk to other insurance companies along with a portion of the premiums. Ceding risk increases the insurer's capacity to insure other customers and decreases the likelihood that insurer insolvency will result from any large claim.

*N. R. Ins. Co. v. Cigna Reins. Co.*, 52 F.3d 1194, 1198 (3d Cir. 1995).  In other words, a reinsurance agreement is a contract by which "[o]ne insurer (a 'ceding insurer') 'cedes' all or part of the risk relating to a policy … to a reinsurer." *Travelers Indem. Co. v. Scor Reinsurance Co.*, 62 F.3d 74,

76 (2d Cir. 1995). The relationship is "strictly one of indemnification" and the "reinsurer has no privity with, and is generally not liable to, the original purchaser of the underlying policy." *Id.* at 76; *see also Lipton v. Superior Ct.*, 48 Cal. App. 4th 1599, 1616-17 (1996) (explaining that under a reinsurance agreement "one insurer transfers a *risk* (and a right to receive the related premium) to another insurer willing to accept both" and the reinsurance contract is a contract of indemnity "*for the benefit of the insurance company*; the original insured has no interest in it").

A.    **Reinsurance information should be excluded because it is not relevant.**

Reinsurance information is irrelevant to the interpretation of the Policy and has no bearing on PES's claims of bad faith. Any reinsurance information PES seeks to admit into evidence at trial lacks any relevance or probative value and is therefore inadmissible.

Courts applying New York law have found that reinsurance information is not relevant. *See e.g., Certain Underwriters at Lloyd's v. Nat'l R.R. Passenger Corp.*, 2016 WL 2858815, at *4 (E.D.N.Y. May 16, 2016) (denying an insured's motion to compel communications with reinsurer); *Utica Mut. Ins. Co. v. Clearwater Ins. Co.*, 2015 WL 12777360, at *3 (N.D.N.Y. Jan. 20, 2015), *aff'd,* 2015 WL 12777361 (N.D.N.Y. July 14, 2015) (finding that "Plaintiff's request for broad discovery involving reinsurance contracts between other non-party insurers … [was] simply not relevant" and "would be an unnecessary, burdensome and confusing diversion into an area unlikely to result in relevant or admissible evidence"); *Mt. McKinley Ins. Co. v. Corning Inc.*, 2010 WL 6334283, at *13 (N.Y. Sup. Ct. Feb. 25, 2010) (denying motion to compel reinsurance information, including reinsurance contracts, where insured's "assertion of relevance [was] purely conclusory" and based on "speculation"). Reinsurance is strictly a decision based upon business considerations and will not provide any "insight into the insurers' interpretation of the scope of coverage." *Leksi, Inc. v. Fed. Ins. Co.*, 129 F.R.D. 99, 106 (D.N.J. 1989) ("Reinsurance involves

a company's attempt to spread the burden of indemnification. It is a decision based on business considerations and not questions of policy interpretation.").

PES is not a party to the reinsurance contract and the reinsurers have no liability to PES under their reinsurance contracts. The decisions related to reinsurance were made without PES and well before PES's claim was made. Therefore, any reinsurance information PES seeks to admit is not relevant or probative of the intent of the parties to the primary insurance contract or their contractual relationship. *Heights at Issaqua Ridge Owners Assoc. v. Steadfast Ins. Co.*, 2007 WL 4410260 at *4 (W.D. Wash. Dec. 13, 2007); *see also Leski*, 129 F.R.D. at 106 (holding that the relevance of reinsurance information to policy interpretation and coverage is "very tenuous"); *Independent Petrochemical Corp., v. Aetna Cas. & Sur. Co.,* 117 F.R.D. 283, 288 (D.D.C. 1986) (holding that reinsurance information is "of very tenuous relevance, if any relevance at all").[3]

Likewise, reinsurance communications have no bearing on how Insurers handle a claim. In this case, as in the typical case, the reinsurer is not liable to PES as the underlying policyholder, is not responsible for investigating the claim, and has had no contact with PES. *Steadfast*, 2007 WL 4410260 at *4; *Leksi*, 129 F.R.D. at 106; *Unigard*, 4 F.3d at 1054. Reinsurance is not relevant to PES's allegations of breach of contract or bad faith. *Steadfast*, 2007 WL 4410260, at *4.

Therefore, this reinsurance information must be excluded from evidence at trial because it is irrelevant to the current action.

