# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| PES HOLDINGS, LLC, *et al.*, ) | |
| ) | Case No. 19-11626 (LSS) |
| Debtors. ) | |
| ) | (Jointly Administered) |
| ) | |
| ) | |
| PES HOLDINGS, LLC, *et al.*, ) | |
| ) | Adversary Proceeding |
| Plaintiffs, ) | |
| ) | Case No. 20-50454 (MFW) |
| -and- ) | |
| ) | |
| ICBC STANDARD BANK PLC, ) | |
| ) | |
| Intervenor-Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| ALLIANZ GLOBAL RISKS US INSURANCE ) | |
| CO., *et al.*, ) | |
| ) | |
| Defendants. ) | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS'
MOTION TO EXCLUDE THE REPORT AND TESTIMONY OF JONATHON HELD**

## **TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ................................................................................................ 1

**ARGUMENT**............................................................................................................................... 3

    I.     "INDEMNITY" IS IRRELEVANT TO THE TRIER OF FACT........................................ 3

    II.    THE ONLY POTENTIALLY HELPFUL OPINIONS MR. HELD COULD OFFER WOULD BE INADMISSIBLE LEGAL OPINIONS........................................................... 5

    III.   THE COURT SHOULD STRIKE MR. HELD'S ENTIRE REPORT ............................... 6

**CONCLUSION** ............................................................................................................................ 7

# TABLE OF AUTHORITIES

**Cases**

                                                      **Page(s)**

*Berckeley Inv. Group, Ltd. v. Colkitt*,
    455 F.3d 195 (3d Cir. 2006) ............................................................................................... 1, 2

*Dickler v. CIGNA Prop. & Cas. Co.*,
    957 F.2d 1088 (3d Cir. 1992) ............................................................................................ 3, 4

*McAnarney v. Newark Fire Ins. Co.*,
    247 N.Y. 176 (1928) ............................................................................................................. 4

*SR Int'l Bus. Ins. Co. Ltd. v. World Trade Ctr. Props., LLC*,
    445 F. Supp. 2d 320 (S.D.N.Y. 2006) ............................................................................... 3, 4

**Rules**

Fed. R. Evid. 702 ..................................................................................................................... 1, 5

Plaintiffs PES Holdings, LLC, North Yard GP, LLC, North Yard Logistics, L.P., PES Administrative Services, LLC, PES Energy, Inc., PES Intermediate, LLC, PES Ultimate Holdings, LLC, and Philadelphia Energy Solutions Refining and Marketing LLC (collectively "PES") submit this reply memorandum of law in further support of their Motion to Exclude the Report and Testimony of Jonathon Held (the "Motion").

## PRELIMINARY STATEMENT

To be admissible, an expert opinion must "help the trier of fact … determine a fact in issue." Fed. R. Evid. 702. Here, the "fact in issue" is the PES Unit's Actual Cash Value, which the parties agree must be computed according to its plain and unambiguous Policy definition. Because Mr. Held's entire report is focused on broad extra-contractual principles, rather than on the governing Policy language, his opinions are irrelevant to the fact in issue and therefore do not satisfy Rule 702. Indeed, this Court rejected the entire premise of Mr. Held's report – "indemnity" – in its recent ruling granting PES's Motion for Partial Summary Judgment:

> Because the parties have defined the term ACV in their Policy, general principles of indemnity law cannot be applied in contravention of that express language.

*See* D.I. 280 (Opinion) at 15. Although PES's summary judgment motion only pertained to depreciation of labor costs, and that portion of the Held Report is now moot, the Court's rationale applies with equal force to all of Mr. Held's other indemnity-based opinions.[1]

As such, the only way Mr. Held *could* provide potentially helpful testimony would be by opining on the definition of Actual Cash Value in the Policy (which Mr. Held repeatedly testified under oath that he is willing and able to do). However, those opinions would necessarily be legal in nature, and an expert may not "help the trier of fact" by offering a "legal opinion." *Berckeley*

---

[1] This Motion remains ripe despite the summary judgment ruling because Mr. Held opines on numerous other aspects of Actual Cash Value that may arise at trial (including, among other things, contingency and depreciation of repair costs).

*Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006).  In other words, Mr. Held's testimony is either inadmissible because it is unhelpful or inadmissible because it constitutes legal opinions.