---

[3] Other courts have also found that reinsurance information does not meet the relevance standard. *See, e.g., Great Lakes Dredge & Dock Co. v. Commercial Union Assur. Co.,* 159 F.R.D. 502, 504 (N.D. Ill. 1995) ("[T]he relevance of 'all documents' relating to reinsurance is too attenuated to be discoverable under the relevant evidence standard of Rule 26."); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Donaldson Co.*, 2014 WL 2865900, at *5 (D. Minn. June 24, 2014); *Independent Petroleum Corp. v. Aetna Casualty and Surety Co.*, 117 F.R.D. 283 (D.D.C. 1986).

B.    **Reinsurance information should be excluded because any probative value it may have is outweighed by the danger of unfair prejudice.**

Even if the Court finds that the reinsurance information is relevant, it must still be excluded under Federal Rule of Evidence 403 because "its probative value is substantially outweighed by … a danger of unfair prejudice, confusing the issues, [and] misleading the jury." Evidence relating to reinsurance is complex, separate from the insurance relationship, and has the potential to mislead the fact finder. Introducing an entirely separate and distinct set of reinsurance communications, including unrelated entities and properties, will confuse the issues. Accordingly, any probative value this reinsurance information may have is substantially outweighed by other factors and must be excluded at trial.

## III.    MOTION IN LIMINE NO. 2: TO EXCLUDE EVIDENCE OF RESERVES

Insurers seek to exclude at trial the reserve information produced in discovery. The information PES seeks to admit is not relevant to the issues in this case and is prejudicial to Insurers' case.

New York statutes require an insurance company to set reserves, which are used to determine an insurer's financial condition. N.Y. Ins. Law § 4117; N.Y. Ins. Law § 1303; *see also Safeco Ins. Co. of Am. v. M.E.S., Inc.*, 2014 WL 12833780, at *14 (E.D.N.Y. Apr. 11, 2014). The term "reserve" as it is used in the insurance context generally means:

> A sum of money, variously computed or estimated, which with accretions from interest, is set aside, 'reserved', as a fund with which to mature or liquidate, either by payment or reinsurance with other companies, future unaccrued and contingent claims, and claims accrued, but contingent and indefinite as to amount or time of payment.

*Couch v. Equity Gen. Ins. Co.*, 80 B.R. 512, 516 (S.D. Cal. 1987) (quoting *Maryland Cas. Co. v. United States*, 251 U.S. 342 (1942)). In this regard, reserves are essentially an accounting

mechanism "to ensure that there is adequate money available to pay claims." *Steadfast Ins. Co.*, 2007 WL 4410260 at *3.

Any "probative value of the reserve information … is attenuated by the fact that there are no certainties in litigation" and that "[r]egardless of the strength or weakness of an insured's claim for coverage, … there are very few cases in which the probability that the insured will succeed on its coverage claim can be valued at zero." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. H & R Block, Inc.*, 2014 WL 4377845, at *3 (S.D.N.Y. Sept. 4, 2014) ("[T]he establishment of a reserve may merely reflect a prudent insurer's recognition of the risks of [sic] inherent in litigation rather than an admission of coverage or liability."). Thus, reserves are "merely a business judgment made by an insurance company to guard against future loss." *In re Residential Cap., LLC*, 575 B.R. 29, 47-48 (Bankr. S.D.N.Y. 2017) (citing *U.S. Fire Ins. Co. v. City of Warren*, 2012 WL 1454008, at *10 (E.D. Mich. Apr. 26, 2012); *see also Safeco*, 2014 WL 12833780, at *10 (noting that the probative value of reserves may be low because "reserves merely reflect the possibility, no matter how remote or unlikely, that a claim may be resolved with a payment by the insurer," or that "the setting of a reserve on a case, or the level at which a reserve may be set, is not an 'admission' that the insured is liable on the claim ... or that the insurer actually believes that the dollar amount of the contingent liability will reach any particular level" (citing *Stonewall Ins. Co. v. Nat'l Gypsum Co.*, 1988 WL 96159, at *6 (S.D.N.Y. Sept. 6, 1988)).