To be clear, this Catch-22 is of Insurers' own making.  The meaning of insurance policy language is a legal issue that is plainly not an appropriate subject for expert testimony, but Insurers introduced a purported expert on it anyway.  In reality, it is the parties' *counsel*'s job to argue about what Actual Cash Value means and how to compute it for PES's loss, and both parties' counsel already did just that in their summary judgment briefing.

In order to argue that Mr. Held's ponderings on "indemnity" will help the trier of fact determine Actual Cash Value (ACV) under the Policy, Insurers disregard the key difference between a technical "study" of depreciation and a computation of Actual Cash Value according to specific language in an insurance policy.  "Indemnity" might be a useful guide for Mr. Held when he performs an abstract technical study, but, as this Court recently held, it is irrelevant to determining Actual Cash Value *under the PES Policy*.  And Mr. Held understands that distinction.  Otherwise, for example, he would not be able to assert that any "study" of depreciation must depreciate labor in order to reach indemnity, but also admit that depreciating labor when calculating ACV under an insurance policy is literally against the law in many states.  In fact, the concept of "indemnity" is more than just simply unhelpful to the trier of fact with respect to the computation of ACV – parties agree to define Actual Cash Value specifically to *avoid* having to rely on indemnity and the related broad evidence rule when calculating ACV.  Indemnity, the undercurrent throughout Mr. Held's report, is anathema to the calculation this trier of fact is required to perform.  Accordingly, Mr. Held's report should be stricken.

Insurers may wish that Mr. Held could abandon indemnity and instead offer testimony about the meaning of Actual Cash Value in the Policy, and Mr. Held clearly sees himself as

2

qualified to do that, but such testimony would be automatically inadmissible as legal opinion. Insurers argue that there is no issue with Mr. Held's legal opinion testimony at deposition because he was baited into it by PES's counsel and has no intention of offering legal opinions at trial. But even if Insurers' "just trust us" argument is credible and Mr. Held would not interpret the Policy at trial, that leaves Insurers back where they started – with an expert report focused entirely around broad principles of property insurance law that are categorically irrelevant to this case.

## ARGUMENT

### I. "INDEMNITY" IS IRRELEVANT TO THE TRIER OF FACT

New York law is clear that express policy definitions of Actual Cash Value and broad principles like indemnity are mutually exclusive – parties include the former in order to steer clear of the latter. *See, e.g., SR Int'l Bus. Ins. Co. Ltd. v. World Trade Ctr. Props., LLC*, 445 F. Supp. 2d 320, 346 (S.D.N.Y. 2006) (defining ACV "foregoes the unbounded fact-finding of the broad evidence rule in favor of a more predictable method of determining ACV"); *Dickler v. CIGNA Prop. & Cas. Co.*, 957 F.2d 1088, 1098 (3d Cir. 1992) (applying New York law) (when "parties to an insurance contract agree to define actual cash value as replacement cost less depreciation, the broad evidence rule does not apply"). The Third Circuit in *Dickler* specifically held that it "cannot ignore the language of the [insurance] contract," and accordingly CIGNA's expert – Mr. Held – was not permitted to advance an ACV calculation that considered the fair market value of the damaged property.[2]

---

[2] Insurers take umbrage at PES's discussion of Mr. Held's involvement in the *Dickler* case. Memorandum of Law in Opposition to Plaintiffs' Motion to Exclude the Report and Testimony of Jonathon Held ("Opp.") at 11 n.6. PES does not dispute that Mr. Held had not seen the policy when he issued the ACV calculation that the *Dickler* Court later rejected as out of compliance with the policy. Regardless, the fact remains that the court declined to consider Mr. Held's fair market value calculation because the court was bound to apply the policy definition as written, and it did

3

Insurers make two meek efforts to distinguish *SR International* and *Dickler*.  First, they note that the *Dickler* opinion does not mention "indemnity."  Opp. at 11.  However, *Dickler* is about the broad evidence rule, and the sole purpose of the broad evidence rule is to help courts strive to reach indemnity – when the policy does not define Actual Cash Value.  *Dickler*, 957 F.2d at 1097-98.  Indeed, the New York Court of Appeals decision that gave birth to New York's broad evidence rule makes clear that the broad evidence rule is all about the hunt for complete indemnity.  *McAnarney v. Newark Fire Ins. Co.*, 247 N.Y. 176, 184 (1928) ("the trier of fact may, and should, call to its aid, in order to effectuate complete indemnity, every fact and circumstance which would logically tend to the formation of a correct estimate of the loss"); *see also SR Int'l*, 445 F. Supp. 2d at 343-45 (distinguishing *McAnarney* where policy defined Actual Cash Value).  Thus, Insurers' argument that *Dickler* does not support PES, just because it does not say the word "indemnity," rings hollow.