A.    **Reserve information does not reflect an Insurer's liability or the value of the claim and is therefore irrelevant and inadmissible at trial.**

Courts routinely find that reserve information is not even discoverable because it is not "reasonably calculated to lead to the discovery of admissible evidence" in cases concerning the interpretation of the insurance policy. *Fidelity & Deposit Co. of Md. v. McCulloch*, 168 F.R.D. 516, 525 (E.D. Pa. 1996); *see also Sundance Cruises Corporation v. American Bureau of Shipping*,

1992 WL 75097, *1 (S.D.N.Y. Mar. 31, 1992) (holding that reserve information was not discoverable or relevant because the insurer's "assessment or its underwriter's assessment or its counsel's assessment of exposure to liability in this or prior cases has nothing to do with whether here there is liability"); *Prevost v. Westchester Fire Ins. Co.*, 2014 WL 12748051, at *1 (D.V.I. Feb. 4, 2014) ("[C]ourts in this circuit have routinely held that reserve information is not relevant."); *City of Warren*, 2012 WL 1454008, at *10 ("[C]ourts routinely find such information not discoverable under Rule 26 because it is neither relevant nor calculated to lead to the discovery of admissible evidence.").

However, even if reserve information is discoverable, it should ultimately be inadmissible at trial because such information is of "tenuous relevance." *Rhone-Poulenc Rorer, Inc. v. Home Indem. Co.*, 139 F.R.D. 609, 613 (D. Pa. 1991); *see also Union Carbide Corp. v. Travelers Indem. Co.*, 61 F.R.D. 411, 413 (W.D. Pa. 1973) (holding that "the contingent and uncertain nature of reserves could render questions about reserves tantamount to hypothetical questions"); *Am. Prot. Ins. Co. v. Helm Concentrates, Inc.*, 140 F.R.D. 448, 450 (E.D. Cal. 1991) ("Potential liability or the insured estimation as to potential liability is marginally relevant at best."); *Bondex Int'l, Inc. v. Hartford Acc. & Indem. Co.*, 2006 WL 355289, at *3 (N.D. Ohio Feb. 15, 2006) ("[E]vidence of the amount of reserves is not relevant because it is not necessarily based on a full knowledge of the facts and the law of the case … [but] most often reflects a business decision."). Generally, courts have found it "preferable that loss reserves not be admitted into evidence, because when an insurer sets loss reserves it should be solely concerned with the purpose of ensuring the company's financial stability and should not be tempted to 'manipulate its reserves' to be consistent with the insurer's settlement position." *Miller v. Kenny*, 180 Wash. App. 772, 812, 325 P.3d 278, 298 (2014). Moreover, many factors are involved in the establishment of a reserve that are unrelated

to coverage. *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 1991 WL 237636, at *4 (E.D. Pa. Nov. 7, 1991) (citing *Boeing Co. v. Aetna Cas. & Sur. Co.*, No. C86-352D, at *7 (W.D. Wash., May 11, 1989)).

Furthermore, because the legislature and insurance commissioner have established a reserve policy, "a reserve cannot accurately or fairly be equated with an admission of liability or the value of any particular claim." *Steadfast*, 2007 WL 4410260 at *3 (citing *In re Couch*, 80 B.N.R. 512, 517 (S.D. Ca. 1987); *see also Miller*, 180 Wash. App. at 812 ("Because a reserve is an estimate that includes attorney fees and other adjustment expenses, it cannot be equated with settlement authority."); *Silva v. Basin Western, Inc.*, 47 P.3d 1184 (2002) ("[T]he reserve requirement therefore reflects a desire on the part of the states and the insurance companies themselves to ensure that resources are available to cover the insurer's future liabilities. Thus, a particular reserve amount does not necessarily reflect the insurer's valuation of a particular claim."). The setting of reserves is a business decision; it is *not* a matter of policy interpretation. Claims "personnel set reserves on a basis that does not entail a thorough factual and legal analysis of a policy." *Leksi*, 129 F.R.D. at 114; *see also Fed. Realty Inv. Tr. v. Pac. Ins. Co.*, 760 F. Supp. 533, 540 (D. Md. 1991) (holding that "reserve decisions are mere guesses at the outcome of litigation based on conservative accounting principles"). Therefore, the "amount set as a reserve is not determinative of the insurer's interpretation of policy language," and thus has little relevance. *Leksi*, 129 F.R.D. at 114.

Furthermore, the reserve information is not relevant to the value of PES's damages. The only remining issues in this matter are the appropriate value of the physical damages suffered by PES. The reserve information has no probative value to the fact finder in determining what that value is. The parties have both submitted lengthy expert reports that detail the scope of damage

and the value of repairing the claimed damage. The various levels of reserves set by the Insurers during the adjustment process do not provide proof of what the true value of those damages are.