Second, Insurers argue that even though the broad evidence rule does not apply to this case, "principles of indemnity can still be *considered* when applying the definition of ACV in the Policy."  Opp. at 12 (emphasis added).  But under *SR International*, "broadly phrased theoretical principles" like indemnity cannot "override contractual language that foregoes the unbounded fact-finding of the broad evidence rule in favor of a more predictable method of determining ACV."  *SR Int'l*, 445 F. Supp. 2d at 346.  In other words, parties can agree to define Actual Cash Value specifically in order *not* to consider indemnity – and if they do, as this Court explained, indemnity "cannot be applied in contravention of that express policy language."  D.I. 280 (Opinion) at 15 (citing *SR Int'l*, 445 F. Supp. 2d at 346).

---

not mention fair market value.  *Dickler*, 957 F.2d at 1098.  The Held Report in this case again urges that principles outside the language of the Policy – this time indemnity – should be considered in calculating ACV under the Policy.  That defies New York law.

Insurers even cite Mr. Held's repeated admission "that complete indemnity is not possible where 'physical depreciation' is the only ACV factor to be applied" – like in the PES Policy. Opp. at 12-13. Insurers cannot make that admission and at the same time plausibly argue that the trier of fact would benefit from purported expert testimony on indemnity. To the contrary, Mr. Held's opinions can only confuse the issues and prejudice PES for not also advancing an expert to testify on irrelevant issues.[3]

## II. THE ONLY POTENTIALLY HELPFUL OPINIONS MR. HELD COULD OFFER WOULD BE INADMISSIBLE LEGAL OPINIONS

Despite all of their quibbling about PES's recitation of the case law, Insurers never actually explain *why* Mr. Held's indemnity opinions would help the Court compute Actual Cash Value under the Policy. The fact of the matter is that they would not. Given that indemnity is irrelevant, as this Court recognized less than one week ago in its summary judgment rulings, the only way Mr. Held could conceivably help the trier of fact is by opining on the meaning of Actual Cash Value.[4] At deposition, Mr. Held made it abundantly clear that he believes he is capable of offering that type of opinion:

> Q: … I'm trying to understand whether or not your expert opinion in this case would include an interpretation of ["physical depreciation"] as it is used *in the insurance policy*. …
>
> A: … yes, I believe I have the ability and the expertise to be able to do that. And if asked, I certainly would offer my opinion.

---

[3] Insurers also argue that Mr. Held's testimony about indemnity is not "legal" in nature, Opp. at 1, 8, but they are confusing the issues. PES's point is that because New York courts specifically disregard indemnity where the parties defines Actual Cash Value, testimony about indemnity is *unhelpful* to the Court. Fed. R. Evid. 702. By contrast, Mr. Held's testimony about the definition of Actual Cash Value in the Policy is inadmissible legal opinion. *See infra* § II.

[4] While labor depreciation has been addressed, the trier of fact may still need to determine whether Actual Cash Value should account for a contingency allowance in Replacement Cost and whether theoretical repair costs constitute "betterments" that Insurers could have chosen to depreciate when calculating Actual Cash Value.

5

> Q: So if asked by the Court to hear your interpretation of what physical depreciation means *in this insurance policy*, you feel qualified to give an expert opinion on that?
>
> A: Absolutely.

*See* Exhibit 3 to Maxwell Declaration in Support of Opening Motion (Excerpts of Jonathan Held Deposition Transcript) at 26:17-27:15 (emphases added). Mr. Held even had the express opportunity to clarify that he was not planning to opine on the meaning of the Policy, but instead he doubled down on the legal nature of his planned opinions:

> Q: … I believe you testified earlier that you are not providing testimony on what this insurance policy actually means, right?
>
> A: I'm providing testimony as an expert on actual cash value, *and I believe I understand what the actual cash value clauses of the policies mean.*

*Id.* at 186:23-187:10 (emphasis added).[5]

Testifying about how to perform a technical depreciation analysis is one thing, but explicitly interpreting the meaning of insurance policy language is another. The latter is clearly in the nature of legal opinion. No matter how many times Mr. Held says he isn't a lawyer, any testimony Mr. Held gives on the meaning of Actual Cash Value in the Policy would usurp the Court's role by offering legal opinions. Thus, Insurers are back between the same rock and hard place – Mr. Held's opinions are either irrelevant (and therefore inadmissible) or legal in nature (and therefore inadmissible).