### B. Reserve information is not probative of whether insurer adequately investigated for purposes of an insured's bad faith claim.

In a first-party policy, the issue of "potential liability" is not relevant because "it does not trigger any duty" under the policy. *Helm*, 140 F.R.D. at 449-50. In *Helm*, the court aptly explained why reserve information is not relevant to first-party bad faith claims:

> [T]he [first-party] policy either provides coverage for the loss or does not, the insurer's good faith is determined by the manner and depth of its investigation and the determination of whether there was a good faith factual and/or legal question as to whether the loss was covered.

*Id.* at 449-50.

Other courts have also regularly held that reserve information is irrelevant in first-party cases, including bad-faith cases, because the insurer's reserves information is not probative of whether the insurer adequately investigated the claim and whether there was a good-faith question about coverage. *See Steadfast*, 2007 WL 4410260 at * 3-4 (denying motion to compel reserves when plaintiff failed to assert how the information would be relevant to the bad faith claim or what plaintiff must establish to prevail); *Rhone-Poulenc*, 139 F.R.D. at 614; *Leksi*, 129 F.R.D.at 114 ("[R]eserve information is basically irrelevant to the issues in the underlying action."); *Petrochem.*, 117 F.R.D. at 288; *Union Carbide Corp. v. Travelers Indemn. Co.*, 61 F.R.D. 411, 413 (W.D. Pa. 1973); *Fidelity and Deposit Co. of Md. v. McCulloch*, 168 F.R.D. 516, 525 (E.D. Pa. 1996) (finding no connection between bad faith claim and insurer's loss-reserve estimation of its own liability); *Safeguard Lighting Systs., Inc. v. N. Am. Specialty Ins. Co.*, 2004 WL 3037947 (E.D. Pa. Dec. 30, 2004) (denying motion to compel reserves in a first-party property claim alleging bad faith).

Insurers' reserves are neither relevant to PES's breach of contract claim nor its bad faith claims because the reserves were not derived from an analysis of liability or coverage. And, while PES may disagree, Insurers have interpreted the Policy in good faith, but merely reached different conclusions about coverage than PES. That the parties interpret the Policy differently does not demonstrate that Insurers' coverage position contradicts their reserves.

>C.      **Reserve information is misleading, prejudicial, and will cause delay.**

Even if the Court finds that reserve information is relevant, it must still be excluded under Federal Rule of Evidence 403 because "its probative value is substantially outweighed by a danger of … unfair prejudice, confusing the issues, [and] misleading the jury …" Admitting reserve information into evidence only has the potential to mislead the fact finder because so many factors, unrelated to coverage, are involved in establishing a reserve and reserves do not constitute an admission of liability by insurers.

## IV.     MOTION IN LIMINE NO. 4: TO EXCLUDE EVIDENCE OF PES's TIME ELEMENT CLAIM AND ICBCS'S CLAIM

PES, ICBCS and Insurers have settled PES's Time Element and ICBCS's claims. Therefore, Insurers move to preclude the admission of any evidence that relates solely to PES's released time element claims or ICBCS's claim.

Dated: December 3, 2021

>**HOGAN MCDANIEL**
>
>/s/ Garvan McDaniel
>
>_____
>Garvan F. McDaniel [Del. Bar No. 4167]
>1311 Delaware Avenue
>Wilmington, Delaware  19806
>Telephone 302-656-7540
>gmcdaniel@dkhogan.com

11

-and-

**WILMER CUTLER PICKERING HALE AND DORR LLP**

Philip D. Anker
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: 212-230-8890
philip.anker@wilmerhale.com

Benjamin W. Loveland
60 State Street
Boston, MA 02109
Telephone: 617-526-6000
benjamin.loveland@wilmerhale.com

-and-

**ZELLE LLP**

Jonathan R. MacBride
1635 Market Street, Suite 1600
Philadelphia, PA  19103
Telephone: 484-532-5330
jmacbride@zelle.com

Mathew Gonzalez
45 Broadway, Suite 920
New York, NY  10006
Telephone 646-876-4410
mgonzalez@zelle.com

Elizabeth Kniffen
500 Washington Avenue South, Suite 4000
Minneapolis, MN 55415
Telephone: 612-359-4261
ekniffen@zelle.com

*Co-Counsel for Defendant Insurers*