### III. THE COURT SHOULD STRIKE MR. HELD'S ENTIRE REPORT

Insurers attempt to minimize the impact of Mr. Held's inadmissible testimony by claiming that even if his testimony on the meaning of "physical depreciation" is inadmissible (which it is),

---

[5] Insurers cannot genuinely argue that PES's counsel somehow tricked Mr. Held – a witness who has been deposed "[p]robably more than a couple of hundred" times, *id.* at 9:9-10 – into testifying that he is capable of offering what would be plainly inadmissible legal opinion.

6

that does not warrant precluding his entire report. Opp. at 1, 15-16. However, the entire Held Report is premised on the irrelevant notion that the Court should consider indemnity when computing Actual Cash Value under this Policy. PES noted in its opening brief that the Held Report is "full of opinions that all revolve around the concept of 'indemnity' and the technical, non-Policy-based depreciation analyses performed by Insurers' consultants." Mot. at 12. The fact that the Court has resolved the question of labor depreciation, rendering that portion of the Held Report moot, takes nothing away from the inadmissibility of his opinions about contingency and depreciation of repairs. Accordingly, the Court can and should strike the Held Report in its entirety, rather than try to surgically remove and save some small subset of admissible opinion within it.

## CONCLUSION

For the reasons set forth herein and in PES's opening brief in support of the Motion, PES respectfully requests that this Court grants its Motion, strike the Expert Report of Jonathon C. Held, and preclude Mr. Held from testifying at trial.

Dated: December 20, 2021       */s/ Peter J. Keane*
                                          Laura Davis Jones (DE Bar No. 2436)
                                          James E. O'Neill (DE Bar No. 4042)
                                          Peter J. Keane (DE Bar No. 5503)
                                          **PACHULSKI STANG ZIEHL & JONES LLP**
                                          919 North Market Street, 17th Floor
                                          P.O. Box 8705
                                          Wilmington, Delaware 19899-8705 (Courier 19801)
                                          Telephone:  (302) 652-4100
                                          Facsimile:   (302) 652-4400
                                          Email:         ljones@pszjlaw.com
                                                        joneill@pszjlaw.com
                                                         pkeane@pszjlaw.com

- and -

Edward O. Sassower, P.C.
Steven N. Serajeddini (admitted *pro hac vice*)
Matthew C. Fagen (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:    edward.sassower@kirkland.com
              steven.serajeddini@kirkland.com
              matthew.fagen@kirkland.com

Andrew A. Kassof, P.C. (admitted *pro hac vice*)
Nader R. Boulos, P.C. (admitted *pro hac vice*)
Michael B. Slade (admitted *pro hac vice*)
William T. Pruitt (admitted *pro hac vice*)
Whitney L. Becker (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 N. LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:    andrew.kassof@kirkland.com
              nader.boulos@kirkland.com
              michael.slade@kirkland.com
              william.pruitt@kirkland.com
              whitney.becker@kirkland.com

Kenneth H. Frenchman (admitted *pro hac vice*)
Robin L. Cohen (admitted *pro hac vice*)
Marc T. Ladd (admitted *pro hac vice*)
Alexander M. Sugzda (admitted *pro hac vice*)
Nicholas R. Maxwell (admitted *pro hac vice*)
Chelsea L. Ireland (admitted *pro hac vice*)
**COHEN ZIFFER FRENCHMAN & MCKENNA LLP**
1350 Avenue of the Americas, 25th Floor
New York, New York 10019
Phone: (212) 584-1890
Email: kfrenchman@cohenziffer.com
      rcohen@cohenziffer.com
      mladd@cohenziffer.com
      asugzda@cohenziffer.com
      nmaxwell@cohenziffer.com
      cireland@cohenziffer.com

*Counsel for Plaintiffs PES Energy, Inc., PES Holdings LLC, PES Administrative Services, LLC, PES Intermediate, LLC, PES Ultimate Holdings, LLC, and Philadelphia Energy Solutions Refining and Marketing LLC*
